## `THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| STATE OF CONNECTICUT, et al., | |
| *Plaintiffs,* | No. 3:16-cv-02056-MPS |
| v. | |
| AUROBINDO PHARMA USA, INC., et al., | |
| *Defendants.* | |
| STATE OF CONNECTICUT, et al., | |
| *Plaintiffs*, | No. 3:19-cv-00710-MPS |
| v. | |
| TEVA PHARMACEUTICALS USA, INC. et al., | |
| *Defendants*. | |
| STATE OF CONNECTICUT, et al., | |
| *Plaintiffs*, | No. 3:20-cv-00802-MPS |
| v. | |
| SANDOZ, INC., et al., | |
| *Defendants*. | March 26, 2025 |

### STATES' DECLARATION IN SUPPORT OF THE STATES' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH APOTEX CORP.

I, Elin S. Alm, hereby declare and state as follows:

1.      I am an Assistant Attorney General and the Director of the Consumer Protection and Antitrust Division of the North Dakota Office of Attorney General. This Declaration is based upon my personal knowledge and information provided by my State colleagues.

2.    Filed herewith as Exhibit 1 is a true and correct copy of the proposed settlement agreement (the "Settlement") between the Plaintiff States and Apotex Corp. ("Apotex"). Capitalized terms in this Declaration incorporate the defined terms from the Settlement.

3.    I provide this declaration in support of Plaintiff States' Motion for Preliminary Approval of the Settlement with Apotex.

4.    Since 2016, the States have litigated claims alleging that Apotex, a manufacturer of generic drugs, conspired with non-settling Defendants, who are other manufacturers of generic drugs, in violation of federal and state antitrust and consumer protection laws to artificially inflate and maintain the prices for generic drugs.

5.    The States' allegations against the manufacturers of generic drugs span three different complaints, collectively referred to as the States' Actions: (1) a complaint focused on agreements involving Heritage, filed in December 2016, *Connecticut et al. v. Aurobindo Pharma USA, Inc., et al.*, 3:16-cv-02056 (the "Heritage Action" and this "Action") which after amendments encompasses 15 drugs; (2) a complaint focused on over 100 different drugs centered on agreements involving Teva Pharmaceuticals, filed in 2019, *Connecticut et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 3:19-cv-00710; and (3) a complaint focused primarily on dermatology products concerning over 80 different drugs, filed in 2020 (the "Dermatology Action"), *Connecticut et al. v. Sandoz, Inc., et al.*, 3:20-cv-00802. In each of the complaints, the States also allege an overarching conspiracy for the drugs and anticompetitive acts in that action.

6.    While litigating the States' Actions, the States have negotiated with numerous defendants, including Apotex, seeking to reach a consensual resolution and favorable settlement for consumers and state entities short of trial. Through these negotiations, the States reached this Settlement with Apotex.

7.      The States finalized and signed the Settlement with Apotex attached hereto as Exhibit 1. This is the second settlement with corporate defendants in the States' Actions. The Settlement is a joint settlement with the End-Payer Plaintiffs (the "EPPs") in the related action *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.) (the "MDL").

8.      The Settlement is entered by attorneys general of fifty states, commonwealths, D.C., and territories of the United States whose interests are aligned in enforcing federal and state laws and vigorously pursuing remedies for their states, their Consumers, State Entities, and Corporate Entities.

9.      Based on information and data the States have obtained through investigation and discovery, and analysis provided by the States' experts, the States estimate that the total amount of overcharge associated with sales by Apotex during the period at issue in the litigation is approximately $202 million. The amounts of overcharges passed through to consumers and state agencies is disputed, but the States' expert in the Dermatology Action has indicated the culminative passthrough is 50% of that number, which for Apotex would be $101 million.

10.     Through this Settlement, the States are providing recovery for their Consumers, State Entities, and Corporate Entities and are exercising authority to represent their states and settle and release claims in their sovereign, proprietary, and *parens patriae* capacities.

11.     The States have vigorously litigated the States' Actions. The States have engaged in extensive discovery and motion practice, have zealously prosecuted this case, and engaged in settlement negotiations to obtain a favorable settlement. The States' investigation and litigation work, including motion practice, discovery, and expert work and expert discovery, has allowed the States to gain an excellent understanding of the three cases in the States' Actions.

12.     This Settlement reflects not only the relative strengths of the claims against Apotex,

but also the value of the cooperation that Apotex has agreed to provide to aid in the continued prosecution of this case against other defendants.

13.     The settlement negotiations were conducted at arm's length and in good faith. Throughout the settlement process, Apotex has been represented by counsel with significant expertise in complex antitrust litigation. The Assistant Attorneys General in the offices of the Attorneys General for Connecticut, New York, and Massachusetts who negotiated the Settlement, individually and collectively, have extensive experience with antitrust investigations and litigation.

14.     The settlement negotiations were hard fought and fully informed. The States recognize the benefits, risks, and consequences of continued litigation in comparison to the Settlement.

15.     Under the terms of the Settlement, Apotex has agreed to pay $39.1 million to the States, which will be deposited directly into escrow with Huntington Bank, and which will accrue interest. Huntington Bank is well qualified to serve as the escrow agent in this matter, having regularly served in that role in many other *parens patriae* or class action settlements.

16.     The States have contracted with Rust Consulting, Inc ("Rust"), a nationally recognized notice and administration company, to act as the Notice and Claims Administrator to implement a Notice Plan.

17.     The States Notice Plan is building on the notice plan set forth in the Plaintiff State's Motion for Preliminary Approval of the Heritage Settlement, which was previously approved by this Court. *See* ECF No. 675 (3:16-cv-02056-MPS), No. 465 (3:20-cv-00802-MPS), and No. 502 (3:20-cv-00802-MPS). The details of the States' proposed Notice Plan are set forth in the declaration of Tiffaney Janowicz filed herewith. Implementation of the Notice Plan will be coordinated with the EPPs and the EPP notices and Notice Plan.

18.     The Settlement provides that 70% of the $39.1 million State Settlement Amount is allocated to restitution to Consumers and State Entities that are State Releasors, to compensate them for any alleged harm resulting from the alleged Conduct. *Settlement ¶¶I.DD, II.A.* The States propose that approximately 45.08% of the State Settlement Amount (or 64.4% of the restitution amount) equaling $17,624,403.04 be allocated and distributed to Consumers and approximately 24.92% of the State Settlement Amount (or 35.6% of the restitution amount) equaling $9,745,596.96 be allocated as restitution to State Entities, to be divided between the settling states based on relative harm and claims asserted in the litigation, and distributed to each State for such use permitted under state law at the sole discretion of each State Attorney General. *See Settlement* I.DD(2).

19.     The States have developed a proposed framework or structure for a future distribution plan. This framework is outlined in the Long Form Notice filed as an exhibit to the accompanying declaration of Tiffaney Janowicz, also filed in support of this motion. The States propose that to receive a portion of the Settlement, a Consumer will be required to submit a claim and release form. The States do not intend to require proof of purchase beyond a verified statement of purchase from a Consumer. However, the States reserve the option of requiring proof for auditing any large or suspicious claims submitted. No claims will be blocked as being too small, but rather, a minimum payment will be paid to a Consumer filing a valid claim (a "Minimum Payment") so that all valid claims would receive at least a minimum amount.

20.     The States believe that the use of a Minimum Payment is important to encourage Consumers to participate in the claims process. The Minimum Payment amount would best be determined after additional settlements have been reached and it is appropriate and efficient to do a distribution to Consumers, to ensure that a reasonable portion of the Settlement funds are

allocated towards claimants receiving the Minimum Payment, while still preserving enough funds for Consumers with larger documented claims. A Minimum Payment allows Consumers to meaningfully participate in the Settlement by submitting valid claims and is designed to avoid a situation in which the cost of issuing a payment exceeds the amount of the payment and allows smaller claims to be processed more efficiently and with less inquiries and challenges on claims. The States believe this represents a reasonable method of ensuring equitable and timely distribution of the Settlement's restitution funds, and to as many affected Consumers as possible, without burdening the process in a way that will unduly waste the funds.

21.     Further, as for allocation among consumers, the States propose to treat Consumers equitably relatively to each other and based on representation in the litigation, the strength of claims asserted, and the releases provided for possible claims.  The States propose that each Consumer be entitled to receive payments in proportion to their spending on the generic pharmaceuticals at issue (*i.e. pro rata*) with one exception: Consumers residing in a non-settling state on whose behalf only the EPPs are settling claims, namely Alabama, Arkansas, Hawaii, and Texas, will receive less, and likely only the minimum payment, because they are giving less by providing a release only for claims brought on their behalf by EPPs, not *parens patriae* claims brought by the States.  The States believe this proposal is fair and reasonable for several reasons. First, the States *parens patriae* and other claims on behalf of their citizens are different than class action claims. Second, the scope of the release is less for Consumers residing in non-settling states.  Third, the States are carrying the labor and cost of the claims process and distribution to Consumers, from which consumers in non-settling states benefits.

22.     The States ask that a complete allocation and distribution plan, that includes other settlements in the States' Action, be deferred and presented to the Court for approval at a future

date when there is enough consumer funds accumulated to make a distribution practicable and sensible.

23.     The Settlement provides substantial and guaranteed benefits to Consumers, State Entities, and Corporate Entities, on whose behalf the States assert claims (and for Consumers, Corporate Entities, and State Entities represented by the EPPs) which recovery is fair, reasonable, and adequate given the expense and risk of protracted litigation. The States maintain that the proposed Settlement with Apotex is fair, reasonable, and adequate and in the best interests of the Plaintiff States and their residents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 26, 2025, in Bismarck, North Dakota.


/s/ *Elin Alm*_____
Elin S. Alm

# Exhibit 1

Case Nos.

3:16-cv-02056-MPS

3:19-cv-00710-MPS

3:20-cv-00802-MPS

## Settlement Agreement

This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.) (the "MDL"). [1]

WHEREAS, the Attorneys General and the EPPs are each pursuing or have previously pursued claims in the MDL and/or in the District of Connecticut;

WHEREAS, the Attorneys General have asserted claims on behalf of themselves and for or on behalf of State Entities;

WHEREAS, the Attorneys General have also asserted claims for Consumers, as defined below;

WHEREAS, certain of the Attorneys General have also asserted claims for Corporate Entities, as defined below;

WHEREAS, the EPPs have asserted claims on behalf of themselves and the EPP Settlement Class Members, as defined below;

WHEREAS, together the EPPs and the Attorneys General assert claims for or on behalf of all Consumers, State Entities, and Corporate Entities;

WHEREAS, the Attorneys General and the EPPs have concluded that resolving their claims against Apotex through settlement is in the public interest, including in the interest of those for whom or on whose behalf they assert claims;

WHEREAS, despite Apotex's belief that it has good defenses, Apotex has agreed to enter into this Agreement to avoid the further expense and other burdens of litigation, to obtain the dismissals, covenants, and releases contained in this Agreement, and to put to rest with finality the cases that have been brought by the Attorneys General and the EPPs against Apotex;

NOW, THEREFORE, in consideration of the mutual promises and other good and valuable consideration provided in this Agreement, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

---

[1] This Agreement is intended to settle all cases and claims brought by the Attorneys General against Apotex that have at any time been pending in the MDL, regardless of whether those cases and claims remain in the MDL or have been or may be remanded to any other court.

## I.    Definitions

A.    "Actions" means EPP Actions and State Actions, as defined in Paragraphs L and AA of this Section.

B.    "Apotex Releasees" are defined as Apotex and its parents, subsidiaries, and affiliates, and their respective predecessors, successors, heirs, executors, administrators, and assigns, as well as any current and former officers, directors, employees,[2] attorneys, stockholders, principals, managers, partners, members, agents, representatives, trustees, insurers, and owners thereof.

C.    "Attorneys General" are defined as the Attorneys General of each state, commonwealth, district, and territory that asserts claims in the MDL (or in any court to which the State Actions have been or may be remanded[3]) as well as those that are otherwise signatories to this Agreement.

D.    "Code" is defined as the Internal Revenue Code of 1986, as amended.

E.    "Conduct" means any act or omission of the Apotex Releasees or of persons or entities alleged to be co-conspirators of the Apotex Releasees concerning price fixing, market allocation, bid-rigging, and/or any other anticompetitive and/or unfair conduct based in whole or in part on the allegations in the Actions, in connection with the manufacture, sale, and/or distribution of Drugs at Issue or any other generic drug for which claims could have been asserted based on any facts alleged in any of the complaints filed or otherwise pending at any time in the Actions, including all formulations and strengths of those drugs, and/or any overarching conspiracy claims involving any of the Drugs at Issue or based in whole or in part on facts alleged in the Actions.

F.    "Consumers" are defined as natural persons for whom an Attorney General has the power to act, whether pursuant to the Attorney General's parens patriae authority or otherwise; as well as natural persons for whom the EPPs are asserting claims (*i.e.*, all natural persons who are potential members of the EPP Settlement Class).  For purposes of clarity, the term "Consumers" does not include any State Entity, any county, city, town, or other local entity, or any Corporate Entity.

G.    "Corporate Entities" are defined as corporate (and other business) entities for whom an Attorney General has asserted a claim in the MDL (or any court to which the State

---

[2] "Apotex Releasees" does not include any current or former Apotex employee named as an individual defendant in the MDL prior to the Effective Date with respect to that individual's conduct while employed at any company other than Apotex.

[3] As of April 25, 2024, the State Actions have been remanded to the United States District Court for the District of Connecticut.  *See* Case No. 3:16-cv-02056, ECF No. 353 (D. Conn.); Case No. 3:19-cv-710 (D. Conn.); Case No. 3:20-cv-00802, ECF No. 15 (D. Conn.).

Actions have been or may be remanded), whether pursuant to the Attorneys General's parens patriae authority or otherwise, as well as corporate (and other business) entities for which the EPPs are asserting claims (*i.e.*, all corporate and other business entities that are potential members of the EPP Settlement Class).

H.     "Defendant" means any party named as a defendant in any of the Actions at any time up to and including the date of the court's Final Approval Order, as defined in Paragraph S of this Section.

I.     "Drugs at Issue" means the drugs listed in Appendix A.

J.     "Effective Date" shall be the date on which the final signatory of this Agreement executes this Agreement. The Attorneys General and the EPPs will have 60 calendar days from the date of Apotex's signature to execute this Agreement, absent written agreement from Apotex for a reasonable period of additional time. If all Attorneys General and EPPs have not executed this Agreement within 60 calendar days of the date of Apotex's signature, Apotex shall have the right to terminate this Agreement upon written notice.

K.     "End-Payer Plaintiffs" means those EPP Settlement Class Members, as defined in Paragraph I.Q, who were named plaintiffs in any of the EPP Actions as of the Effective Date, or who have been or are subsequently added as named plaintiffs in any of the EPP Actions prior to the entry of final judgment against Apotex in the EPP Actions.

L.     "EPP Actions" means the following cases: *In re: Pravastatin Cases*, No. 2:16-pv-27242 (E.D. Pa.); *In re Albuterol Cases*, 2:16-al-27242 (E.D. Pa.); *In re Amitriptyline Cases*, 2:16-am-27242 (E.D. Pa.); *In re Baclofen Cases*, 2:16-bc-27242 (E.D. Pa.); *In re Benazepril HCTZ Cases*, 2:16-bz-27242 (E.D. Pa.); *In re Clobetasol Cases*, 2:16-cb-27242 (E.D. Pa.); *In re Clomipramine Cases*, 2:16-cm-27242 (E.D. Pa.); *In re Digoxin Cases*, 2:16-dg-27242 (E.D. Pa.); *In re Desonide Cases*, 2:16-ds-27242 (E.D. Pa.); *In re Divalproex ER Cases*, 2:16-dv-27242 (E.D. Pa.); *In re Doxycycline Cases*, 2:16-dx-27242 (E.D. Pa.); *In re Econazole Nitrate Cases*, 2:16-ec-27242 (E.D. Pa.); *In re Fluocinonide Cases*, 2:16-fl-27242 (E.D. Pa.); *In re Glyburide Cases,* 2:16-gl-27242 (E.D. Pa.); *In re Lidocaine/Prilocaine Cases*, 2:16-ld-27242 (E.D. Pa.); *In re Levothyroxine Cases*, 2:16-lv-27242 (E.D. Pa.); *In re Propranolol Cases*, 2:16-pp-27242 (E.D. Pa.); *In re Ursodiol Cases*, 2:16-ur-27242 (E.D. Pa.); *1199SEIU National Benefit Fund v. Actavis Holdco U.S., Inc.*, No. 2:18-cv-02401 (E.D. Pa.); *1199SEIU National Benefit Fund v. Actavis Holdco U.S., Inc.*, No. 2:19-cv-06011 (E.D. Pa.), and any other action or proceeding filed in the MDL or otherwise pursued by or on behalf of any End-Payer Plaintiff or any other EPP Settlement Class Member for Released Claims prior to the entry of the Final Approval Order.

M.     "EPP Releasors" shall refer to the End-Payer Plaintiffs and all other EPP Settlement Class Members, as defined in Paragraphs K and Q, and to their past and present parents, subsidiaries, and affiliates, and their respective predecessors, successors, heirs, executors, administrators, and assigns, as well as any current and former officers, directors, employees, attorneys, stockholders, principals, managers, partners, members, agents, representatives, trustees, insurers, and owners thereof.

N.    "EPP Settlement Amount" is the aggregate sum of $48,000,000 USD, all of which shall constitute restitution within the meaning of Section 162(f)(2) of the Code and 26 C.F.R. § 1.162-21(e)(4)(i).  No part of the EPP Settlement Amount is paid (a) in respect of any claim for the trebling of damages (as opposed to actual damages), (b) to reimburse any government or governmental entity for investigation or litigation costs, or (c) for or in lieu of any fine, penalty, forfeiture, or punitive damages.  To the extent that any party hereto is required to report the EPP Settlement Amount or any portion thereof under Section 6050X of the Code, such party shall report such amount as restitution.  Except as set forth in this Paragraph, the EPPs take no position on tax treatment of the payments under the Agreement.  The EPP Settlement Amount shall be allocated among the EPP Settlement Class Members as determined by the EPP Settlement Class Counsel and approved by the court, and Apotex shall have no obligation in connection with such allocation.

O.    "EPP Settlement Class" shall be defined as all persons and entities in each of the 50 United States (except Indiana and Ohio), as well as the District of Columbia, Puerto Rico, and the U.S. Virgin Islands, that indirectly purchased, paid, and/or provided reimbursement for some or all of the purchase price for any Drugs at Issue, other than for resale, from May 1, 2009 to December 31, 2019.  This class excludes: (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; (b) all federal governmental entities; (c) all State Entities identified by the Attorneys General in Appendix B; (d) all State Entities of the States specified in Paragraph I.O.1 (except for cities, towns, municipalities, counties or other local governmental entities of that State with self-funded prescription drug plans, all of which are included in the class[4]).  For the avoidance of doubt, the class does not include (i) persons or entities who only purchased Drugs at Issue for purposes of resale or directly from Defendants;[5] (ii) fully insured employers to the extent that they use fully-insured plans (*i.e.*, employers that purchased insurance covering 100% of their reimbursement obligation to members); and (iii) pharmacy benefit managers.

1.    The State Entities from the following States are excluded from the definition of EPP Settlement Class:  California, Connecticut, Florida, Illinois,[6] Maine, Oregon, Pennsylvania, Washington, and Wyoming.  The Attorneys General of the remaining States do not object to the State Entities of their respective States being included in the EPP Settlement Class (with those State Entities having the right to submit

---

[4] The Attorneys General do not object to the inclusion of the local government entities described herein in the EPP Settlement Class.

[5] Where a putative class member has purchases that meet the definition of the EPP Settlement Class, but also has purchases that fall within the exclusion set forth in Paragraph I.O.(e), that putative class member is included in the EPP Settlement Class only with respect to those purchases that meet the definition of the EPP Settlement Class.

[6] The exclusion of Illinois' State Entities from the definition of EPP Settlement Class does not include public corporations, including public universities and health systems.  Those public corporations that indirectly purchased, paid, and/or provided reimbursement for some or all of the purchase price for any Drugs at Issue, other than for resale, from May 1, 2009 to December 31, 2019 are included within the definition of the EPP Settlement Class.

a valid and timely request for exclusion, like any other potential class member).

P.     "EPP Settlement Class Counsel" shall refer to the law firm of Fine, Kaplan and Black, R.P.C.

Q.     "EPP Settlement Class Member" means each potential member of the EPP Settlement Class who has not submitted a timely and valid request to be excluded from the EPP Settlement Class.

R.     "Federal Settlement Agreement" means the separate civil settlement agreement that Apotex entered into with the United States on September 30, 2021, which includes a Corporate Integrity Agreement ("CIA") with the Office of Inspector General of the U.S. Department of Health and Human Services.

S.     "Final Approval Order" means the order to be entered by the District Court in the MDL (and, with respect to any Action that has been or may be remanded from the MDL, the court to which such Action has been or may be remanded) which gives final approval of this Settlement Agreement and releases all Released Claims.  The Parties intend for the Final Approval Order to include provisions: (1) finding this Settlement Agreement (i) as having been entered into in good faith and (ii) as being fair, reasonable, and adequate, including within the meaning of Fed. R. Civ. P. 23, where applicable, and directing its consummation pursuant to its terms, as to: (i) the EPP Releasors (including the EPP Settlement Class); and (ii) the State Releasors; (2) finding that the notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure; (3) finding that all members of the EPP Settlement Class who have not executed timely and valid requests for exclusion shall be bound by this Settlement Agreement, including the release provisions and covenant not to sue set forth in this Settlement Agreement; (4) incorporating the releases set forth in Section VI, and forever barring the EPP Releasors and the State Releasors from asserting any Released Claims (as defined in Paragraph I.X); (5) retaining exclusive jurisdiction over the Settlement and this Agreement, including the administration and consummation of this Settlement; (6) directing that all claims by and on behalf of the EPP Releasors, and the State Releasors be dismissed with prejudice as to Apotex Releasees only and, except as provided for herein, with prejudice and without costs or attorney's fees recoverable under 15 U.S.C. § 15(a); and (7) determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the Final Approval Order in the Actions as to the Apotex Releasees shall be final and immediately appealable.

T.     "Final Court Approval" means the court with jurisdiction over each of the Actions (the District Court in the MDL or, in the event of remand, the court to which the State Actions have been or may be remanded) has entered, in each of the Actions, the Final Approval Order, and the time to appeal or to seek permission to appeal from the court's approval of this Agreement and entry of the order and final judgment as to Apotex has expired in each Action and no motion or other pleading has been filed seeking to set aside, enjoin, or in any way alter the Final Approval Order or the entry of judgment in any Action or to toll the time for appeal of the Final Approval Order or the judgment in any Action, or, if appealed, approval of this

Agreement and the final judgment in each Action as to Apotex has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.

U. "Generic Pharmaceutical Products" shall mean the generic version of any brand name drug, including all dosages, forms, and strengths of such drug, regardless of whether they are included in any of the complaints filed in the MDL.

V. "Notice Period" means the time period allotted for EPP Settlement Class Members, those Consumers and Corporate Entities on whose behalf the Attorneys General have asserted claims, and anyone else for whom notice is required to (i) object to this Settlement or (ii) file a timely and valid request for exclusion.

W. "Preliminary Approval Order" means an order to be entered by the District Court in the MDL (and the Court to which the State Actions have been or may be remanded) which the Parties intend will include the following provisions: (1) conditional certification of the EPP Settlement Class for settlement purposes; (2) preliminary approval of this Settlement Agreement with respect to the EPP Settlement Class (i) as having been entered into in good faith and (ii) as being fair, reasonable, adequate and in the best interests of the members of the EPP Settlement Class; and (3) preliminary approval of this settlement with respect to the Attorneys General (i) as having been entered into in good faith and (ii) as being fair, reasonable, adequate and in the best interests of State Entities, if required by law, and Consumers and Corporate Entities for whom the Attorneys General assert claims in their parens patriae or other representative authority and for any other purposes for which court approval may be necessary.

X. "Released Claims" means any and all manner of claims, counter-claims, demands, actions, rights, liability, costs, debts, expenses, attorneys' fees, judgments, and civil and administrative causes of action of any type, including both monetary and injunctive, that were asserted or that could have been asserted, whether known or unknown, whether accrued or unaccrued, against the Apotex Releasees arising out of or relating to the Conduct. Released Claims include claims arising out of the Conduct under (1) federal or state antitrust laws, (2) unfair competition or consumer protection laws, (3) any civil or administrative monetary cause of action (including for civil damages and/or civil fines or penalties), (4) any remedies for any claims submitted or caused to be submitted to the State's Medicaid program, including under the False Claims Act (codified at 31 U.S.C. §§ 3729-3733) or any State's counterpart to the federal False Claims Act, and (5) any other statute or common or equitable law. In addition, the Attorneys General and the State Entities listed on Appendix B shall not seek to impose fines or penalties on the Apotex Releasees or to exclude or debar them from any market for the manufacture, sale, or distribution of Generic Pharmaceutical Products in connection with the Conduct, except as set out in 2(b) below.

      1.     Released Claims include all claims based on any and all rights (including

by assignment) to bring claims based on damages incurred by another person or entity.[7]

       2.     For the Attorneys General, Released Claims do not include: (a) claims under state revenue codes; (b) claims for mandatory exclusion from a state's Medicaid program as prescribed by federal or state law; or (c) any criminal liability.

       3.     For the End Payer Releasors, Released Claims do not include (1) any claims based on direct purchases of the Drugs at Issue; (2) any claims based on indirect purchases of Drugs at Issue for purposes of resale; and (3) claims under laws other than those of the United States relating to purchases made by the EPP Releasors outside of the United States.

       4.     Released Claims also do not include claims that do not arise out of the Conduct, including claims: (a) for breach of contract, express or implied warranty, or defective or deficient products and services provided by Apotex; (b) for unfair or deceptive marketing or advertising of Drugs at Issue or for off-label marketing claims; (c) for violations of the securities laws; (d) for reverse payment, "pay for delay," sham litigation, sham citizen petition, "Walker Process" fraud or other means of reducing or impairing competition other than the Conduct; (e) arising from or relating to the unfair and/or deceptive marketing, promotion, or sale of opioids (other than the Conduct) (including public nuisance claims), or the control or diversion of opioids (including suspicious order monitoring and state-law Controlled Substances Acts); (f) asserted in any currently pending litigation that is not (and never has been) part of the MDL; (g) for any civil or administrative liability related to a State's Medicaid program under any statute, regulation, or rule, including the False Claims Act or any State's counterpart to the federal False Claims Act, anti-kickback or off-label marketing violations, that do not arise out of the Conduct; (h) based on obligations created by this Agreement.

     Y.     "Settlement Amounts" means the State Settlement Amount and the EPP Settlement Amount.

     Z.     "States" means all states, commonwealths, districts, and territories that assert claims in the MDL (or the court to which the State Actions have been or may be remanded), including Alaska, Arizona, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota,

---

[7] This includes claims assigned to the State of Florida, *see, e.g.*, *State of Connecticut, et al. v. Sandoz Inc. et al.*, Amended Complaint, No. 2:20-cv-03539, ECF No. 62, ¶ 1860 (noting that certain claims of Minnesota Multistate Contracting Alliance for Pharmacy ("MMCAP") and/or Cardinal Health, Inc. have been assigned to the state of Florida), claims assigned to the State of California, *see id.* ¶ 2117 (noting that certain "vendors and intermediaries" assigned claims to the state of California), and claims assigned to the State of New York, *see, e.g., State of Connecticut, et al. v. Teva Pharmaceuticals USA, Inc.*, Amended Complaint, No. 2:19-cv-02407, ECF No. 106, ¶ 1586 (noting that certain claims of MMCAP and/or Cardinal Health, Inc. have been assigned to the state of New York).

Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, Virgin Islands, Washington, West Virginia, Wisconsin, and Wyoming in their sovereign, proprietary, or any other capacities.

AA.    "State Actions" means the following cases: *State of Connecticut et al. v. Aurobindo Pharma USA, Inc. et al.*, No. 2:17-cv-3768 (E.D. Pa.); *State of Connecticut v. Aurobindo Pharma USA, Inc.,* No. 3:16-cv-2056 (D. Conn.); *State of Connecticut v. Teva Pharmaceuticals USA, Inc.*, No. 2:19-cv-02407 (E.D. Pa. ); *State of Connecticut v. Teva Pharmaceuticals USA, Inc.*, No. 3:19-cv-710 (D. Conn.); *State of Connecticut, et al. v. Sandoz Inc. et al.*, No. 2:20-cv-03539 (E.D. Pa.); *State of Connecticut v. Sandoz, Inc.*, No. 3:20-cv-00802 (D. Conn) and any other action or proceeding asserting claims based on the Conduct, filed or otherwise pursued by or on behalf of any of the Attorneys General or any of the State Entities listed on Appendix B.

BB.    "State Entity" means any agency, bureau, board, commission, committee, department, division, or other organizational unit of any state government, except for those of any county, city, town, or other local entity or political subdivision.

CC.    "State Releasors" means the (a) Attorneys General and State Entities listed on Appendix B (which include, among other State Entities, each State's Medicaid agency); (b) State Entities that accept a distribution of settlement proceeds from the Attorneys General's settlements in the MDL or, in the event of remand, any court to which the State Actions have been or may be remanded, (c) the Consumers and Corporate Entities on whose behalf the Attorneys General assert claims, to the extent those Consumers and Corporate Entities do not submit a timely and valid request for exclusion from the settlement under this Agreement and the Actions.

DD.    "State Settlement Amount" is the aggregate sum of $39,100,000 USD, 70% ($27,370,000 USD) of which shall constitute restitution within the meaning of Section 162(f)(2) of the Code and 26 C.F.R. § 1.162-21(e)(4)(i)).

       1.    No part of the State Settlement Amount that constitutes restitution is paid (a) in respect of any claim for the trebling of damages (as opposed to actual damages), or (b) for or in lieu of any fine, penalty, forfeiture, or punitive damages, and no part of the amount specified as restitution in the preceding sentence is paid to reimburse any Attorney General, any State Entity, or any other government or governmental entity for investigation or litigation costs.  The party or parties required to report all or any portion of the State Settlement Amount under Section 6050X of the Code shall report no less than 70% of such portion as restitution.  Except as set forth in this Paragraph, the Attorneys General take no position on tax treatment of the payments under the Settlement.

       2.    The State Settlement Amount shall be allocated among the State Entities that are State Releasors as determined by the Attorneys General, and among Consumers as determined by the Attorneys General with the EPP Settlement Class Counsel

consulting and Corporate Entities as determined by the EPP Settlement Class Counsel with the Attorneys General consulting and approved by the court, and Apotex shall have no obligation in connection with such allocation. The amounts allocated to the State Entities that are State Releasors shall be received by the respective State Attorneys General Offices to be allocated for any use permitted under state law at the sole discretion of the State's Attorney General.

3.  The States will also hold the remaining 30% of the State Settlement Amount in escrow and for use in paying for the expenses identified in Section X and, upon final approval of this Agreement, for costs of litigating the States' claims both collectively or individually, subject to approval of the court. To the extent that monies in the cost account are not used to offset costs of States litigating in the State Actions, any remaining funds may be used for any of the following: (1) Deposit into a state antitrust or consumer protection account (e.g., revolving account, trust account) for use in accordance with the laws governing the account; (2) Deposit into a fund exclusively dedicated to assisting any state to defray the costs of experts, economists and consultants in multistate antitrust investigations and litigations, including healthcare related investigations and litigation; (3) Antitrust or consumer protection enforcement, including healthcare-related enforcement, by an individual State or multiple States; or (4) For any other use permitted by state law at the sole discretion of that State's Attorney General.

## II.    Payment of the Settlement Amounts

A.  Apotex will pay or cause to be paid the State Settlement Amount pursuant to the written payment instructions provided by the Attorneys General within the later of: (1) thirty (30) calendar days after the date of the Preliminary Approval Order or (2) thirty (30) calendar days after receiving written payment instructions from the Attorneys General. The Attorneys General's written payment instructions shall direct at least 70% of the State Settlement Amount to be paid directly into an escrow account (the "State Escrow"), pending Final Court Approval of this Agreement and the distribution of settlement funds from the State Escrow pursuant to the States' allocation plan, including to State Entities that are State Releasors and Consumers, to compensate them for any alleged harm resulting from the alleged Conduct. The remaining 30% of the State Settlement Amount shall also be held in escrow, and used pursuant to Section I.DD.3, above.

B.  Apotex will pay or cause to be paid the EPP Settlement Amount pursuant to the written payment instructions provided by EPP Settlement Class Counsel within the later of: (1) thirty (30) calendar days after the date of the Preliminary Approval Order or (2) thirty (30) calendar days after receiving written payment instructions from the EPP Settlement Class Counsel. The EPP Settlement Class Counsel's written payment instructions shall direct the entire EPP Settlement Amount to be paid directly into an escrow account (the "EPP Escrow"), pending Final Court Approval of this Agreement and the distribution of settlement funds from the EPP Escrow.

C.  Apotex shall have no obligation to make any other payments of any kind in

connection with this Agreement. Apotex also shall have no obligations with respect to the allocation or distribution of any of the Settlement Funds. The State Releasors and EPP Releasors shall have no other recovery of any kind from Apotex or the other Apotex Releasees, other than from the State Settlement Amount and EPP Settlement Amount, respectively, including for attorneys' fees, costs, service awards, damages, penalties, or injunctive or other relief of any kind.

## III. Preliminary and Final Court Approval

A. The Attorneys General and the EPPs shall promptly (and in no event more than thirty (30) calendar days after the Effective Date) file a motion(s) for a Preliminary Approval Order, including their respective proposed notice(s) and notice plan(s) to inform potential EPP Settlement Class Members, those Consumers and Corporate Entities on whose behalf the Attorneys General have asserted claims, and anyone else for whom notice is required, of their right (i) to object to this Agreement or (ii) to file a timely and valid request for exclusion. The Attorneys General and the EPPs will coordinate in providing notice in order to minimize cost and avoid duplication.

B. In the event that the court fails to give preliminary approval to this Agreement, then the Parties shall in good faith seek to agree on revisions to this Agreement that would remedy any issues preventing preliminary approval while retaining the spirit of the Agreement. If they are unable to agree on such revisions despite their good faith efforts, they shall each have the option to rescind this Agreement.

C. Within sixty (60) calendar days of the Preliminary Approval Order and the court's approval of the allocation plans, notice(s) and notice plan(s) submitted by the Attorneys General and the EPPs to the court, or such other time as directed by the court, the Attorneys General and EPPs shall implement their notice plan(s), providing EPP Settlement Class Members, those Consumers and Corporate Entities on whose behalf the Attorneys General have asserted claims, and anyone else for whom notice is required notice of their rights (i) to object to this Agreement or (ii) to file a timely and valid request for exclusion. To the extent permitted by law, the notice will provide that EPP Settlement Class Members and those Consumers and Corporate Entities on whose behalf the Attorneys General have asserted claims who opt out of either Apotex's settlement with the EPPs (the "EPP Settlement") or Apotex's settlement with the Attorneys General (the "AG Settlement") will also be required to opt out of the other settlement.

D. EPP Settlement Class Members and those Consumers and Corporate Entities on whose behalf the Attorneys General have asserted claims shall be given notice as required by the Federal Rules of Civil Procedure. Costs for the notice will be paid from the State Escrow and EPP Escrow, but shall be limited to $500,000 from each of those two escrow accounts.

E. Within thirty (30) calendar days following the conclusion of the Notice Period or as otherwise agreed by the Parties or directed by the court(s), the Attorneys General and EPPs shall file with the court that has jurisdiction over their particular Action(s) a Motion(s) for a Final Approval Order. At least seven (7) calendar days prior to filing their Motion for a Final

Approval Order, Plaintiffs shall provide a copy of such motion (including all exhibits and attachments to such motion) to Apotex for review.

## IV.  Exclusions

A.  Subject to court approval (by the court that has jurisdiction over the particular Action(s)), any Consumer or Corporate Entity may seek to be excluded from the AG Settlement by submitting a valid and timely request for exclusion. The Attorneys General, State Entities identified on Appendix B, and other State Entities that accept a distribution of settlement proceeds from the Attorneys General's settlements in the MDL or, in the event of remand, in any court to which the State Actions have been or may be remanded, are bound by this Agreement upon execution and have no right to seek exclusion. Any Consumer or Corporate Entity that submits a valid and timely request for exclusion will not be eligible to receive a distribution of any portion of the State Settlement Amount and will have no rights with respect to the AG Settlement. Apotex reserves all legal rights and defenses as to all such persons or entities that submit a valid and timely request for exclusion, and nothing in this Agreement shall be used against Apotex in any proceeding involving such persons or entities.

B.  Subject to court approval, in any written request for exclusion from the AG Settlement, the Consumer or Corporate Entity seeking exclusion must state his, her, or its full name, address, telephone number and e-mail address and include a statement that he, she, or it wishes to be excluded from the AG Settlement.

C.  Subject to court approval, any person or entity that is a potential member of the EPP Settlement Class may seek to be excluded from the EPP Settlement by submitting a valid and timely request for exclusion. Any such person or entity that submits a valid and timely request for exclusion will not be eligible to receive a distribution of any portion of the EPP Settlement Amount and will have no rights with respect to the EPP Settlement. Apotex reserves all legal rights and defenses as to all such persons or entities, and nothing in this Agreement shall be used against Apotex in any proceeding involving such persons or entities.

D.  Subject to court approval, in any written request for exclusion from the EPP Settlement, the person or entity seeking exclusion from the EPP Settlement must state his, her, or its full name, address, telephone number and e-mail address and include a statement that he, she, or it wishes to be excluded from the EPP Settlement. Any self-insured entity that seeks exclusion for its prescription drug plan (or health plan with prescription drug benefits) shall state the name of the plan with specificity. Any person or entity seeking to exclude another person or entity, e.g., an insurer seeking to exclude its Administrative Services Only ("ASO") clients, must identify with specificity each such person or entity it seeks to exclude and must submit documentation showing its authority to exclude each such person or entity. In addition, any person or entity that seeks to exclude from the EPP settlement any claims assigned to that person or entity must submit documentation showing its assignment and authority to exclude those claims.

E.  To the extent legally permissible, a Consumer or Corporate Entity may not seek

exclusion from either the AG Settlement or the EPP Settlement, while not seeking exclusion from the other. To the extent legally permissible, any Consumer or Corporate Entity that submits a valid and timely request for exclusion from either settlement shall be deemed to have requested exclusion from both. (However, the Attorneys General, State Entities listed on Appendix B, and State Entities that accept a distribution of settlement proceeds from the Attorneys General's settlements in the MDL or, in the event of remand, any court to which the State Actions have been or may be remanded, shall be bound by the AG Settlement and ineligible for exclusion.)

F.     Subject to court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable notice will be invalid, and the person or entity (including, with respect to the AG Settlement and State Actions, any Consumer or Corporate Entity) serving such an invalid request shall be bound by this Agreement, including the AG Settlement (with respect to any Consumer or Corporate Entity) and the EPP Settlement (with respect to any EPP Settlement Class Member), upon Final Court Approval.

G.     The Attorneys General and the EPP Settlement Class Counsel shall, within ten (10) calendar days of the deadline for submitting a request for exclusion (the "Opt-Out Deadline"), provide Apotex with a list of, and copies of, all requests for exclusion. The Attorneys General and EPP Settlement Class Counsel shall file with their Motion(s) for Final Approval a list of all persons and entities that timely and validly requested exclusion.

H.     Any of the Parties may dispute an exclusion request, in which case they shall, if possible, seek to resolve the disputed exclusion request by agreement within thirty (30) calendar days of the Opt-Out Deadline. If necessary, the Parties will seek court approval of any such resolutions. If the Parties are unable to resolve any such disputes, the Parties will submit such unresolved disputes to the court for decision.

## V.     Impact of Exclusions on the Agreement

A.     Impact on the EPP Settlement Amount

1.     The EPP Settlement Amount shall be reduced pursuant to a confidential calculation agreed to by the Parties that takes into account the percentage of the potential EPP Settlement Class Members that submit a valid and timely request for exclusion from the EPP Settlement Class (the "Opt-Out Percentage"). The amount by which the original EPP Settlement Amount set forth in Paragraph I.N exceeds the revised EPP Settlement Amount after reduction for exclusions (the "Opt-Out Reduction") shall be returned to Apotex, along with a pro rata portion of interest accrued on the EPP Escrow. Apotex and EPP Settlement Class Counsel shall cooperate in good faith in determining the amount of this reduction.

2.     In the event that more than a confidential percentage of the total EPP Settlement Class agreed to by the Parties submits a valid and timely request for exclusion, Apotex will have the right in its sole discretion to terminate the settlement and receive full reimbursement of the EPP Settlement Payment, along with interest accrued

on the EPP Escrow, less the amount spent on class notice and other administrative expenses, up to $500,000.

3.    Within thirty (30) calendar days after the Opt-Out Deadline, EPP Settlement Class Counsel shall inform Apotex of the Opt-Out Percentage and the Opt-Out Reduction.  EPP Settlement Class Counsel shall explain the basis for their calculations and provide any supporting data or documentation reasonably requested by Apotex.

4.    Apotex shall within fifteen (15) calendar days thereafter inform EPP Settlement Class Counsel if Apotex disputes the calculations provided by EPP Settlement Class Counsel.

5.    If there is no dispute about the calculations provided by EPP Settlement Class Counsel, and the Opt-Out Percentage is greater than the confidential percentage agreed to by the Parties, Apotex shall also inform EPP Settlement Class Counsel within fifteen (15) calendar days after receiving the information required under Paragraph V.A.3 whether it elects to terminate the Agreement with respect to its settlement with the EPPs and the EPP Settlement Class.

6.    If there is no dispute and either Apotex's right to terminate has not vested, or Apotex has not elected to terminate as provided herein, then the amount of the Opt-Out Reduction shall be returned to Apotex, along with a pro rata portion of interest accrued on the EPP Escrow, within thirty (30) calendar days thereafter.  If there is no dispute and Apotex has elected to terminate as provided herein, then the full EPP Settlement Amount shall be returned to Apotex, along with all interest accrued on the EPP Escrow, minus the expenses authorized and actually incurred pursuant to Section X, within thirty (30) calendar days thereafter.

7.    If Apotex informs EPP Settlement Class Counsel that there is a dispute concerning these calculations, Apotex and EPP Settlement Class Counsel will seek in good faith to resolve that dispute.  If they are unable to come to agreement within fifteen (15) calendar days, either party may submit the dispute to the court.  If based on the court's order, Apotex is entitled to terminate the Agreement with respect to the settlement with the EPPs and the EPP Settlement Class, Apotex shall inform EPP Settlement Class Counsel of its election within ten (10) calendar days of that order.  If Apotex does not elect to terminate (or is not entitled to elect to terminate), then the amount of the Opt-Out Reduction shall be returned to Apotex, along with a pro rata portion of interest accrued on the EPP Escrow, within thirty (30) calendar days of the court's order.  If Apotex does elect to terminate, then the full EPP Settlement Amount shall be returned to Apotex, along with all interest accrued on the EPP Escrow, minus the expenses authorized and

actually incurred pursuant to Section X, within thirty (30) calendar days of the court's order.

## VI.    Release and Covenant Not To Sue

A.      In consideration of Apotex's obligations under this Agreement, the State Releasors and the EPP Releasors (on behalf of themselves and their respective past and present parents, subsidiaries, and affiliates, as well as their past and present general and limited partners, stockholders, officers, directors, employees, agents, attorneys, servants, predecessors, successors, heirs, executors, administrators, and representatives) hereby release, acquit, and forever discharge all of the Apotex Releasees (including past and present parents, subsidiaries, divisions, affiliates, stockholders, and general or limited partners, as well as all past and present officers, directors, employees, trustees, insurers, agents, attorneys, and any other representatives thereof) from all Released Claims.

B.      The State Releasors and the EPP Releasors may discover facts other than or different from those which they know or believe to be true with respect to the Released Claims, but the State Releasors and the EPP Releasors expressly waive and fully, finally, and forever settle and resolve, any known or unknown, suspected or unsuspected, contingent or non-contingent claims arising out of the Conduct that they have released or for which they have covenanted not to sue, without regard to the subsequent discovery or existence of such different or additional facts.

C.      With respect to the Released Claims, the State Releasors and the EPP Releasors expressly waive and release, any and all provisions, rights, and benefits under any law of any state or territory in the United States, or principle of common law that provides that a general release does not extend to claims that the creditor or releasing party does not know of or suspect to exist in his or her favor at the time of executing the release.

D.      That includes California Civil Code § 1542.  With respect to the Released Claims, the State Releasors and the EPP Releasors expressly waive and release all provisions, rights, and benefits under California Civil Code § 1542. That provision states as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

E.      The State Releasors and the EPP Releasors absolutely, unconditionally, and irrevocably covenant not to bring, file, or otherwise assert any Released Claim, or to cause or assist to be brought, filed, or otherwise asserted any Released Claims, or to otherwise seek to establish liability for any Released Claims against any Apotex Releasees in any forum whatsoever, whether on their own behalf or on behalf of any other natural person or entity, including any State, State Entity, political subdivision (including any county, city, township, or

municipality), Consumer, or Corporate Entity, to the fullest extent permitted by law.

F.      As part of the proposed court orders to be submitted to the court with the motion for final approval under Section III of this Agreement, the Attorneys General and the EPPs shall dismiss with prejudice all claims against Apotex in the Actions.  All Released Claims shall be finally, fully, and forever resolved, settled, compromised, and released, with prejudice, and the Apotex Releasees shall not be named a defendant in any future new or amended complaint arising out of or related to the Released Claims.

G.      This Agreement resolves claims only against the Apotex Releasees, and except as specifically provided herein, is not intended to affect in any way the rights that the Attorneys General or EPPs may have against any other party, person, or entity that is not included within the definition of Apotex Releasees.

## VII.    Compliance and Reporting to State Attorneys General

A.      Apotex covenants to the Attorneys General that it shall not, for seven years from the execution of this Agreement, engage in any price-fixing, bid-rigging, or market allocation as to any Generic Pharmaceutical Product in violation of Section 1 of the Sherman Act.  Upon good cause shown, the Attorneys General may petition the court for a three-year extension of this covenant.  That covenant shall be implemented as part of the proposed court orders to be submitted to the court with the motion for Final Court Approval under Paragraph III.A of this Agreement.

B.      In addition, for the duration of the CIA, Apotex covenants to the Attorneys General that it will substantially maintain its existing compliance program, as set out in the documents shared with the Attorneys General prior to the date of entry of this Agreement. Apotex may make reasonable, non-material changes to its compliance program from time to time and will provide an annual report to the Attorneys General as to its compliance program, by email to up to four designated contacts identified in advance by the Attorneys General.  That report shall specify any changes to Apotex's compliance program since the last report, shall provide detail as to whether the requirements of the program were carried out over the course of the past year, and shall confirm that all sales officers and employees, and any other officers and employees involved in pricing, have attended Apotex's compliance training within the past 12 months.  That covenant shall be implemented as part of the proposed court orders to be submitted to the court with the motion for Final Court Approval.

C.      Apotex shall in this same report to the Attorneys General: (a) confirm that it is in substantial compliance with the terms of the CIA, including its obligations to maintain a compliance officer, compliance committee, and compliance training program; and (b) either confirm that no potential antitrust violations have been identified or provide a brief description of any potential antitrust violations disclosed pursuant to Apotex's obligations under the CIA.

D.      During this same time period, Apotex shall submit to the jurisdiction of the court in the MDL (or any other court to which the State Actions have been or may be remanded) for

purposes of enforcing the provisions in this Section VII.

E.     All reports that Apotex provides to the Attorneys General under this Paragraph shall be designated "Highly Confidential" pursuant to the protective order entered in the MDL, as well as the protective order(s) entered in any other court to which any of the State Actions have been or may be remanded, and shall not be disclosed to anyone other than the Attorneys General or used for any purpose other than to enforce this Agreement.[8]

## VIII.   Discovery, Authentication and Cooperation

A.     As of the Effective Date, continuing unless this Agreement is terminated as provided herein, neither the Attorneys General nor the EPPs shall serve any discovery requests on Apotex, take depositions of Apotex, file any motions against Apotex, or take any other adverse action against Apotex in the MDL (or in any court to which any State Action has been or may be remanded) or any related litigation except to enforce the terms of this Agreement. Likewise, as of the Effective Date, continuing unless this Agreement is terminated as provided herein, Apotex shall not serve any discovery requests on the Attorneys General or the EPPs, take depositions of the Attorneys General or the EPPs, file any motions against the Attorneys General or the EPPs, or take any other adverse action against the Attorneys General or the EPPs in the MDL (or in any court to which any State Action has been or may be remanded) or any related litigation except to enforce the terms of this Agreement. For the avoidance of doubt, the Attorneys General and the EPPs may continue to attend depositions of current and former Apotex employees and may question those employees as it relates to the prosecution of claims against the non-Apotex Defendants. Counsel for Apotex may likewise continue to attend depositions of current and former employees of the Attorneys General and the EPPs, and of any other individuals represented by the Attorneys General or the EPPs, and may question those individuals as it relates to Apotex's defense of claims brought by MDL plaintiffs other than the Attorneys General or the EPPs.

B.     The Attorneys General and the EPPs shall continue to have the same rights that they currently have to receive discovery provided by Apotex to other parties in the MDL (or in any court to which any State Action has been or may be remanded) pursuant to the protective order governing the use of documents and other information produced in the MDL, as well as the protective order(s) entered in any other court to which any of the State Actions has been or may be remanded. In addition, Apotex will use reasonable efforts to provide information necessary to authenticate and admit up to 150 documents produced by Apotex, by affidavit if permitted by the court and by witness testimony at trial if necessary.

C.     Similarly, Apotex shall continue to have the same rights that it currently has to receive discovery provided by the Attorneys General and the EPPs to other parties in the Actions pursuant to the protective order governing the use of documents and other information produced

---

[8] The Attorneys General agree to seek a protective order in any court to which any State Action has been or may be remanded, providing for "Highly Confidential" treatment of such information, at least equivalent to the protection provided under the protective order in the MDL.

in the MDL (and in any other court to which any of the State Actions has been or may be remanded). In addition, the Attorneys General and the EPPs shall use reasonable efforts to provide information necessary to authenticate up to 150 documents each produced by the Attorneys General or the EPPs, by affidavit if permitted by the court and by witness testimony at trial if necessary.

D.    In addition to the above, Apotex agrees to provide cooperation to the Attorneys General and EPPs as set forth in Appendix C. All such cooperation shall be treated by the Attorneys General and the EPPs as "highly confidential" and not disclosed to any other party in the MDL or any related proceedings (including in any other court to which any State Action has been or may be remanded).

E.    Apotex will also in good faith consider reasonable requests from the Attorneys General or the EPPs for additional assistance that does not impose an undue burden on Apotex. The Attorneys General and the EPPs will likewise in good faith consider reasonable requests from Apotex for additional assistance that does not impose an undue burden on the Attorneys General and/or the EPPs.

F.    Apotex shall not be required to produce any documents or otherwise disclose information protected by the work product doctrine, attorney-client privilege, common-interest privilege, joint-defense privilege, or any other applicable doctrine or privilege; or disclosure of which is prohibited by any relevant law (including foreign laws), government entities, or court order.

## IX.    Qualified Settlement Fund

A.    Each of the State Escrow and the EPP Escrow (each, a "Settlement Fund") will be established by order of the court at Huntington Bank with such bank serving as escrow agent ("Escrow Agent") subject to one or more escrow agreements mutually acceptable to the Parties. Each Settlement Fund is established to resolve and satisfy one or more claims described in the preamble to this Agreement, and each shall be subject to the court's continuing supervision and control. In addition, the Attorneys General and EPP Settlement Class Counsel shall make such elections as necessary or advisable to carry out the provisions of this Section IX. Such elections shall be made in compliance with the procedures and requirements contained in any applicable regulations.

B.    The Parties intend that each Settlement Fund shall be a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, shall act in a manner consistent with the treatment of each Settlement Fund as such a qualified settlement fund, and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. All provisions of this Agreement shall be interpreted in a manner that is consistent with each Settlement Fund being a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. The administrator for the EPP Escrow shall be a claims administrator selected by EPP Settlement Class Counsel and approved by the court, and the administrator for the State Escrow shall be Attorneys General of New York, Oregon, and Florida (each, in such capacity, an

"Administrator"). Each Administrator shall cause the timely and proper filing of all informational and other tax returns necessary or advisable with respect to the applicable Settlement Fund (including without limitation the returns described in Treasury Regulation §§ 1.468B-2(k)(1) and (l)(2)). Each Administrator shall make a "relation-back election" (as defined in Treasury Regulation § 1.468B-1(j)), if available, to permit the applicable Settlement Fund to be treated as a qualified settlement fund from the earliest permitted date. It shall be the responsibility of each Administrator to cause the timely and proper preparation and delivery of the necessary documentation with respect to the applicable Settlement Fund for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

       C.    The Escrow Agents shall cause the Settlement Funds to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively, by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates. Apotex shall bear no risk related to the Settlement Funds. The Settlement Funds shall be deemed and considered to be in custodia legis of the court, and shall remain subject to the jurisdiction of the court, until such time as the funds therein shall be distributed pursuant to this Agreement or further order(s) of the court.

       D.    All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned on a Settlement Fund, including any taxes or tax detriments that may be imposed upon Apotex or any other Apotex Releasees with respect to income earned on a Settlement Fund for any period during which such Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of a Settlement Fund (including expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) tax returns with respect to the Settlement Fund ("Tax Expenses")), shall be paid out of such Settlement Funds.

       E.    Neither Apotex nor any other Apotex Releasee nor their respective counsel shall have any liability or responsibility with respect to a Settlement Fund for the Taxes or the Tax Expenses or the filing of any tax returns or other documents with the Internal Revenue Service or any other taxing authority. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the applicable Settlement Fund and shall be timely paid by the Administrators out of such Settlement Fund without prior order from the court and each Administrator shall be obliged (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)). Neither Apotex nor any Apotex Releasee shall be responsible or have any liability for any reporting requirements that may relate thereto. The Parties agree to cooperate with each

other and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph IX.E.

F.      If this Agreement does not receive the Final Approval Order, then the Settlement Funds (net of costs incurred and expended in accordance with Paragraph IX.D and including interest accrued) shall be returned to Apotex within thirty (30) calendar days of the court's final determination in accordance with that determination.

## X.      Payment of Expenses

A.      Apotex agrees to permit use of a maximum of USD $500,000 of each of the Settlement Funds toward (i) the cost of providing notice to the potential members of the EPP Settlement Class and those on whose behalf the Attorneys General assert claims, and (ii) the costs of administration of the Settlement Funds prior to final court approval after the EPP Settlement Amount and State Settlement Amount are each paid into the Escrow Accounts.  To the extent such expenses have been actually incurred or paid for notice and administration costs, those notice and administration expenses (up to the maximum of USD $500,000 from each of the respective Settlement Funds) are not recoupable if this settlement does not become final or is terminated.  The Escrow Agents shall return all remaining portions of the Settlement Funds (net of costs incurred and expended in accordance with Paragraph IX.D and including interest accrued) to Apotex should this Agreement not receive Final Court Approval.  Apotex shall not be liable for any of the costs or expenses of the litigation incurred by EPPs or Attorneys General in the Actions or otherwise, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the court or Special Master, appeals, trials, or the negotiation of other settlements, or for the claims administration process under this Agreement and costs, except to the extent that any such costs or expenses are awarded from the Settlement Funds by court order.

## XI.      The Settlement Funds

A.      The EPP Releasors and State Releasors shall look solely to the Settlement Funds for settlement and satisfaction against the Apotex Releasees of all Released Claims and shall have no other recovery against Apotex or any of the Apotex Releasees for any Released Claims.

B.      After this Agreement receives Final Court Approval, and at a time to be determined by EPP Settlement Class Counsel and the Attorneys General, respectively, the Settlement Funds shall be distributed in accordance with the plans to be submitted, subject to approval by the court.  In no event shall Apotex or any Apotex Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment or distribution of the Settlement Funds, or the administration of the Settlement Funds, including the costs and expenses of such investment, distribution and administration.

## XII.      EPP Settlement Class Counsel's Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives

A.      EPPs and EPP Settlement Class Counsel shall be reimbursed subject to court

approval and indemnified solely out of the EPP Escrow for their costs and expenses. Apotex and the other Apotex Releasees shall not be liable for any costs, fees, or expenses of any of EPPs' or the EPP Settlement Classes' respective attorneys, experts, advisors, agents, or representatives. All such costs, fees, and expenses as approved by the court shall be paid out of the EPP Escrow.

B. EPP Settlement Class Counsel may, after Preliminary Approval of this Agreement at a time to be determined in their sole discretion, submit an application to the court ("Fee and Expense Application") for the following payments to be made to EPP Settlement Class Counsel after Final Court Approval of this Agreement: (i) an award of attorneys' fees not in excess of one third of the sum of the EPP Settlement Amount and any interest accrued thereon while in the EPP Escrow, plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Actions ("Fee and Expense Award"). In addition, EPP Settlement Class Counsel may, at a time to be determined in their sole discretion, submit an application for incentive awards to be paid to the EPP class representatives. EPP Settlement Class Counsel reserve the right to make additional applications from time to time for fees and expenses incurred and reasonable incentive awards, but in no event shall the Apotex Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the EPP Escrow.

C. Subject to court approval, EPPs and EPP Settlement Class Counsel shall be reimbursed and paid solely out of the EPP Escrow for all expenses including attorneys' fees and past, current, or future litigation expenses and incentive awards. Attorneys' fees and expenses awarded by the court shall be payable from the EPP Escrow upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to EPP Settlement Class Counsel's obligation to make appropriate refunds or repayments to the EPP Escrow, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is reduced or reversed, or in the event this Agreement is rescinded or terminated pursuant to Sections V or XIII.

D. The procedure for and the allowance or disallowance by the court of the application by EPP Settlement Class Counsel for attorneys' fees, costs, and expenses, and incentive awards for class representatives to be paid out of the EPP Escrow are not part of this Agreement, and are to be considered by the court separately from the court's consideration of the Parties' good faith in entering into this Agreement and of the fairness, reasonableness, and adequacy of the settlement under this Agreement. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

E. Other than to pay the EPP Settlement Amount, as provided herein, neither Apotex nor any other Apotex Releasee shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to EPP Settlement Class Counsel of any Fee and Expense Award in the Actions.

F. Neither Apotex nor any other Apotex Releasee shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among EPP Settlement Class

Counsel and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the court may make in the Actions.

## XIII. Rescission If Agreement Is Not Approved or Final Judgment Is Not Entered

A. In the event that the court fails to grant Final Court Approval to this Agreement, then the Parties shall in good faith seek to agree on revisions to this Agreement that would remedy any issues preventing Final Court Approval while retaining the spirit of the Agreement. If they are unable to come to agreement on such revisions, despite their good faith efforts, they shall each have the option to rescind this Agreement.

B. A modification or reversal on appeal of any amount of EPP Settlement Class Counsel's fees and expenses awarded by the court out of the Settlement Funds shall not be deemed a basis to rescind this Agreement.

C. Written notice of the exercise of any right to rescind provided for under this Section XIII shall be made according to the terms herein.

D. In the event that this Agreement does not receive Final Court Approval, or this Agreement otherwise is terminated or rescinded by any party under any provision herein, then: (i) this Agreement shall be of no force or effect, except as expressly provided in Paragraph XIII.A and XIII.B or other portions of this Agreement; (ii) the Settlement Funds (with any interest accrued thereon) shall be returned forthwith to Apotex less only disbursements made in accordance with Section IX and Section X of this Agreement (and as otherwise consistent with Paragraph IX.F); and (iii) Apotex shall be entitled to any tax refunds owing to the Settlement Funds. At the request of Apotex, and at Apotex's expense, the Attorneys General and EPP Settlement Class Counsel shall cause to be filed claims for any tax refunds owed to the Settlement Funds and pay the proceeds, after deduction of any fees and expenses incurred with filing such claims for tax refunds, to Apotex. All expressly reserve all of their rights, claims and defenses if this Agreement does not receive Final Court Approval or is otherwise terminated or rescinded.

E. Further, and in any event, Apotex, the Attorneys General, and End-Payer Plaintiffs agree that this Agreement, whether or not it receives Final Court Approval or is otherwise terminated or rescinded by any Party under any provision herein, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing whatsoever by Apotex or any other Apotex Releasees, or (ii) the truth of any of the claims or allegations contained in the Actions or any other pleading filed in the MDL or any court to which any State Actions have been or may be remanded. Evidence derived from this Agreement, and any and all negotiations, documents, and discussions associated with it shall not be discoverable or used in any way, whether in the Actions or in any other action or proceeding, against Apotex or other Apotex Releasees (except to enforce this Agreement).

## XIV.  Adjustment to Settlement Funds/Limited Most Favored Nations

A.  In the event that the EPPs enter into a settlement agreement or binding term sheet, at any time prior to 6 months after the Effective Date, with any of the other Defendants in the MDL that have entered into a deferred prosecution agreement as of the Effective Date, with that settlement agreement or binding term sheet containing more favorable financial terms, then the EPPs shall return to Apotex a percentage of the EPP Settlement Payment, under the confidential terms agreed to by the Parties.  This Limited Most Favored Nations provision shall not apply to any settlement with a Defendant that has filed for bankruptcy or has made a credible showing of financial stress.

## XV.  Notice

A.  Notice to Apotex pursuant to this Settlement Agreement shall be sent by registered United States mail, return receipt requested, and electronic mail to:

April N. Williams
WilmerHale
2100 Pennsylvania Avenue NW
Washington, DC 20037
april.williams@wilmerhale.com

James W. Matthews
Foley & Lardner LLP
111 Huntington Ave.
Boston, MA 02199
jmatthews@foley.com

Max B. Chester
Foley & Lardner LLP
777 E. Wisconsin Ave.
Milwaukee, WI 53202
mchester@foley.com

B.  Notice to End-Payer Plaintiffs or EPP Settlement Class pursuant to this Settlement Agreement shall be sent by registered United States mail return receipt requested and electronic mail to Lead Counsel:

Roberta D. Liebenberg
Jeffrey S. Istvan
Fine, Kaplan and Black, R.P.C.
One South Broad Street
23rd Floor
Philadelphia, PA 19107
rliebenberg@finekaplan.com

jistvan@finekaplan.com

C.     Notice to Attorneys General pursuant to this Settlement Agreement shall be sent by registered United States mail return receipt requested and electronic mail, including to Lead Counsel:

Christopher Teters
Assistant Attorney General, Public Protection Division
Office of Kansas Attorney General Kris Kobach
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
(785) 296-3751
chris.teters@ag.ks.gov

## XVI.    Miscellaneous

A.     This Agreement shall not be deemed or construed to be an admission of liability or of any violation of any statute or law or of any wrongdoing by the Apotex Releasees.  Nor shall this Agreement be deemed as an admission by the Apotex Releasees of any of the allegations or claims by the Attorneys General or the EPPs.  Nor shall the Agreement be used as an admission as to the strength or weakness of any party's claims or defenses.  This Agreement may not be used by the Attorneys General, the EPPs, or anyone else in any pending or future civil, criminal, or administrative action or proceeding against the Apotex Releasees, except in a proceeding or action to enforce this Agreement.

B.     This Agreement may be executed in counterparts, each of which will be deemed an original, but which together will constitute one and the same instrument, and a facsimile signature or PDF signature shall be deemed an original signature for purposes of executing this Agreement.  In addition, the state Medicaid agencies listed on Appendix B will sign on a separate form, unless otherwise agreed-to in writing by Apotex.

C.     This Agreement, together with the confidential understandings identified herein, contains the entire Agreement between the parties, and no other understandings or agreements, verbal or otherwise, exist between the parties, except as set forth or referred to herein.

D.     This Agreement (other than the Cooperation Agreement, which is governed by its own terms) may not be modified, changed, cancelled, rescinded, amended, or varied (except under the specific termination provisions set forth herein), nor may any or all of its terms be waived, except by a writing signed by all of the parties.

E.     None of the parties to this Agreement shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

F.     Where this Agreement requires either party to provide notice or any other

23

communication or document to the other, such notice shall be in writing, and shall be provided as set forth in Section XV.

G.      This Agreement shall be governed by, construed by, and enforced in accordance with the laws of the State of Connecticut, including Conn. Gen. Stat. Ann. § 52-572h, barring contribution against a settling defendant.  In addition, the law of each state (including, e.g., Cal. Civ. Pro. Code § 877 and N.Y. Gen. Oblig. Law § 15-108) continues to apply with respect to all settlements entered into and judgments entered in connection with claims related to the Conduct and based on that state's law.  Consistent with such law, this Agreement is conditioned upon the court's finding that it was entered into in good faith.  In addition, Apotex has entered into supplemental agreements with certain States (Delaware, Georgia, Idaho, Maryland, Mississippi, New Mexico, Pennsylvania, and South Dakota) and the EPPs respectively that provide additional obligations concerning claims for contribution.  The parties agree that venue for any and all matters or disputes arising out of this Agreement and asserted by or against the EPPs shall lie solely in the U.S. District Court for the Eastern District of Pennsylvania.  Any and all matters or disputes arising out of this Agreement and asserted by or against the Attorneys General shall lie in the District Court to which the State Actions have been or may be remanded.

H.      Each party affirms that this Agreement has been executed by its authorized representative, who is acting within his or her capacity and authority and that by his or her signature this representative is binding the Party on behalf of whom the Agreement is executed to the terms and conditions of this Agreement.


IT IS HEREBY AGREED by the undersigned as of:

**FINE, KAPLAN AND BLACK, R.P.C.**

By: _____      Date: _____11/7/24_____

Roberta D. Liebenberg
Jeffrey S. Istvan
Counsel for EPPs

**WILMER CUTLER PICKERING HALE
AND DORR LLP**

**FOLEY & LARDNER LLP**

By: _Steve Cherry_____      Date: _9/9/2024_____

Steven F. Cherry
April N. Williams
James W. Matthews
Counsel for Apotex Corp.

/s/ Jeff Pickett
Jeff Pickett
Senior Assistant Attorney General
State of Alaska, Department of Law
1031 W. 4th Ave., Suite 200
Anchorage, AK 99501
Tel: (907) 269-5275
jeff.pickett@alaska.gov

*Counsel for the State of Alaska*

Dated: October 21, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## ALASKA

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Alaska (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 09/20/24

Signature: _____

Name: _____ ARNE SOLDWEDEL _____

Position/Title: _ DEPUTY DIRECTOR, ASST. ATTORNEY GENERAL _

_____ ALASKA MFCU _____

**Single State Agency for Medicaid Signature:**

Dated: 9/23/24

Signature:

Name: Emily Ricci

Position/Title: Deputy Commisioner/Medicaid Director

State of Alaska Department of Health

/s/ Robert A. Bernheim
Robert A. Bernheim
Unit Chief Counsel
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004
Tel: (520) 628-6507
Robert.Bernheim@azag.gov

*Counsel for the State of Arizona*

Dated: October 21, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## ARIZONA

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Arizona (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: **8-1-24**            Signature: _____

Name: **STEVEN J. DUPLISSIS**

Position/Title: **AZ MFCU DIRECTOR**

_____

**Single State Agency for Medicaid Signature:**

Dated: 8.1.2024

Signature: _____

Name: Vanessa J. Templeman

Position/Title: Inspector General

Arizona Health Care Cost Containment System, Office of Inspector General

/s/ Emilio Varanini
Emilio Varanini
Supervising Deputy Attorney
General
Office of the Attorney General California
455 Golden Gate, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3541
E-mail:  Emilio.Varanini@doj.ca.gov

*Attorney for the State of California*

Dated: October 21, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR CALIFORNIA

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of California (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.


**MFCU Signature:**


Date: July 11, 2024

Randal L. Glaser
Supervising Deputy Attorney General
California Department of Justice
Office of the Attorney General
Division of Medi-Cal Fraud and Elder Abuse

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT**
**SIGNATURE PAGE FOR**
**CALIFORNIA**

Dated: 9/4/2024     Signature: Judith Recchio   Digitally signed by Judith Recchio
                                                 Date: 2024.09.05 08:51:25 -07'00'

Name: Judith Recchio

Position/Title: Deputy Director and Chief Counsel

Department of Health Care Services

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

_(signature)_

Edward E. Manibusan
Attorney General
Commonwealth of the Northern Mariana Island
Caller Box 10007
Saipan, MP 96950
Tel: (670) 237-7500
attorney_general@cnmioag.org

*Counsel for The Commonwealth of the Northern Mariana Island*

Dated: _9/24/2024_

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

Dated: 09/26/2024     Signature: _____

Name:     Vicenta R. Borja

Position/Title:     Acting Director,
Commonwealth Medicaid Agency

FOR PLAINTIFF STATE OF COLORADO
PHILIP J. WEISER
ATTORNEY GENERAL

<u>/s/ *Robin Alexander*</u>
Robin Alexander
Assistant Attorney General
Colorado Department of Law
Consumer Protection Section
1300 Broadway, Ninth Floor
Denver, Colorado 80203
Telephone: 720.508.6235
Email: Robin.Alexander@coag.gov

**MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR**
**Colorado**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Colorado (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 8/5/2024＿＿＿＿＿＿  Signature: _Crystal Littrell_＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Name: ＿Crystal Littrell＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Position/Title: ＿First Assistant Attorney Genera/Director＿＿＿＿

＿Colorado Medicaid Fraud Control Unit＿＿＿＿＿＿＿

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
Colorado**


Dated: _7/24/2024_     Signature: _____

Name: _____Kim Bimestefer_____

Position/Title: _____HCPF, Executive Director_____

_____

/s/ W. Joseph Nielsen
W. Joseph Nielsen
Assistant Attorney General
Connecticut Office of the Attorney General
165 Capitol Ave.
Hartford, CT 06106
Tel: (860) 808-5030
joseph.nielsen@ct.gov

*Counsel for the State of Connecticut*

Dated: October 21, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## CONNECTICUT

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Connecticut (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 7/24/24

Signature: *Marjorie Szanski*

Name: Marjorie Szanski

Position/Title: Supervisory Assistant State's Attorney Director Medicaid Fraud Control Unit

**Single State Agency for Medicaid Signature:**

Dated:
**_9/6/24_____**

Signature: _A B Reeves_

Name: Andrea Barton Reeves, J.D.

Position/Title: Commissioner

Connecticut Department of Social Services

_____

Adam Gitlin
Chief, Antitrust and Nonprofit
Enforcement Section
400 6th St. NW, 10th Fl.
Washington, DC 20001
Tel: (202) 442-9864
Adam.Gitlin@dc.gov

*Counsel for District of Columbia*

Dated: 10/1/2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## THE DISTRICT OF COLUMBIA

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the District of Columbia (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the District of Columbia has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the District of Columbia and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 09/12/2024        Signature: *Lavan Griffith*

Name: LaVan Griffith

Position/Title: Assistant Inspector General - Director

D.C.Office of Inspector General - MFCU

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT**
**SIGNATURE PAGE FOR THE**
**DISTRICT OF COLUMBIA**

Dated: _9/30/2024_     Signature: _____

Name: Wayne Turnage
_____

Position/Title: Director
_____

D.C. Department of Health Care Finance
_____

Michael A. Undorf
Deputy Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
(302) 683-8816
michael.undorf@delaware.gov

*Counsel for the State of Delaware*

Dated: October 22, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR DELAWARE

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Delaware (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 7/16/24    Signature: /s/Stephen McDonald

Name: Stephen McDonald

Position/Title: Director

Medicaid Fraud Control Unit

Docusign Envelope ID: 3824C6C8-BBB5-4CC6-9ADD-B0590AB3ABCC

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
DELAWARE**

Dated: ___7/16/2024 | 7:40 AM EDT___     Signature: _____

Name: ___Andrew Wilson_____

Position/Title: ___Director_____

___Division of Medicaid & Medical Assistance (DMMA)___

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

**FOR PLAINTIFF STATE OF FLORIDA
ASHLEY MOODY
ATTORNEY GENERAL**


By: _____

John Guard
Chief Deputy Attorney General
Nicholas J. Weilhammer
Associate Deputy Attorney General for Enforcement
Lizabeth A. Brady
Director, Antitrust Division
Liz.Brady@myfloridalegal.com
Timothy Fraser
Senior Assistant Attorney General
Timothy.Fraser@myfloridalegal.com
Office of the Attorney General
State of Florida
PL-01, The Capitol
Tallahassee, FL 32399-1050
Tel:    (850) 414-3300
Fax:    (850) 488-9134

Dated 10/31/2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR FLORIDA

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Florida (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 10/31/2024     Signature: _____

Name: **John M. Guard**

Position/Title: **Chief Deputy Attorney General**

**State of Florida**

John Guard
E-signed 2024-10-31 10:59AM EDT
john.guard@myfloridalegal.com

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT**
**SIGNATURE PAGE FOR**
**FLORIDA**

Dated: 10/18/2024    Signature: _____

Name: _Andrew T. Sheeran_

Position/Title: _General Counsel_

STATE OF GEORGIA

/s/ Logan Winkles
Christopher Carr, Attorney General
Logan Winkles, Deputy Attorney General
Ron Stay, Sr. Asst. Attorney General
Charles Thimmesch, Sr. Asst. Attorney General
Office of the Georgia Attorney General
40 Capitol Sq. SW
Atlanta, GA 30334
(404) 458-3626
cthimmesch@law.ga.gov

*Attorneys for the State of Georgia*

Dated 11/6/2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## GEORGIA

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Georgia (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 7/31/24       Signature: _____

Name: Jim Mooney

Position/Title: Deputy Attorney General

Medicaid Fraud Division

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
GEORGIA**


Dated: 7/30/2024          Signature:     *Melanie Simon*

                          Name:          Melanie Simon

                          Position/Title: General Counsel

                                          Georgia Department of Community Health

/s/ Noah Goerlitz
Noah Goerlitz
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Tel: (515) 725-1018
noah.goerlitz@ag.iowa.gov

*Attorney for Plaintiff State of Iowa*

Dated: October 21, 2024

**MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
IOWA**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Iowa (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: __7/19/24__    Signature: _Tricia Dieleman_

Name: Tricia Dieleman

Position/Title: Assistant Attorney General for the Iowa MFCU

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
IOWA**

Dated: 07/19/2024        Signature: _Elizabeth Matney_ _____

Name:        Elizabeth Matney

Position/Title:        Director, Iowa Medicaid & Division of Administration and HHS
Deputy Director

_____

_(signature)_

John K. Olson
Deputy Attorney General
Consumer Protection Division
954 West Jefferson Street, Second Floor
Boise, ID  83720-0010
Tel: (208) 332-3549
John.Olson@ag.idaho.gov

_Counsel for Idaho_

Dated: ___Sept 16, 2024___

**MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
IDAHO**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Idaho (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 07/16/2024      Signature: *Ashley Klenski*

Name: Ashley Klenski

Position/Title: Director

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

**Single State Agency for Medicaid Signature:**

Dated: **_7-15-2024_____**     Signature: *Juliet Charron*

Name:     Juliet Charron

Position/Title:     Deputy Director, Medicaid and Behavioral Health,
Idaho Department of Health and Welfare

*/s/ Brian M. Yost*
Brian M. Yost, Assistant Attorney General
David Buysse, Deputy Division Chief
Daniel Betancourt, Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St., Floor 23
Chicago, Illinois 60603
Tel: (872) 276-3598
Brian.Yost@ilag.gov

*Counsel for the State of Illinois*

Dated: October 23, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## Illinois

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Illinois (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 8/6/24          Signature: *Heather D'Orazio*

                      Name: Heather D'Orazio

               Position/Title: Director, IL Medicaid Fraud Control Unit

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
Illinois**

Dated: 8/6/24          Signature: _Elizabeth M. Whitehorn_

                        Name: Elizabeth M. Whitehorn

                Position/Title: Director, Illinois Department of Healthcare and

                                Family Services

By:  */s/ Tamara Weaver*
Deputy Attorney General
Indiana Government Center South – 5th Fl.
302 W. Washington Street
Indianapolis, IN  46204-2770
Phone: (317) 234-7122
Email:  Tamara.Weaver@atg.in.gov

*Counsel for Indiana*

Dated: October 22, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR INDIANA

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Indiana (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated:
___8/29/2024_____

Signature: *Matthew Whitmire*

Name: Matthew Whitmire

Position/Title: Director

Indiana Medicaid Fraud Control Unit

# SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
## SIGNATURE PAGE FOR
## INDIANA

Dated: **8/29/2024**

Signature:

Name: *Cora A Steinmetz*

Position/Title:

Cora A. Steinmetz

Medicaid Director

Family & Social Services Administration

FOR PLAINTIFF STATE OF KANSAS

KRIS W. KOBACH
ATTORNEY GENERAL


 /s/Lynette Bakker
Lynette R. Bakker
First Assistant Attorney General
Christopher Teters
Assistant Attorney General
Antitrust & Business Organizations
Public Protection Division
Office of the Kansas Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
Tel: (785) 296-3751
lynette.bakker@ag.ks.gov
chris.teters@ag.ks.gov

*Counsel for Kansas*

Dated: October 15, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## KANSAS

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Kansas (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 8/12/24        Signature: _____

Name:        Victor Braden

Position/Title:        Deputy Attorney General

Office of the Kansas Attorney General

SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
KANSAS

Dated: Aug 5, 2024       Signature: _____ Janet Stanek _____

Name: Janet Stanek

Position/Title: Secretary

Kansas Department of Health and Environment

Jonathan E. Farmer

Jonathan E. Farmer
Deputy Executive Director of Consumer Protection
Office of the Attorney General of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
Tel: 502-696-5448
Fax: 502-573-8317
Jonathan.Farmer@ky.gov

*Counsel for the Commonwealth of Kentucky*


Dated: October 18, 2024

**MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR KENTUCKY**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Kentucky (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 07/14/24    Signature: _Matt Klein_

Name: Matthew Kleinert

Position/Title: Executive Director
Ky MFCU

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
KENTUCKY**

Dated: 07/24/24          Signature: _Lisa D. Lee_

                         Name: Lisa D. Lee

                         Position/Title: Commissioner

                         Kentucky Department for Medicaid Services

PLAINTIFF STATE OF LOUISIANA

LIZ MURRILL
LOUISIANA ATTORNEY GENERAL

BY: _William H. Rogers_

       John J. Kelley, Section Chief
       William H. Rogers, Jr., Assistant Attorney General
       Public Protection Division
       Office of the Louisiana Attorney General
       1885 North Third Street
       Baton Rouge, LA 70802
       Tel. (225) 326-6400
       Fax (225) 326-6499
       KelleyJ@ag.louisiana.gov
       rogersw@ag.louisiana.gov

Dated:_____

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR LOUISIANA

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Louisiana (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into _In re Generic Pharmaceuticals Pricing Antitrust Litigation_, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 7/23/2024    Signature: _Matthew P Stafford Jr._

Name: Matthew P. Stafford, Jr.

Position/Title: Director

Medicaid Fraud Control Unit

# SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
## SIGNATURE PAGE FOR
## LOUISIANA

Dated: 9/30/24

Signature: _Michael Harrington_

Name: _Michael Harrington_

Position/Title: _Secretary LDH_

[Signature Block for Apotex Settlement / Filings]


/s/ William Matlack
WILLIAM MATLACK
Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
Tel: (617) 963-2414
William.matlack@mass.gov

*Counsel for the Commonwealth of Massachusetts*

# MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## COMMONWEALTH OF MASSACHUSETTS

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the Commonwealth of Massachusetts (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: <u>8/5/24</u>

Signature: Ian Marinoff
Digitally signed by Ian Marinoff
Date: 2024.08.05 16:03:32 -04'00'

Name: Ian R. Marinoff

Position/Title: Managing Attorney, Medicaid Fraud Division

Massachusetts Office of the Attorney General

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
COMMONWEALTH OF MASSACHUSETTS**

Dated: 9/11/24     Signature: Kathleen E Walsh

Name: Kathleen E Walsh

Position/Title: Secretary

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

Schonette J. Walker
Assistant Attorney General
Chief, Antitrust Division
200 Saint Paul Place
19th Floor
Baltimore, Maryland 21202
410.576.6473
swalker@oag.state.md.us

*Counsel for Plaintiff State Maryland*

Dated: November 7, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR MARYLAND

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Maryland (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 16 July 2024     Signature: _____

Name: W. Zak Shirley

Position/Title: Director

Maryland MFVVU

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
MARYLAND**

Dated: 11/4/2024          Signature: _____

                          Name: Laura Herrera Scott

                          Position/Title: Secretary

                          _____

FOR PLAINTIFF STATE OF MAINE:

AARON M. FREY
ATTORNEY GENERAL

*/s/ Christina M. Moylan*
Christina M. Moylan
Chief, Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, Maine 04333-0006
Phone: 207.626.8800
christina.moylan@maine.gov

Attorney for Plaintiff State of Maine

Dated: November 6, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR MAINE

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Maine (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 9/30/2024   **Signature:** _____

**William R. Savage**
**Assistant Attorney General, Director,**
**Maine's Medicaid Fraud Control Unit**
**OFFICE OF THE ATTORNEY GENERAL**

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT**
**SIGNATURE PAGE FOR**
**STATE OF MAINE**

Dated: _10-1-2024_     Signature: _Sara Gagné-Holmes_

Name:     Sara Gagné-Holmes

Position/Title:     Acting Commissioner

Jonathan Comish
Assistant Attorney General
Michigan Department of Attorney General
Corporate Oversight Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7632
ComishJ@michigan.gov

*Counsel for State of Michigan*

Dated:  October 21, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR MICHIGAN

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Michigan (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: __July 25, 2024__    Signature: _____

Name:    Timothy C. Erickson

Position/Title:    First Assistant Attorney General

Health Care Fraud Division

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
MICHIGAN**

Dated: 7/30/24        Signature: _Meghan E. Groen_____

Name: _____
Meghan E. Groen

Position/Title: _____
Senior Deputy Director

_____
Michigan Department of Health and Human Services

/s/ Jon M. Woodruff
Jon M. Woodruff
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Tel: (651) 300-7425
jon.woodruff@ag.state.mn.us

*Counsel for the State of Minnesota*

Dated: <u>October 30, 2024</u>

# MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## Minnesota

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Minnesota (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 9-20-24

Signature: _____

Name: Nicholas Wanka

Position/Title: Director, Minnesota MFCU

Minnesota Attorney General's Office

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
Minnesota**

Dated: __9-19-2024__      Signature: _____

                          Name: _____Thomas Johnson_____

                          Position/Title: _____Deputy Inspector General_____

                          _____Minnesota Department of Human Services_____

FOR THE STATE OF MISSOURI

ANDREW BAILEY
ATTORNEY GENERAL

By: _____

Michael Schwalbert
Assistant Attorney General
Consumer Protection Section
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
michael.schwalbert@ago,mo.gov
Phone: 314-340-7888
Fax: 314-340-7981

**MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR MISSOURI**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Missouri (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: _____     Signature: _____

Name: Arvids V. Petersons

Position/Title: Chief Counsel/Director
Missouri Attorney General's Office
Medicaid Fraud Control Unit

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
MISSOURI**

Dated: 11-07-2024    Signature: _____

Name: Robert Knodell

Position/Title: Director

Missouri Department of Social Services

FOR PLAINTIFF STATE OF MISSISSIPPI
LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

By: /s/ Tricia L. Beale
Tricia L. Beale (MSB #99113)
Consumer Protection Division
Mississippi Attorney General's Office
1141 Bayview Ave., Suite 402
Biloxi, Mississippi 39530
Telephone: 228-386-4404
tricia.beale@ago.ms.gov

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR MISSISSIPPI

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of MISSISSIPPI (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: **August 2, 2025**

Signature: Marlin A. Miller

Name: **MARLIN A. MILLER**

Position/Title: **DIRECTOR MFCU, MISSISSIPPI**

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

# SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
## SIGNATURE PAGE FOR MISSISSIPPI

Dated: 10/31/24

Signature: *Cindy H. Bradshaw*

Name: Cindy H. Bradshaw

Position/Title: Executive Director

Mississippi Division of Medicaid

FOR PLAINTIFF STATE OF MONTANA

AUSTIN KNUDSEN
ATTORNEY GENERAL


 /s/Brent Mead_____
Brent Mead
*Deputy Solicitor General*
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
P.O. Box 200151
Helena, MT 59620-0151
Telephone: (406)444-2026
Email: brent.mead2@mt.gov

*Counsel for Montana*

Dated: October 7, 2024

**MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
MONTANA**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Montana (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: **9 July 2024**     Signature:        *gree W Gee*

Name: _____

Position/Title: _____
Bree Williamson Gee

_____
Assistant Attorney General for the State of Montana

_____

**Single State Agency for Medicaid Signature for Montana:**

Dated: 8/1/2024      Signature:      _R de Camara_

Name:

Rebecca de Camara

Position/Title:

Acting Medicaid and Health Services Executive
Director

PLAINTIFF STATE OF NORTH CAROLINA
JOSHUA H. STEIN
ATTORNEY GENERAL

By: */s/ Jessica V. Sutton*
Jessica V. Sutton
Special Deputy Attorney General
North Carolina Department of Justice
Consumer Protection Division
114 West Edenton Street
Raleigh, NC 27603
Telephone: (919) 716-6000
Fax: (919) 716-6050
jsutton2@ncdoj.gov

Counsel for Plaintiff State of North Carolina

Dated: November 6, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## NORTH CAROLINA

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of North Carolina (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: __9/30/2024__      Signature: _____

Name: _____
F. Edward Kirby, Jr.

Position/Title: _____
Senior Deputy Attorney General, Director

_____
North Carolina Medicaid Fraud Control Unit

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

Docusign Envelope ID: 87F87753-817F-41A0-ACAB-2DEEB6545716

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT**
**SIGNATURE PAGE FOR**
**NORTH CAROLINA**

Dated: 10/01/24 | 8:57 AM EDT

Signature: *Jay Ludlam*
06565C1C2A8F4C8...

Name: Jay Ludlam

Position/Title: Deputy Secretary, NC Medicaid

NCDHHS, Division of Health Benefits

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

STATE OF NORTH DAKOTA
Drew H. Wrigley
Attorney General

Elin S. Alm
Assistant Attorney General
Director, Consumer Protection & Antitrust Division
Office of Attorney General
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736
Tel: (701) 328-5570
ealm@nd.gov

*Counsel for North Dakota*

Dated: October 18, 2024.

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## NORTH DAKOTA

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of NORTH DAKOTA (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 7/29/24     Signature: _Marina Spahr_

Name: Marina Spahr

Position/Title: Director, MFCU, Assistant Attorney General

Assistant Attorney General

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT**
**SIGNATURE PAGE FOR**
**NORTH DAKOTA**

7/31/24
Dated: _____     Signature: _____

Name: Sara E. Stolt

Position/Title: Deputy Commissioner

Health & Human Services

FOR PLAINTIFF STATE OF NEBRASKA

MICHAEL T. HILGERS
ATTORNEY GENERAL

 /s/ Colin P. Snider
Colin P. Snider
Assistant Attorney for Antitrust
Nebraska Department of Justice
2115 State Capitol
Lincoln, NE 68509
T: (402) 471-7759
E: colin.snider@nebraska.gov

*Attorney for the State of Nebraska*

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR NEBRASKA

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Nebraska (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 7.18.2024    Signature: _Mark Collins_

Name: _D. Mark Collins_

Position/Title: _Ass't Atty General & MFCU Director_

_Nebraska Dept of Justice_

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

**Single State Agency for Medicaid Signature:**

Dated: **7/23/24**     Signature: _Matthew Ahern (signature)_

                       Name: _Matthew Ahern_

                       Position/Title: _Interim Medicaid Director_

PLAINTIFF STATE OF NEW HAMPSHIRE
JOHN M. FORMELLA
Attorney General


By: /s/Alexandra C. Sosnowski
Alexandra C. Sosnowski
Assistant Attorney General
Consumer Protection and Antitrust Bureau
One Granite Place South
Concord, NH 03301
Tel: (603) 271-2678
Alexandra.C.Sosnowski@doj.nh.gov

*Counsel for the State of New Hampshire*

Dated: 10/22/2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## NEW HAMPSHIRE

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of New Hampshire (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: August 2, 2024     Signature: _____

Name:     Thomas T. Worboys

Position/Title:     Senior Assistant Attorney General

Director, Medicaid Fraud Control Unit

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT**
**SIGNATURE PAGE FOR**
**[STATE]**


Dated: *08/03/24*       Signature: _____

                        Name: _____
                        Henry D. Lipman

                        Position/Title: _____
                        New Hampshire Medicaid Director

                        _____

                        _____

_/s/ Yale A. Leber_

Yale A. Leber

Deputy Attorney General

Division of Law

Antitrust Litigation and Competition Enforcement

124 Halsey Street

PO Box 45029

Newark, NJ 07101

Tel: (862) 381-4150

Yale.Leber@law.njoag.gov

_Counsel for the State of New Jersey_

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## NEW JERSEY

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of New Jersey (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 7/8/2024          Signature: _____

Al Garcia
Interim Insurance Fraud Prosecutor
Office of the Attorney General

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

**Single State Agency for Medicaid Signature  for New Jersey:**

Dated: 7/26/24          Signature: *Gregory Woods*
                                    Gregory Woods
                                    Assistant Commissioner
                                    Division of Medical Assistance and Health Services
                                    Department of Human Services

/s/ Jeff Dan Herrera
Jeff Dan Herrera
Assistant Attorney General
New Mexico Department of Justice
408 Galisteo St.
Santa Fe, NM 87501
Tel: (505) 490-4878
jherrera@nmdoj.gov

*Counsel for the State of New Mexico*

Dated: October 25, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## NEW MEXICO

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of New Mexico (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 7-30-24          Signature:

Name:          Joseph Martinez

Position/Title:          Acting Director

NM MFCU NMDOJ

# SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
## SIGNATURE PAGE FOR
## NEW MEXICO

Dated: 7/30/24

Signature: *Mark Reynolds*

Name: Mark Reynolds

Position/Title: General Counsel

New Mexico Health Care Authority

**New York's signature of the Apotex settlement**

Respectfully submitted,

LETITIA JAMES
Attorney General of the State of New York

CHRISTOPHER D'ANGELO
Chief Deputy Attorney General
Economic Justice Division

ELINOR R. HOFFMANN
Chief, Antitrust Bureau
AMY MCFARLANE
Deputy Bureau Chief, Antitrust Bureau


____/s/ Robert L. Hubbard_____
ROBERT L. HUBBARD
SAAMI ZAIN
Assistant Attorneys General
28 Liberty Street, 20th Floor
New York, NY 10005
212 416-8267
Robert.Hubbard@ag.ny.gov

ATTORNEYS FOR THE STATE OF NEW YORK

# MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## New York

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of New York (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: ____**2/12/2025**    Signature: _____

Name: _____
Paul J. Mahoney

Position/Title: _____
Ass't Deputy Attorney General
for Medicaid Fraud Control

_____

FOR PLAINTIFF STATE OF NEVADA

AARON D. FORD
Nevada Attorney General

Lucas J. Tucker
Senior Deputy Attorney General
Nevada Attorney General, Bureau of Consumer Protection
8945 West Russell Road, Suite 204
Las Vegas, Nevada 89148
(702) 486-3256
ltucker@ag.nv.gov

Date: October 21, 2024

# MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR NEVADA

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Nevada (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: **10/21/2024**____      Signature: _____

Name: _Stacie Weeks_____

Position/Title: _Administrator_____

_____

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT**
**SIGNATURE PAGE FOR**
**NEVADA**

Dated: 10/21/2024__        Signature: _____

                           Name:            Stacie Weeks

                           Position/Title:  Administrator

                           _____

FOR PLAINTIFF STATE OF OHIO:

DAVE YOST
ATTORNEY GENERAL


*/s/ Edward J. Olszewski*
Edward J. Olszewski
Assistant Section Chief, Antitrust
Office of Ohio Attorney General
30 East Broad Street, 26th Floor
Columbus, Ohio 43215
Phone: 614.466.4328
Edward.Olszewski@OhioAGO.gov

Attorney for Plaintiff State of Ohio

Dated: November 5, 2024

**MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR OHIO**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Ohio (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: __8/5/2024__          Signature: _____

Name: _____
Benjamin Karrasch

Position/Title: _____
Section Chief Health Care Fraud Ohio Attorney

General's Office

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
Ohio**


Dated:
August 1, 2024          Signature:  _Maureen M. Corcoran_
                                    _____

                          Name:  Maureen M. Corcoran
                                 _____

                  Position/Title:  Director
                                   _____

FOR PLAINTIFF STATE OF OKLAHOMA

GENTNER DRUMMOND
ATTORNEY GENERAL

Robert J. Carlson, OBA #19312
Senior Assistant Attorney General
15 West Sixth Street, Suite 1000
Tulsa, Oklahoma 74119
(918) 581-2885 – Telephone
(405) 522-0085 – Facsimile
robert.carlson@oag.ok.gov
*Counsel for Plaintiff State*

Dated:  November 13, 2024

**MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR OKLAHOMA**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Oklahoma (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: _____     Signature: _Charles A. Dickson, III_ _____

Name: _____Charles Dickson_____

Position/Title: _____Deputy Attorney General_____

_____Oklahoma Attorney General's Office_____

**Single State Agency for Medicaid Signature:**

Dated: _____    Signature: *Elizabeth Cooper*
                                  Elizabeth Cooper (Aug 5, 2024 15:04 CDT) _____

                       Name:           Elizabeth Cooper

                       Position/Title:     Chief Administrative Officer

                                        Oklahoma Health Care Authority

# MFCU Signature Page -- Apotex-1206 FINAL

Final Audit Report                                    2024-08-05

| Created: | 2024-08-02 |
|---|---|
| By: | Jamie Bloyd (jamie.bloyd@oag.ok.gov) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAS4zEH8CzyV0J4ziNfMWu7LgwoePUGHHN |

## "MFCU Signature Page -- Apotex-1206 FINAL" History

Document created by Jamie Bloyd (jamie.bloyd@oag.ok.gov)
2024-08-02 - 6:08:51 PM GMT

Document emailed to elizabeth.cooper@okhca.org for signature
2024-08-02 - 6:09:48 PM GMT

Email viewed by elizabeth.cooper@okhca.org
2024-08-05 - 8:00:43 PM GMT

Signer elizabeth.cooper@okhca.org entered name at signing as Elizabeth Cooper
2024-08-05 - 8:04:12 PM GMT

Document e-signed by Elizabeth Cooper (elizabeth.cooper@okhca.org)
Signature Date: 2024-08-05 - 8:04:14 PM GMT - Time Source: server

Document emailed to Charles Dickson (charles.dickson@oag.ok.gov) for signature
2024-08-05 - 8:04:16 PM GMT

Email viewed by Charles Dickson (charles.dickson@oag.ok.gov)
2024-08-05 - 10:04:37 PM GMT

Document e-signed by Charles Dickson (charles.dickson@oag.ok.gov)
Signature Date: 2024-08-05 - 10:04:56 PM GMT - Time Source: server

Agreement completed.
2024-08-05 - 10:04:56 PM GMT

Adobe Acrobat Sign

*/s/ Gina Ko*

_____

Gina Ko #121049
Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Tel: (503) 934-4400
Gina.Ko@doj.Oregon.gov
    *Counsel for the State of Oregon*

Dated September 30, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR OREGON

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Oregon (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 7/22/2024

Signature: _____

Name: Sheen Y. Wu

Position/Title: Director/AIC - Medicaid Fraud Control Unit

Oregon Department of Justice

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
OREGON**

Dated: 07.25.2024          Signature: _____

                           Name: Fritz Jenkins

                           Position/Title: Adminstrator for Program Integrity

                           Oregon Health Authority

*/s/ Tracy W. Wertz*
Tracy W. Wertz
Chief Deputy Attorney General
Antitrust Section
Joseph S. Betsko
Assistant Chief Deputy Attorney General
Jessica Kuehn
Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Phone: (717) 787-4530
Fax: (717) 787-1190
twertz@attorneygeneral.gov

*Counsel for the Commonwealth of Pennsylvania*

Dated: <u>October 25, 2024</u>

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## PENNSYLVANIA

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of **PENNSYLVANIA** (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into** *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, **MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: _7/18/24_     Signature: _Heather M Albright_

Name: _HEATHER M. ALBRIGHT_

Position/Title: _CHIEF DEPUTY ATTORNEY GENEAL/DIRECTOR_

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
PENNSYLVANIA**

Dated: 7/17/24      Signature: _____

                    Name:      KAREN L. FICKES

                    Position/Title:  DIRECTOR, BUREAU OF PROGRAM INTEGRITY

                                     DEPARTMENT OF HUMAN SERVICES

**FOR PLAINTIFF CONMMONWEALTH OF PUERTO RICO**


DOMINGO EMANUELLI-HERNÁNDEZ
ATTORNEY GENERAL


*/s/ Guarionex Díaz-Martínez*
Guarionex Díaz-Martínez
Assistant Attorney General, Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, Exts. 1201, 1204
gdiaz@justicia.pr.gov

*Counsel for Commonwealth of Puerto Rico*

Dated:  October 10, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR PUERTO RICO

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Puerto Rico (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 7/30/24

Signature: _____

Name: LUIS FREIRE

Position/Title: DIRECTOR PRMFCU

_____

**Single State Agency for Medicaid Signature for Puerto Rico:**

Dated: 8/2/2024    Signature: _A. Ducós_

                            Name: _Mauá D. Horeá Ducós_

              Position/Title: _Program Integrity Director_

*/s/ Stephen N. Provazza*

Stephen N. Provazza (Bar No. 10435)
Assistant Attorney General
Chief, Consumer and Economic Justice Unit
Office of the Attorney General - State of Rhode Island
150 South Main Street
Providence, RI 02903
Tel: (401) 274 4400
sprovazza@riag.ri.gov

Counsel for the State of Rhode Island

Dated: October 24, 2024

# MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR RHODE ISLAND

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of RHODE ISLAND (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: **8/5/2024**

Signature: _/s/ Andrea Mauro, Esq._

Name: Andrea M. Mauro

Position/Title: Special Assistant Attorney General

Medicaid Fraud Control Unit
Office of the Rhode Island Attorney General

# SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
## SIGNATURE PAGE FOR
## RHODE ISLAND

Dated:
**7/29/2024**

Signature: //Jane E. Morgan Esq.//

Name: JANE E. MORGAN

Position/Title: DEPUTY DIRECTOR, MEDICAID GENERAL COUNSEL

EOHHS, RHODE ISLAND

THE STATE OF SOUTH CAROLINA
ALAN WILSON
Attorney General

/s/ Clark Kirkland, Jr.___
Clark Kirkland, Jr.
Assistant Attorney General
Office of the Attorney General
State of South Carolina
P.O. Box 11549
Columbia, SC 29211
Tel: (803) 734-0057
ckirkland@scag.gov

**MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
SOUTH CAROLINA**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit, dba Vulnerable Adults and Medicaid Provider Fraud, for the State of South Carolina (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: ___7/24/2024___     Signature: _~~SGOpet~~_____

Name: ___Stephanie G. Opet___

Position/Title: ___Director, Medicaid Fraud Control Unit___

___South Carolina Office of the Attorney General___

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT**
**SIGNATURE PAGE FOR**
**SOUTH CAROLINA**

Dated: *7/25/2024*     Signature: _W. Scott Talbert_____

Name:     W. Scott Talbert_____

Position/Title:     Assistant General Counsel_____

South Carolina Department of Health and Human Services

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

Dated: 10/24/2024     Signature: _Jonathan K Van Patten_

Name: JONATHAN K VAN PATTEN

Position/Title: ASSISTANT ATTORNEY GENERAL

STATE OF SOUTH DAKOTA

# MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR SOUTH DAKOTA

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of South Dakota (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 7/30/24

Signature: _____

Name: Mandy Miiller

Position/Title: Director, SD Medicaid Fraud Control Unit

**Single State Agency for Medicaid Signature:**

Dated: 07/31/2024

Signature: _Heather Petermann_

Name: Heather Petermann

Position/Title: South Dakota State Medicaid Director

Division of Medical Services, Dept of Social Services

Austin C. Ostiguy
Assistant Attorney General
P.O. Box 20207
Nashville, TN 37202
Tel: (615) 532-7271
Austin.Ostiguy@ag.tn.gov

*Counsel for Tennessee*

Dated: 11/05/2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR TENNESSEE

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Tennessee regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 08/12/2024

Signature: _Michael E. Cox_

Name: Michael E. Cox

Position/Title: Director

Tennessee MFCU

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT**
**SIGNATURE PAGE FOR**
**TENNESSEE**

Dated:

**11.3.2024**

Signature:

Name: Stephen Smith

Position/Title: Director

Respectfully Submitted,

GORDON C. RHEA, ESQ.
ATTORNEY GENERAL

Dated: October 22, 2024                    By: _____
Christopher M. Timmons
Acting Chief, Civil Division
V.I. Bar No. R2147
213 Estate La Reine
Kingshill, V.I.  00850
(340) 773-0295
christopher.timmons@doj.vi.gov
*Counsel for Government of the Virgin Islands*

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## UNITED STATES VIRGIN ISLANDS

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of UNITED STATES VIRGIN ISLANDS] (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: July 22, 2024    Signature: _____

Name: Julita de León. _____

Position/Title: _____

_____

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
UNITED STATES VIRGIN ISLANDS**

Dated: 9/3/2024

Signature: *Gary A. Smith*

Name: Gary Smith

Position/Title: Medicaid Director

Executed November 4, 2024

Respectfully submitted,

FOR PLAINTIFF STATE OF UTAH
SEAN D. REYES
UTAH ATTORNEY GENERAL


Marie W.L. Martin
Deputy Division Director,
Office of the Attorney General of Utah
including as counsel for the Utah Division
of Consumer Protection
160 East 300 South, 5th Floor
P.O. Box 140830
Salt Lake City, UT 84114-0830
Tel: 801-366-0375
Fax: 801-366-0378
mwmartin@agutah.gov
dsonnenreich@agutah.gov

*Attorneys for the State of Utah*

**MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR UTAH**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Utah (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: _09/10/2024_   Signature: *Kaye Lynn Wootton*

Name: Kaye Lynn Wootton

Position/Title: MFCU Director/Assistant Attorney General

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
UTAH**

Dated: 09/19/2024 _____

Signature: *Jennifer Strohecker*

Name: Jennifer Strohecker

Position/Title: Director, Division of Integrated Healthcare

**FOR PLAINTIFF COMMONWEALTH OF VIRGINIA**

JASON S. MIYARES
ATTORNEY GENERAL


 */s/ Tyler T. Henry*
Tyler T. Henry
Senior Assistant Attorney General
Antitrust Unit
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Tel: (804) 692-0485
THenry@oag.state.va.us

*Counsel for Virginia*

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## THE COMMONWEALTH OF VIRGINIA

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the Commonwealth of Virginia (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: _7/24/24_   Signature: _Randall L. Clouse_

Name: Randall L. Clouse, Director and Chief

Position/Title: Health Care Fraud & Elder Abuse Section

Virginia Attorney General's Office

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT**
**SIGNATURE PAGE FOR**
**THE COMMONWEALTH OF VIRGINIA**

Dated: July 19, 2024     Signature: _____

Name: Cheryl J. Roberts, J.D.

Position/Title: Director

Department of Medical Assistance Services

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

/s/ Jill S. Abrams
Assistant Attorney General
109 State Street
Montpelier, Vermont 05609
(802) 828-1106
Jill.abrams@vermont.gov

Counsel for the State of Vermont

Dated: October 21, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## THE STATE OF VERMONT

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Vermont (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 8/1/2024     Signature: *Elizabeth L. Anderson*
Signed by:
0F9E4A04C4424DD...

Name:     Elizabeth L. Anderson

Position/Title:     AAG & Director, Medicaid Fraud and Residential Abuse Unit

Office of the Vermont Attorney General

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

Docusign Envelope ID: FDD79F1A-D4D5-4262-AA23-848B6330254C

**Single State Agency for Medicaid Signature:**

Dated: 8/1/2024

Signature: *Sandi Hoffman*
B34E5A2F3ED5411...

Name: Sandi Hoffman

Position/Title: Deputy Commissioner

Department of Vermont Health Access,
Vermont Agency of Human Services

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.)
**Apotex-1206**

**FOR PLAINTIFF STATE OF WASHINGTON**

ROBERT W. FERGUSON
ATTORNEY GENERAL

*s/ Paula Pera C.*
Paula Pera C.
Holly A. Williams
Assistant Attorneys General, Antitrust Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Tel: (206) 464-7744
paula.pera@atg.wa.gov
holly.williams@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

Dated: 10/29/2024

**MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR**
**[WASHINGTON]**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of [WASHINGTON] (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.


**MFCU Signature:**


Dated: __10/4/24__     Signature: ___*Larissa Payne*_____

                       Name: _____
                                    Larissa Payne

                       Position/Title: _____
                                    Director, Medicaid Fraud Control Division

                                    _____

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
[WASHINGTON]**

Dated: 10/04/2024     Signature: _Charissa Fotinos MD, MSc_

Name: Charissa Fotinos, MD, MSc

Position/Title: Medicaid Director and Behavioral Health Medical Director

Washington State Health Care Authority

s/ Laura E. McFarlane
Laura E. McFarlane
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8911
mcfarlanele@doj.state.wi.us

*Counsel for the State of Wisconsin*

Dated: October 23, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## Wisconsin

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of [Wisconsin] (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: ___8/2/24___     Signature: _____/s/ Daniel Hess_____

Name: _____Daniel Hess_____

Position/Title: _____Director_____

_____Medicaid Fraud Control and Elder Abuse Unit_____

**SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
SIGNATURE PAGE FOR
WISCONSIN**

Dated: **8-2-2024**___          Signature:

Name:          Anthony J. Baize

Position/Title:          Inspector General

          WI Dept. of Health Services

/s/ Douglas L. Davis
Douglas L. Davis
Senior Assistant Attorney General
Office of the West Virginia Attorney General
P.O. Box 1789
Charleston, WV 25326
Tel: (304) 558-8986
douglas.l.davis@wvago.gov

*Counsel for the State of West Virginia*


Dated: September 30, 2024

**MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
WEST VIRGINIA**

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of West Virginia (the "State") regarding the Settlement Agreement described as follows:

**This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 8.23.24    Signature: _____

Name: _John C. Blair_

Position/Title: _Director_

# SINGLE STATE AGENCY APPROVAL OF APOTEX-1206 SETTLEMENT
## SIGNATURE PAGE FOR
## WEST VIRGINIA

Dated: 08/23/2024      Signature: _____

Name: _____

Cynthia Beane, MSW, LCSW

Position/Title: _____

Commissioner, WV Department of Human Services,

Bureau for Medical Services

/s/ Cameron W. Geeting
Cameron W. Geeting
Senior Assistant Attorney General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY 82002
Tel: (307) 777-3795
cameron.geeting1@wyo.gov
*Counsel for the State of Wyoming*
Dated: October 21, 2024

## MEDICAID FRAUD CONTROL UNIT SIGNATURE PAGE FOR
## Wyoming

As conditioned herein, this Signature Page shall serve as the Statement of Review and Approval as to Form of the Medicaid Fraud Control Unit for the State of Wyoming (the "State") regarding the Settlement Agreement described as follows:

> **This Settlement Agreement ("Agreement") is made and entered into by and among Apotex Corp. ("Apotex"), the Attorneys General (as defined below), and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the Attorneys General and the EPPs respectively against Apotex in the cases currently or previously consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.).**

The Medicaid Fraud Control Unit for the State has reviewed the Agreement and, with respect to the release of Medicaid claims (as particularly specified in, and as limited by, the Agreement), approves the Agreement as to form.

This approval, as limited herein, is conditional upon Execution of the Agreement by the State and the other Parties to the Agreement, and upon the Agreement's approval by a court of proper jurisdiction.

**MFCU Signature:**

Dated: 07/29/2024    Signature: _____

Name: Travis J. Kirchhefer

Position/Title: Director & Sr. Assistant Attorney General

Medicaid Fraud Control Unit
Office of the Wyoming Attorney General

**Single State Agency for Medicaid Signature:**

Dated:
**_7/29/2024_____**
_

Signature: _____

Name: _____

Andrew Chapin

Position/Title
: _____

Program Integrity Section Manager

Division of Healthcare Financing,
Wyoming Department of Health

Appendix A

AG Drugs at Issue

| |
|---|
| Acetazolamide |
| Adapalene |
| Alclometasone Dipropionate |
| Amiloride HCL/HCTZ |
| Ammonium Lactate |
| Amoxicillin/Clavulanate |
| Amphetamine/Dextroamphetamine |
| Azithromycin |
| Baclofen |
| Benazepril HCTZ |
| Betamethasone Dipropionate |
| Betamethasone Dipropionate Augmented |
| Betamethasone Valerate |
| Bethanechol Chloride |
| Bromocriptine Mesylate |
| Budesonide |
| Bumetanide |
| Buspirone Hydrochloride |
| Cabergoline |
| Calcipotriene Betamethasone Dipropionate Ointment |
| Calcipotriene Solution |
| Capecitabine |
| Carbamazepine |
| Cefdinir |
| Cefpodoxime Proxetil Oral Suspension |
| Cefpodoxime Proxetil Tablets |
| Cefprozil |
| Celecoxib |
| Cephalexin (Cefalexin) |
| Chlorpromazine HCL |
| Cholestyramine |
| Ciclopirox |
| Cimetidine |

| |
|---|
| Ciprofloxacin HCL Tablet |
| Clarithromycin |
| Clemastine Fumarate |
| Clindamycin Phosphate |
| Clobetasol |
| Clomipramine HCL |
| Clonidine TTS |
| Clotrimazole |
| Cyproheptadine HCL |
| Desmopressin Acetate |
| Desogestrel and Ethinyl Estradiol [Kariva] |
| Desonide |
| Desoximetasone |
| Dexmethylphenidate HCL [Focalin] |
| Dextroamphetamine Sulfate ("Dex Sulfate") |
| Diclofenac Potassium |
| Dicloxacillin Sodium |
| Diflunisal |
| Diltiazem HCL |
| Disopyramide Phosphate |
| Doxazosin Mesylate |
| Doxycycline Hyclate |
| Doxycycline Monohydrate |
| Drospirenone and Ethinyl Estradiol |
| Econazole |
| Enalapril Maleate |
| Entecavir |
| Epitol |
| Eplerenone |
| Erythromycin |
| Estazolam |
| Estradiol |
| Estradiol and Norethindrone Acetate [Mimvey] |
| Ethambutol HCL |
| Ethinyl Estradiol and Levonorgestrel [Portia and Jolessa] |
| Ethosuximide |
| Etodolac |
| Fenofibrate |
| Fluconazole |

| |
|---|
| Fluocinolone Acetonide |
| Fluocinonide |
| Fluoxetine HCL |
| Flurbiprofen |
| Flutamide |
| Fluticasone Propionate |
| Fluvastatin Sodium |
| Fosinopril HCTZ |
| Gabapentin |
| Glimepiride |
| Glipizide-Metformin |
| Glyburide |
| Glyburide-Metformin |
| Griseofulvin |
| Halobetasol Propionate |
| Haloperidol |
| Hydrocortisone Valerate |
| Hydroxyurea |
| Hydroxyzine Pamoate |
| Imiquimod |
| Irbesartan |
| Isoniazid |
| Ketoconazole |
| Ketoprofen |
| Ketorolac Tromethamine |
| Labetalol HCL |
| Lamivudine/Zidovudine |
| Latanoprost |
| Leflunomide |
| Levothyroxine |
| Lidocaine Ointment |
| Loperamide HCL |
| Medroxyprogesterone |
| Meprobamate |
| Methazolamide |
| Methotrexate Sodium |
| Methylphenidate |
| Metronidazole |
| Moexipril HCL |

| |
|---|
| Moexipril HCL HCTZ |
| Mometasone |
| Nabumetone |
| Nadolol |
| Nafcillin |
| Niacin |
| Nimodipine |
| Nitrofurantoin (Macrocrystalline) |
| Norethindrone Acetate |
| Norethindrone and Ethinyl Estradiol [Balziva] |
| Nortriptyline Hydrochloride |
| Nystatin |
| Nystatin/Triamcinolone |
| Omega-3-Acid Ethyl Esters |
| Oxacillin |
| Oxaprozin |
| Oxybutynin Chloride |
| Paricalcitol |
| Paromomycin |
| Penicillin VK |
| Pentoxifylline |
| Phenytoin Sodium |
| Pioglitazone-Metformin |
| Piroxicam |
| Pravastatin |
| Prazosin HCL |
| Prochlorperazine |
| Propranolol |
| Raloxifene HCL |
| Ranitidine HCL |
| Tacrolimus |
| Tamoxifen Citrate |
| Temozolomide |
| Terconazole |
| Theophylline |
| Tizanidine HCL |
| Tobramycin Sulfate |
| Tolmetin Sodium |
| Tolterodine Tartate |

| |
|---|
| Topiramate |
| Triamcinolone Acetonide |
| Trifluoperazine HCL |
| Valsartan HCTZ |
| Verapamil |
| Warfarin Sodium |
| Zoledronic Acid |

EPP Drugs at Issue

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 1 | ACETAZOLAMIDE | TABLET | 125MG |
| 1 | ACETAZOLAMIDE | TABLET | 250MG |
| 1 | ACETAZOLAMIDE ER | CAPSULE | 500MG |
| 2 | ADAPALENE | CREAM | 0.10% |
| 2 | ADAPALENE | GEL | 0.10% |
| 2 | ADAPALENE | GEL | 0.30% |
| 3 | ALBUTEROL | TABLET | 2MG |
| 3 | ALBUTEROL | TABLET | 4MG |
| 4 | ALCLOMETASONE DIPROPIONATE | CREAM | 0.05% |
| 4 | ALCLOMETASONE DIPROPIONATE | OINTMENT | 0.05% |
| 5 | ALLOPURINOL | TABLET | 100MG |
| 5 | ALLOPURINOL | TABLET | 300MG |
| 6 | AMANTADINE HCL | CAPSULE | 100MG |
| 7 | AMILORIDE HCL/HCTZ | TABLET | 5-50MG |
| 8 | AMITRIPTYLINE | TABLET | 10MG |
| 8 | AMITRIPTYLINE | TABLET | 25MG |
| 8 | AMITRIPTYLINE | TABLET | 50MG |
| 8 | AMITRIPTYLINE | TABLET | 75MG |
| 8 | AMITRIPTYLINE | TABLET | 100MG |
| 8 | AMITRIPTYLINE | TABLET | 150MG |
| 9 | AMMONIUM LACTATE | CREAM | 12% |
| 9 | AMMONIUM LACTATE | LOTION | 12% |
| 10 | AMOXICILLIN/CLAVULANATE POTASSIUM | TABLET CHEWABLE | 200-28.5MG |
| 10 | AMOXICILLIN/CLAVULANATE POTASSIUM | TABLET CHEWABLE | 400-57MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 5MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 10MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 20MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 30MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 5MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 10MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 15MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 20MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 25MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 30MG |
| 12 | ATENOLOL/CHLORTHALIDONE | TABLET | 50-25MG |
| 12 | ATENOLOL/CHLORTHALIDONE | TABLET | 100-25MG |
| 13 | ATROPINE SULFATE | SOLUTION | 1% |
| 14 | AZITHROMYCIN | ORAL SUSPENSION | 100MG/5ML |
| 14 | AZITHROMYCIN | ORAL SUSPENSION | 200MG/5ML |
| 15 | BACLOFEN | TABLET | 10MG |
| 15 | BACLOFEN | TABLET | 20MG |
| 16 | BALSALAZIDE DISODIUM | CAPSULE | 750MG |
| 17 | BENAZEPRIL HCTZ | TABLET | 10-12.5MG |

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 17 | BENAZEPRIL HCTZ | TABLET | 20-12.5MG |
| 17 | BENAZEPRIL HCTZ | TABLET | 20-25MG |
| 18 | BETAMETHASONE DIPROPIONATE | CREAM | 0.05% |
| 18 | BETAMETHASONE DIPROPIONATE | LOTION | 0.05% |
| 18 | BETAMETHASONE DIPROPIONATE | OINTMENT | 0.05% |
| 19 | BETAMETHASONE DIPROPIONATE AUGMENTED | LOTION | 0.05% |
| 20 | BETAMETHASONE DIPROPIONATE/CLOTRIMAZOLE | CREAM | 0.05% |
| 20 | BETAMETHASONE DIPROPIONATE/CLOTRIMAZOLE | CREAM | 0.10% |
| 20 | BETAMETHASONE DIPROPIONATE/CLOTRIMAZOLE | LOTION | 0.05% |
| 20 | BETAMETHASONE DIPROPIONATE/CLOTRIMAZOLE | LOTION | 0.10% |
| 21 | BETAMETHASONE VALERATE | CREAM | 0.10% |
| 21 | BETAMETHASONE VALERATE | LOTION | 0.10% |
| 21 | BETAMETHASONE VALERATE | OINTMENT | 0.10% |
| 22 | BETHANECHOL CHLORIDE | TABLET | 5MG |
| 22 | BETHANECHOL CHLORIDE | TABLET | 10MG |
| 22 | BETHANECHOL CHLORIDE | TABLET | 25 MG |
| 22 | BETHANECHOL CHLORIDE | TABLET | 50 MG |
| 23 | BROMOCRIPTINE MESYLATE | TABLET | 2.5MG |
| 24 | BUDESONIDE | SOLUTION | 0.25MG/2ML |
| 24 | BUDESONIDE | SOLUTION | 0.5MG/2ML |
| 24 | BUDESONIDE | SOLUTION | 1MG/2ML |
| 24 | BUDESONIDE DR | CAPSULE | 3MG |
| 25 | BUMETANIDE | TABLET | 0.5MG |
| 25 | BUMETANIDE | TABLET | 1MG |
| 25 | BUMETANIDE | TABLET | 2MG |
| 26 | BUSPIRONE HCL | TABLET | 5MG |
| 26 | BUSPIRONE HCL | TABLET | 7.5MG |
| 26 | BUSPIRONE HCL | TABLET | 10MG |
| 26 | BUSPIRONE HCL | TABLET | 15MG |
| 26 | BUSPIRONE HCL | TABLET | 30MG |
| 27 | BUTORPHANOL TARTRATE | SPRAY | 10MG/ML |
| 28 | CABERGOLINE | TABLET | 0.5MG |
| 29 | CALCIPOTRIENE | SOLUTION | ALL STRENGTHS |
| 30 | CALCIPOTRIENE BETHAMASONE DIPROPRIONATE | OINTMENT | 0.064%/0.005% |
| 31 | CAPECITABINE | TABLET | 150MG |
| 31 | CAPECITABINE | TABLET | 500MG |
| 32 | CAPTOPRIL | TABLET | 12.5MG |
| 32 | CAPTOPRIL | TABLET | 25MG |
| 32 | CAPTOPRIL | TABLET | 50MG |
| 32 | CAPTOPRIL | TABLET | 100MG |
| 33 | CARBAMAZEPINE | TABLET | 200MG |
| 33 | CARBAMAZEPINE | TABLET CHEWABLE | 100MG |
| 33 | CARBAMAZEPINE ER | TABLET | 100MG |
| 33 | CARBAMAZEPINE ER | TABLET | 200MG |
| 33 | CARBAMAZEPINE ER | TABLET | 400MG |
| 34 | CARISOPRODOL | TABLET | 350MG |
| 35 | CEFDINIR | CAPSULE | 300MG |
| 35 | CEFDINIR | SOLUTION | 125MG/5ML |
| 35 | CEFDINIR | SOLUTION | 250MG/5ML |
| 36 | CEFPODOXIME PROXETIL | ORAL SUSPENSION | 50MG/5ML |
| 36 | CEFPODOXIME PROXETIL | ORAL SUSPENSION | 100MG/5ML |
| 36 | CEFPODOXIME PROXETIL | TABLET | 100MG |
| 36 | CEFPODOXIME PROXETIL | TABLET | 200MG |
| 37 | CEFPROZIL | TABLET | 250MG |
| 37 | CEFPROZIL | TABLET | 500MG |
| 38 | CEFUROXIME AXETIL | TABLET | 250MG |

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 38 | CEFUROXIME AXETIL | TABLET | 500MG |
| 39 | CELECOXIB | CAPSULE | 50MG |
| 39 | CELECOXIB | CAPSULE | 100MG |
| 39 | CELECOXIB | CAPSULE | 200MG |
| 39 | CELECOXIB | CAPSULE | 400MG |
| 40 | CEPHALEXIN (CEFALEXIN) | SOLUTION | 125MG/5ML |
| 40 | CEPHALEXIN (CEFALEXIN) | SOLUTION | 250MG/5ML |
| 41 | CHLORPROMAZINE HCL | TABLET | 10MG |
| 41 | CHLORPROMAZINE HCL | TABLET | 25MG |
| 41 | CHLORPROMAZINE HCL | TABLET | 50MG |
| 41 | CHLORPROMAZINE HCL | TABLET | 100MG |
| 41 | CHLORPROMAZINE HCL | TABLET | 200MG |
| 42 | CHOLESTYRAMINE | PACKET/ORAL SOLID | 4G |
| 42 | CHOLESTYRAMINE | POWDER | 4G |
| 43 | CICLOPIROX | CREAM | 0.77% |
| 43 | CICLOPIROX | SHAMPOO | 1% |
| 43 | CICLOPIROX | SOLUTION | 8% |
| 44 | CIMETIDINE | TABLET | 200MG |
| 44 | CIMETIDINE | TABLET | 300MG |
| 44 | CIMETIDINE | TABLET | 400MG |
| 44 | CIMETIDINE | TABLET | 800MG |
| 45 | CIPROFLOXACIN HCL | TABLET | 100MG |
| 45 | CIPROFLOXACIN HCL | TABLET | 250MG |
| 45 | CIPROFLOXACIN HCL | TABLET | 500MG |
| 45 | CIPROFLOXACIN HCL | TABLET | 750MG |
| 46 | CLARITHROMYCIN ER | TABLET | 500MG |
| 47 | CLEMASTINE FUMARATE | TABLET | 1.34MG |
| 47 | CLEMASTINE FUMARATE | TABLET | 2.86MG |
| 48 | CLINDAMYCIN PHOSPHATE | GEL | 1% |
| 48 | CLINDAMYCIN PHOSPHATE | LOTION | 1% |
| 48 | CLINDAMYCIN PHOSPHATE | SOLUTION | 1% |
| 48 | CLINDAMYCIN PHOSPHATE | VAGINAL CREAM | 2% |
| 49 | CLOBETASOL | CREAM | 0.05% |
| 49 | CLOBETASOL | E CREAM | 0.05% |
| 49 | CLOBETASOL | GEL | 0.05% |
| 49 | CLOBETASOL | OINTMENT | 0.05% |
| 49 | CLOBETASOL | SOLUTION | 0.05% |
| 50 | CLOMIPRAMINE | CAPSULE | 25MG |
| 50 | CLOMIPRAMINE | CAPSULE | 50MG |
| 50 | CLOMIPRAMINE | CAPSULE | 75MG |
| 51 | CLONIDINE | PATCH | 0.1MG/24HR |
| 51 | CLONIDINE | PATCH | 0.2MG/24HR |
| 51 | CLONIDINE | PATCH | 0.3MG/24HR |
| 52 | CLOTRIMAZOLE | SOLUTION | 1% |
| 53 | CYPROHEPTADINE HCL | TABLET | 4MG |
| 54 | DESMOPRESSIN ACETATE | TABLET | 0.1MG |
| 54 | DESMOPRESSIN ACETATE | TABLET | 0.2MG |
| 55 | DESONIDE | CREAM | 0.05% |
| 55 | DESONIDE | LOTION | 0.05% |
| 55 | DESONIDE | OINTMENT | 0.05% |
| 56 | DESOXIMETASONE | OINTMENT | 0.05% |
| 56 | DESOXIMETASONE | OINTMENT | 0.25% |
| 57 | DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 5MG |
| 57 | DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 15MG |

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 57 | DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 20MG |
| 57 | DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 40MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 2.5MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 5MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 7.5MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 10MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 15MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 20MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 30MG |
| 58 | DEXTROAMPHETAMINE SULFATE ER (DEX SULFATE ER) | CAPSULE | 5MG |
| 58 | DEXTROAMPHETAMINE SULFATE ER (DEX SULFATE ER) | CAPSULE | 10MG |
| 58 | DEXTROAMPHETAMINE SULFATE ER (DEX SULFATE ER) | CAPSULE | 15MG |
| 59 | DICLOFENAC POTASSIUM | TABLET | 50MG |
| 60 | DICLOXACILLIN SODIUM | CAPSULE | 250MG |
| 60 | DICLOXACILLIN SODIUM | CAPSULE | 500MG |
| 61 | DIFLUNISAL | TABLET | 500MG |
| 62 | DIGOXIN | TABLET | 0.125MG |
| 62 | DIGOXIN | TABLET | 0.25MG |
| 63 | DILTIAZEM HCL | TABLET | 120MG |
| 63 | DILTIAZEM HCL | TABLET | 30MG |
| 63 | DILTIAZEM HCL | TABLET | 60MG |
| 63 | DILTIAZEM HCL | TABLET | 90MG |
| 64 | DIPHENOXYLATE/ATROPINE | TABLET | 2.5MG;0.025MG |
| 65 | DISOPYRAMIDE PHOSPHATE | CAPSULE | 100MG |
| 65 | DISOPYRAMIDE PHOSPHATE | CAPSULE | 150MG |
| 66 | DIVALPROEX ER | TABLET | 250MG |
| 66 | DIVALPROEX ER | TABLET | 500MG |
| 67 | DOXAZOSIN MESYLATE | TABLET | 1MG |
| 67 | DOXAZOSIN MESYLATE | TABLET | 2MG |
| 67 | DOXAZOSIN MESYLATE | TABLET | 4MG |
| 67 | DOXAZOSIN MESYLATE | TABLET | 8MG |
| 68 | DOXYCYCLINE HYCLATE | CAPSULE | 50MG |
| 68 | DOXYCYCLINE HYCLATE | CAPSULE | 100MG |
| 68 | DOXYCYCLINE HYCLATE | TABLET | 100MG |
| 68 | DOXYCYCLINE HYCLATE DR | TABLET | 75MG |
| 68 | DOXYCYCLINE HYCLATE DR | TABLET | 100MG |
| 68 | DOXYCYCLINE HYCLATE DR | TABLET | 150MG |
| 68 | DOXYCYCLINE MONOHYDRATE | TABLET | 50MG |
| 68 | DOXYCYCLINE MONOHYDRATE | TABLET | 75MG |
| 68 | DOXYCYCLINE MONOHYDRATE | TABLET | 100MG |
| 68 | DOXYCYCLINE MONOHYDRATE | TABLET | 150MG |
| 69 | DROSPIRENONE/ETHINYL ESTRADIOL (OCELLA) | TABLET | 3MG-0.02MG |
| 69 | DROSPIRENONE/ETHINYL ESTRADIOL (OCELLA) | TABLET | 3MG-0.03MG |
| 70 | ECONAZOLE | CREAM | 1% |
| 71 | ENALAPRIL MALEATE | TABLET | 2.5MG |
| 71 | ENALAPRIL MALEATE | TABLET | 5MG |
| 71 | ENALAPRIL MALEATE | TABLET | 10MG |
| 71 | ENALAPRIL MALEATE | TABLET | 20MG |
| 72 | ENTECAVIR | TABLET | 0.5MG |
| 72 | ENTECAVIR | TABLET | 1MG |
| 73 | EPLERENONE | TABLET | 25MG |
| 73 | EPLERENONE | TABLET | 50MG |
| 74 | ERYTHROMYCIN | SOLUTION | ALL STRENGTHS |
| 75 | ESTAZOLAM | TABLET | 1MG |

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 75 | ESTAZOLAM | TABLET | 2MG |
| 76 | ESTRADIOL | TABLET | 0.5MG |
| 76 | ESTRADIOL | TABLET | 1MG |
| 76 | ESTRADIOL | TABLET | 2MG |
| 77 | ESTRADIOL/NORETHINDRONE ACETATE (MIMVEY) | TABLET | 1-0.5MG |
| 78 | ETHAMBUTOL HCL | TABLET | 100MG |
| 78 | ETHAMBUTOL HCL | TABLET | 400MG |
| 79 | ETHINYL ESTRADIOL/DESOGESTREL [KARIVA] | TABLET | 0.15/0.02-0.01MG |
| 79 | ETHINYL ESTRADIOL/DESOGESTREL [KARIVA] | TABLET | 0.15-0.02-0.01MG |
| 79 | ETHINYL ESTRADIOL/DESOGESTREL [KARIVA] | TABLET | 0.15-0.03MG |
| 80 | ETHINYL ESTRADIOL/LEVONORGESTREL (PORTIA,JOLESSA) | TABLET | ALL STRENGTHS |
| 81 | ETHOSUXIMIDE | CAPSULE | 250MG |
| 81 | ETHOSUXIMIDE | ORAL SOLUTION | 250MG/5ML |
| 82 | ETODOLAC | CAPSULE | 200MG |
| 82 | ETODOLAC | CAPSULE | 300MG |
| 82 | ETODOLAC | TABLET | 400MG |
| 82 | ETODOLAC | TABLET | 500MG |
| 82 | ETODOLAC ER | TABLET | 400MG |
| 82 | ETODOLAC ER | TABLET | 500MG |
| 82 | ETODOLAC ER | TABLET | 600MG |
| 83 | EXEMESTANE | TABLET | 25MG |
| 84 | FENOFIBRATE | TABLET | 48MG |
| 84 | FENOFIBRATE | TABLET | 145MG |
| 85 | FLUCONAZOLE | TABLET | 50MG |
| 85 | FLUCONAZOLE | TABLET | 100MG |
| 85 | FLUCONAZOLE | TABLET | 150MG |
| 85 | FLUCONAZOLE | TABLET | 200MG |
| 86 | FLUOCINOLONE ACETONIDE | CREAM | 0.01% |
| 86 | FLUOCINOLONE ACETONIDE | CREAM | 0.03% |
| 86 | FLUOCINOLONE ACETONIDE | OINTMENT | 0.03% |
| 86 | FLUOCINOLONE ACETONIDE | SOLUTION | 0.01% |
| 87 | FLUOCINONIDE | CREAM | 0.05% |
| 87 | FLUOCINONIDE | CREAM | 0.10% |
| 87 | FLUOCINONIDE | E CREAM | 0.05% |
| 87 | FLUOCINONIDE | GEL | 0.05% |
| 87 | FLUOCINONIDE | OINTMENT | 0.05% |
| 87 | FLUOCINONIDE | SOLUTION | 0.05% |
| 88 | FLUOXETINE HCL | TABLET | 10MG |
| 88 | FLUOXETINE HCL | TABLET | 15MG |
| 88 | FLUOXETINE HCL | TABLET | 20MG |
| 88 | FLUOXETINE HCL | TABLET | 60MG |
| 89 | FLURBIPROFEN | TABLET | 50MG |
| 89 | FLURBIPROFEN | TABLET | 100MG |
| 90 | FLUTAMIDE | CAPSULE | 125MG |
| 91 | FLUTICASONE PROPIONATE | SPRAY | 50MCG |
| 91 | FLUTICASONE PROPIONATE | LOTION | 0.05% |
| 92 | FLUVASTATIN SODIUM | CAPSULE | 20MG |
| 92 | FLUVASTATIN SODIUM | CAPSULE | 40MG |
| 93 | FOSINOPRIL HCTZ | TABLET | 10-12.5MG |
| 93 | FOSINOPRIL HCTZ | TABLET | 20-12.5MG |
| 94 | GABAPENTIN | TABLET | 600MG |
| 94 | GABAPENTIN | TABLET | 800MG |
| 95 | GLIMEPIRIDE | TABLET | 1MG |
| 95 | GLIMEPIRIDE | TABLET | 2MG |
| 95 | GLIMEPIRIDE | TABLET | 4MG |

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 96 | GLIPIZIDE/METFORMIN | TABLET | 2.5-250MG |
| 96 | GLIPIZIDE/METFORMIN | TABLET | 2.5-500MG |
| 96 | GLIPIZIDE/METFORMIN | TABLET | 5-500MG |
| 97 | GLYBURIDE | TABLET | 1.25MG |
| 97 | GLYBURIDE | TABLET | 2.5MG |
| 97 | GLYBURIDE | TABLET | 5MG |
| 98 | GLYBURIDE/METFORMIN | TABLET | 1.25-250MG |
| 98 | GLYBURIDE/METFORMIN | TABLET | 2.5-500MG |
| 98 | GLYBURIDE/METFORMIN | TABLET | 5-500MG |
| 99 | GRISEOFULVIN | SUSPENSION (MICROSIZE) | 125MG/5ML |
| 99 | GRISEOFULVIN | MICROSIZE TABLET | 250MG |
| 99 | GRISEOFULVIN | MICROSIZE TABLET | 500MG |
| 100 | HALOBETASOL PROPIONATE | CREAM | 0.05% |
| 100 | HALOBETASOL PROPIONATE | OINTMENT | 0.05% |
| 101 | HALOPERIDOL | TABLET | 0.5MG |
| 101 | HALOPERIDOL | TABLET | 1MG |
| 101 | HALOPERIDOL | TABLET | 2MG |
| 101 | HALOPERIDOL | TABLET | 5MG |
| 101 | HALOPERIDOL | TABLET | 10MG |
| 101 | HALOPERIDOL | TABLET | 20MG |
| 102 | HYDRALAZINE HCL | | |
| 102 | HYDROCORTISONE ACETATE | SUPPOSITORIES | 10MG |
| 103 | HYDROCORTISONE ACETATE | SUPPOSITORIES | 25MG |
| 103 | HYDROCORTISONE ACETATE | SUPPOSITORIES | 30MG |
| 103 | HYDROCORTISONE ACETATE | SUPPOSITORIES | 50MG |
| 104 | HYDROCORTISONE VALERATE | CREAM | 0.20% |
| 105 | HYDROXYUREA | CAPSULE | 500MG |
| 106 | HYDROXYZINE PAMOATE | CAPSULE | 25MG |
| 106 | HYDROXYZINE PAMOATE | CAPSULE | 50MG |
| 106 | HYDROXYZINE PAMOATE | CAPSULE | 100MG |
| 107 | IMIQUIMOD | CREAM | 12.5MG/G |
| 107 | IMIQUIMOD | CREAM | 37.5MG/G |
| 107 | IMIQUIMOD | CREAM | 50MG/G |
| 108 | IRBESARTAN | TABLET | 75MG |
| 108 | IRBESARTAN | TABLET | 150MG |
| 108 | IRBESARTAN | TABLET | 300MG |
| 109 | ISONIAZID | TABLET | 100MG |
| 109 | ISONIAZID | TABLET | 300MG |
| 110 | ISOSORBIDE DINITRATE | TABLET | 5MG |
| 110 | ISOSORBIDE DINITRATE | TABLET | 10MG |
| 110 | ISOSORBIDE DINITRATE | TABLET | 20MG |
| 110 | ISOSORBIDE DINITRATE | TABLET | 30MG |
| 111 | KETOCONAZOLE | CREAM | 2% |
| 111 | KETOCONAZOLE | TABLET | 200MG |
| 112 | KETOPROFEN | CAPSULE | 50MG |
| 112 | KETOPROFEN | CAPSULE | 75MG |
| 113 | KETOROLAC TROMETHAMINE | TABLET | 10MG |
| 114 | LABETALOL HCL | TABLET | 100MG |
| 114 | LABETALOL HCL | TABLET | 200MG |
| 114 | LABETALOL HCL | TABLET | 300MG |
| 115 | LAMIVUDINE/ZIDOVUDINE (COMBIVIR) | TABLET | 150-300MG |
| 115 | LAMIVUDINE/ZIDOVUDINE (COMBIVIR) | TABLET | 300-150MG |
| 116 | LATANOPROST | SOLUTION | 0.01% |
| 117 | LEFLUNOMIDE | TABLET | 10MG |
| 117 | LEFLUNOMIDE | TABLET | 20MG |

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 118 | LEVOTHYROXINE | TABLET | 0.025MG |
| 118 | LEVOTHYROXINE | TABLET | 0.05MG |
| 118 | LEVOTHYROXINE | TABLET | 0.075MG |
| 118 | LEVOTHYROXINE | TABLET | 0.088MG |
| 118 | LEVOTHYROXINE | TABLET | 0.1MG |
| 118 | LEVOTHYROXINE | TABLET | 0.112MG |
| 118 | LEVOTHYROXINE | TABLET | 0.125MG |
| 118 | LEVOTHYROXINE | TABLET | 0.137MG |
| 118 | LEVOTHYROXINE | TABLET | 0.15MG |
| 118 | LEVOTHYROXINE | TABLET | 0.175MG |
| 118 | LEVOTHYROXINE | TABLET | 0.2MG |
| 118 | LEVOTHYROXINE | TABLET | 0.3MG |
| 119 | LIDOCAINE HCL | OINTMENT | 5% |
| 120 | LIDOCAINE/PRILOCAINE | CREAM | 2.5%-2.5% |
| 121 | LOPERAMIDE HCL | CAPSULE | 2MG |
| 122 | MEDROXYPROGESTERONE ACETATE | TABLET | 2.5MG |
| 122 | MEDROXYPROGESTERONE ACETATE | TABLET | 5MG |
| 122 | MEDROXYPROGESTERONE ACETATE | TABLET | 10MG |
| 123 | MEPROBAMATE | TABLET | 200MG |
| 123 | MEPROBAMATE | TABLET | 400MG |
| 124 | METFORMIN (F) ER | TABLET | 500MG |
| 124 | METFORMIN (F) ER | TABLET | 1000MG |
| 125 | METHADONE HCL | TABLET | 10MG |
| 125 | METHADONE HCL | TABLET | 5MG |
| 126 | METHAZOLAMIDE | TABLET | 25MG |
| 126 | METHAZOLAMIDE | TABLET | 50MG |
| 127 | METHIMAZOLE | | |
| 128 | METHOTREXATE | TABLET | 2.5MG |
| 129 | METHYLPHENIDATE | TABLET | 5MG |
| 130 | METHYLPHENIDATE | TABLET | 10MG |
| 130 | METHYLPHENIDATE | TABLET | 20MG |
| 130 | METHYLPHENIDATE ER | TABLET | 20MG |
| 131 | METHYLPREDNISOLONE | TABLET | 4MG |
| 132 | METRONIDAZOLE | TABLET | |
| 133 | MOEXIPRIL HCL | TABLET | 7.5MG |
| 133 | MOEXIPRIL HCL | TABLET | 15MG |
| 134 | MOEXIPRIL HCL/HCTZ | TABLET | 7.5-12.5MG |
| 134 | MOEXIPRIL HCL/HCTZ | TABLET | 15-12.5MG |
| 134 | MOEXIPRIL HCL/HCTZ | TABLET | 15-25MG |
| 135 | MOMETASONE FUROATE | CREAM | 0.10% |
| 135 | MOMETASONE FUROATE | OINTMENT | 0.10% |
| 135 | MOMETASONE FUROATE | SOLUTION | 0.10% |
| 136 | NABUMETONE | TABLET | 500MG |
| 136 | NABUMETONE | TABLET | 750MG |
| 137 | NADOLOL | TABLET | 20MG |
| 137 | NADOLOL | TABLET | 40MG |
| 137 | NADOLOL | TABLET | 80MG |
| 138 | NAFCILLIN SODIUM | INJECTABLE VIALS | ALL STRENGTHS |
| 139 | NAPROXEN SODIUM | TABLET | 275MG |
| 139 | NAPROXEN SODIUM | TABLET | 550MG |
| 140 | NEOMYCIN/POLYMYXIN/HYDROCORTISONE | SOLUTION | 3.5MG-10MU 1% |
| 141 | NIACIN ER | TABLET | 500MG |
| 141 | NIACIN ER | TABLET | 750MG |
| 141 | NIACIN ER | TABLET | 1000MG |
| 142 | NIMODIPINE | CAPSULE | 30MG |
| 143 | NITROFURANTOIN/MACROCRYSTALLINE | CAPSULE | 25MG |

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 143 | NITROFURANTOIN/MACROCRYSTALLINE | CAPSULE | 50MG |
| 143 | NITROFURANTOIN/MACROCRYSTALLINE | CAPSULE | 100MG |
| 144 | NORETHINDRONE ACETATE | TABLET | 5MG |
| 145 | NORETHINDRONE/ETHINYL ESTRADIOL (BALZIVA) | TABLET | 0.4-0.035MG-MCG |
| 146 | NORTRIPTYLINE HCL | CAPSULE | 10MG |
| 146 | NORTRIPTYLINE HCL | CAPSULE | 25MG |
| 146 | NORTRIPTYLINE HCL | CAPSULE | 50MG |
| 146 | NORTRIPTYLINE HCL | CAPSULE | 75MG |
| 147 | NYSTATIN | CREAM | 100MU |
| 147 | NYSTATIN | OINTMENT | 100MU |
| 147 | NYSTATIN | TABLET | 500MU |
| 148 | NYSTATIN/TRIAMCINOLONE | CREAM | 0.10% |
| 148 | NYSTATIN/TRIAMCINOLONE | OINTMENT | 0.10% |
| 149 | OMEGA 3 ACID ETHYL ESTERS | CAPSULE | 1G |
| 150 | OXACILLIN SODIUM | INJECTABLE VIALS | ALL STRENGTHS |
| 151 | OXAPROZIN | TABLET | 600MG |
| 152 | OXYBUTYNIN CHLORIDE | TABLET | 5MG |
| 153 | OXYCODONE/ACETAMINOPHEN | TABLET | 5-325MG |
| 153 | OXYCODONE/ACETAMINOPHEN | TABLET | 7.5-325MG |
| 153 | OXYCODONE/ACETAMINOPHEN | TABLET | 10-325MG |
| 154 | OXYCODONE HCL | TABLET | 5MG |
| 154 | OXYCODONE HCL | TABLET | 15MG |
| 154 | OXYCODONE HCL | TABLET | 30MG |
| 155 | PARICALCITOL | CAPSULE | 1MCG |
| 155 | PARICALCITOL | CAPSULE | 2MCG |
| 155 | PARICALCITOL | CAPSULE | 4MCG |
| 156 | PAROMOMYCIN | CAPSULE | 250MG |
| 157 | PENICILLIN V POTASSIUM | TABLET | 250MG |
| 157 | PENICILLIN V POTASSIUM | TABLET | 500MG |
| 158 | PENTOXIFYLLINE ER | TABLET | 400MG |
| 159 | PERMETHRIN | CREAM | 5% |
| 160 | PERPHENAZINE | TABLET | 2MG |
| 160 | PERPHENAZINE | TABLET | 4MG |
| 160 | PERPHENAZINE | TABLET | 8MG |
| 160 | PERPHENAZINE | TABLET | 16MG |
| 161 | PHENYTOIN SODIUM ER | CAPSULE | 100MG |
| 162 | PILOCARPINE HCL | TABLET | 5MG |
| 163 | PIOGLITAZONE METFORMIN HCL | TABLET | 15MG/500MG |
| 163 | PIOGLITAZONE METFORMIN HCL | TABLET | 15MG/850MG |
| 164 | PIROXICAM | CAPSULE | 10MG |
| 164 | PIROXICAM | CAPSULE | 20MG |
| 165 | POTASSIUM CHLORIDE ER | TABLET | 8MEQ |
| 165 | POTASSIUM CHLORIDE ER | TABLET | 10MEQ |
| 165 | POTASSIUM CHLORIDE ER | TABLET | 20MEQ |
| 166 | PRAVASTATIN | TABLET | 10MG |
| 166 | PRAVASTATIN | TABLET | 20MG |
| 166 | PRAVASTATIN | TABLET | 40MG |
| 166 | PRAVASTATIN | TABLET | 80MG |
| 167 | PRAZOSIN HCL | CAPSULE | 1MG |
| 167 | PRAZOSIN HCL | CAPSULE | 2MG |
| 167 | PRAZOSIN HCL | CAPSULE | 5MG |
| 168 | PREDNISOLONE ACETATE | SOLUTION/LIQUID EYE | 1% |
| 169 | PREDNISONE | TABLET | 1MG |
| 169 | PREDNISONE | TABLET | 2.5MG |
| 169 | PREDNISONE | TABLET | 5MG |
| 169 | PREDNISONE | TABLET | 10MG |

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 169 | PREDNISONE | TABLET | 20MG |
| 170 | PROCHLORPERAZINE | SUPPOSITORY | 25MG |
| 170 | PROCHLORPERAZINE | TABLET | 5MG |
| 170 | PROCHLORPERAZINE | TABLET | 10MG |
| 171 | PROMETHAZINE | SUPPOSITORY | 12.5MG |
| 171 | PROMETHAZINE | SUPPOSITORY | 25MG |
| 171 | PROMETHAZINE | SUPPOSITORY | 50MG |
| 172 | PROPRANOLOL | TABLET | 10MG |
| 172 | PROPRANOLOL | TABLET | 20MG |
| 172 | PROPRANOLOL | TABLET | 40MG |
| 172 | PROPRANOLOL | TABLET | 60MG |
| 172 | PROPRANOLOL | TABLET | 80MG |
| 172 | PROPRANOLOL ER | CAPSULE | 60MG |
| 172 | PROPRANOLOL ER | CAPSULE | 80MG |
| 172 | PROPRANOLOL ER | CAPSULE | 120MG |
| 172 | PROPRANOLOL ER | CAPSULE | 160MG |
| 173 | RALOXIFENE HCL | TABLET | 60MG |
| 174 | RANITIDINE HCL | CAPSULE | 150MG |
| 174 | RANITIDINE HCL | CAPSULE | 300MG |
| 174 | RANITIDINE HCL | TABLET | 150MG |
| 175 | SILVER SULFADIAZINE | CREAM | 1% |
| 176 | SPIRONOLACTONE/HCTZ | TABLET | 25-25MG |
| 177 | TACROLIMUS | OINTMENT | 0.03% |
| 177 | TACROLIMUS | OINTMENT | 0.10% |
| 178 | TAMOXIFEN CITRATE | TABLET | 10MG |
| 178 | TAMOXIFEN CITRATE | TABLET | 20MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 5MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 20MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 100MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 140MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 180MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 250MG |
| 180 | TERCONAZOLE | VAGINAL CREAM | 0.40% |
| 180 | TERCONAZOLE | VAGINAL CREAM | 0.80% |
| 181 | THEOPHYLLINE ER | TABLET | 100MG |
| 181 | THEOPHYLLINE ER | TABLET | 200MG |
| 181 | THEOPHYLLINE ER | TABLET | 300MG |
| 181 | THEOPHYLLINE ER | TABLET | 400MG |
| 181 | THEOPHYLLINE ER | TABLET | 450MG |
| 181 | THEOPHYLLINE ER | TABLET | 600MG |
| 182 | TIMOLOL MALEATE | GEL | 0.25% |
| 182 | TIMOLOL MALEATE | GEL | 0.50% |
| 183 | TIZANIDINE HCL | TABLET | 2MG |
| 183 | TIZANIDINE HCL | TABLET | 4MG |
| 184 | TOBRAMYCIN | SOLUTION | 300MG/5ML |
| 185 | TOBRAMYCIN/DEXAMETHASONE | SOLUTION | 0.3-0.1% |
| 186 | TOLMETIN SODIUM | CAPSULE | 400MG |
| 187 | TOLTERODINE TARTRATE | TABLET | 1MG |
| 187 | TOLTERODINE TARTRATE | TABLET | 2MG |
| 187 | TOLTERODINE TARTRATE ER | CAPSULE | 2MG |
| 187 | TOLTERODINE TARTRATE ER | CAPSULE | 4MG |
| 188 | TOPIRAMATE | CAPSULE | 15MG |
| 188 | TOPIRAMATE | CAPSULE | 25MG |
| 189 | TRAZODONE HCL | TABLET | 100MG |
| 190 | TRIAMCINOLONE ACETONIDE | CREAM | 0.03% |
| 190 | TRIAMCINOLONE ACETONIDE | CREAM | 0.10% |

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 190 | TRIAMCINOLONE ACETONIDE | CREAM | 0.50% |
| 190 | TRIAMCINOLONE ACETONIDE | OINTMENT | 0.03% |
| 190 | TRIAMCINOLONE ACETONIDE | OINTMENT | 0.10% |
| 190 | TRIAMCINOLONE ACETONIDE | OINTMENT | 0.50% |
| 190 | TRIAMCINOLONE ACETONIDE | PASTE | 0.03% |
| 190 | TRIAMCINOLONE ACETONIDE | PASTE | 0.10% |
| 190 | TRIAMCINOLONE ACETONIDE | PASTE | 0.50% |
| 191 | TRIAMTERENE/HCTZ | CAPSULE | 37.5-25MG |
| 191 | TRIAMTERENE/HCTZ | TABLET | 37.5MG-25MG |
| 191 | TRIAMTERENE/HCTZ | TABLET | 75-50MG |
| 192 | TRIFLUOPERAZINE HCL | TABLET | 1MG |
| 192 | TRIFLUOPERAZINE HCL | TABLET | 2MG |
| 192 | TRIFLUOPERAZINE HCL | TABLET | 5MG |
| 192 | TRIFLUOPERAZINE HCL | TABLET | 10MG |
| 193 | URSODIOL | CAPSULE | 300MG |
| 194 | VALSARTAN HCTZ | TABLET | 80-12.5MG |
| 194 | VALSARTAN HCTZ | TABLET | 160-12.5MG |
| 194 | VALSARTAN HCTZ | TABLET | 160-25MG |
| 194 | VALSARTAN HCTZ | TABLET | 320-12.5MG |
| 194 | VALSARTAN HCTZ | TABLET | 320-25MG |
| 195 | VERAPAMIL | TABLET | 40MG |
| 195 | VERAPAMIL | TABLET | 80MG |
| 195 | VERAPAMIL | TABLET | 120MG |
| 195 | VERAPAMIL SR | CAPSULE | 120MG |
| 195 | VERAPAMIL SR | CAPSULE | 180MG |
| 195 | VERAPAMIL SR | CAPSULE | 240MG |
| 196 | WARFARIN SODIUM | TABLET | 1MG |
| 196 | WARFARIN SODIUM | TABLET | 2MG |
| 196 | WARFARIN SODIUM | TABLET | 2.5MG |
| 196 | WARFARIN SODIUM | TABLET | 3MG |
| 196 | WARFARIN SODIUM | TABLET | 4MG |
| 196 | WARFARIN SODIUM | TABLET | 5MG |
| 196 | WARFARIN SODIUM | TABLET | 6MG |
| 196 | WARFARIN SODIUM | TABLET | 7.5MG |
| 196 | WARFARIN SODIUM | TABLET | 10MG |
| 197 | ZOLEDRONIC ACID | IV CONCENTRATE | 4MG/5ML |
| 197 | ZOLEDRONIC ACID | IV SOLUTION | 5MG/100ML |

Appendix B

| | |
|---|---|
| Alaska | <ul><li>Attorney General for the State of Alaska</li><li>Alaska Department of Health (Medicaid)</li><li>Alaska Department of Corrections</li><li>All other executive branch state agencies that purchased drugs</li></ul> |
| Arizona | <ul><li>Attorney General for the State of Arizona</li><li>Arizona Health Care Cost Containment System (AHCCCS) (Medicaid)</li></ul> |
| California | <ul><li>Attorney General for the State of California</li><li>California Department of Health Care Services (DHCS – Medicaid)</li><li>California Public Employees Retirement System (CalPERS) to the extent that its clients are state agencies (local entities that are clients of CalPERS are excluded).</li><li>California State University (CSU)</li><li>California Department of State Hospitals (DSH) California Department of Corrections and Rehabilitation (CDCR)</li><li>University of California (UC)</li><li>California Department of General Services</li><li>All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs</li></ul> |
| Colorado | <ul><li>Attorney General for the State of Colorado</li><li>Colorado Department of Health Care Policy and Financing (Medicaid)</li><li>All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs</li></ul> |
| Connecticut | <ul><li>Attorney General for the State of Connecticut</li><li>Department of Social Services (as administrator of Medicaid)</li><li>Department of Mental Health and</li></ul> |

|  |  |
|---|---|
|  | Addiction Services |
|  | • Department of Developmental Services |
|  | • Department of Public Health |
|  | • Department of Veterans Affairs |
|  | • Department of Corrections |
|  | • All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs |
| Delaware | • Attorney General for the State of Delaware |
|  | • Delaware Division of Medicaid and Medical Assistance (Medicaid) |
| District of Columbia | • Attorney General for the District of Columbia |
|  | • Department of Health Care Finance (Medicaid) |
| Florida | • Attorney General for the State of Florida |
|  | • Florida Agency for Health Care Administration (Medicaid) |
|  | • Department of Management Services |
|  | • Department of Children and Families |
|  | • Department of Corrections |
|  | • Department of Health |
|  | • All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs |
| Georgia | • Attorney General for the State of Georgia |
|  | • Georgia Department of Community Health (Medicaid) |
| Idaho | • Attorney General for the State of Idaho |
|  | • Idaho Department of Health and Welfare, Division of Medicaid (Medicaid) |
|  | • Idaho State Entities with MMCAP purchases, as listed in the MMCAP data production when filtered for Idaho. |
| Illinois | • Attorney General for the State of Illinois |
|  | • Illinois Department of Healthcare and Family Services (Medicaid) |

- Department of Central Management Services Department of Veterans Affairs (DVA)
- All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs (where public universities and health systems are not State Entities)

Indiana

- Attorney General for the State of Indiana
- Indiana Family and Social Services Administration (Medicaid)
- Department of Health
- Department of Administration
- Personnel Department
- State Police
- Veterans' Home
- All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs

Iowa

- Iowa Office of the Attorney General
- Iowa Department of Health and Human Services (Medicaid)

Kansas

- Attorney General for the State of Kansas
- Kansas Department of Health and Environment (Medicaid)
- Kansas Division of Health Care Finance
- Kansas State Employee Health Plan (Kansas Department of Administration),
- Kansas State Entities with MMCAP purchases:
  - (1) Adair Acute Care Pharmacy, Osawatomie State Hospital
  - (2) Emporia State University- Student Health
  - (3) Fort Hays State University- Student Health
  - (4) Kansas Neurological Institute
  - (5) Kansas Soldiers Home
  - (6) Kansas State School for the Blind

|  |  |
|---|---|
|  | o (7) Kansas State School for the Deaf<br>o (8) Kansas State University-VMTH<br>o (9) Kansas State University- Lafen<br>o (10) Kansas Department of Health & Environment 340B STD<br>o (11) Kansas Department of Health & Environment 340B TB<br>o (12) Larned Stated Hospital<br>o (13) Osawatomic State Hospital<br>o (14) Parsons State Hospital & Training Center<br>o (15) Pharmacy Practice Integrated Lab, University of Kansas<br>o (16) Pittsburgh State University 340B<br>o (17) Pittsburgh State University, Student Health<br>o (18) Rainbow Mental Health Facility<br>o (19) Watkins Health Center Pharmacy, University of Kansas<br>o (20) Wichita Pharmacy Skills Lab, University of Kansas<br>o (21) Wichita State University Student Health) |
| Kentucky | • Kentucky Office of the Attorney General<br>• Kentucky Cabinet for Health and Family Services (Medicaid) |
| Louisiana | • Attorney General for the State of Louisiana<br>• Louisiana Department of Health (Medicaid) |
| Maine | • Attorney General for the State of Maine<br>• Maine Department of Health and Human Services Office of MaineCare Services (Medicaid)<br>• All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs |

| Maryland | • Maryland Office of the Attorney General |
|---|---|
| | • Maryland Department of Human Services (Medicaid) |
| Massachusetts | • Attorney General for the State of Massachusetts |
| | • MassHealth (Medicaid) |
| | • State Office of Pharmacy Services (SOPS) |
| | • Group Insurance Commission (GIC) |
| Michigan | • Attorney General for the State of Michigan |
| | • Michigan Health & Human Services (Medicaid) |
| | • Michigan Department of Attorney General |
| | • Michigan Department of Health and Human Services |
| | • Michigan Department of Corrections |
| | • Michigan Civil Service Commission |
| | • Michigan Department of Technology, Management, and Budget |
| | • All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs |
| Minnesota | • Office of the Minnesota Attorney General |
| | • Minnesota Department of Human Services |
| | • Minnesota Department of Corrections |
| | • Minnesota Department of Veterans Affairs |
| | • Minnesota Management and Budget |
| Mississippi | • Attorney General for the State of Mississippi |
| | • Mississippi Division of Medicaid (Medicaid) |
| | • Mississippi Department of Insurance |
| | • Mississippi Department of Health |
| | • All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs during the relevant time period (or from May 1, 2009 to the |

Effective Date)

| Missouri | • Attorney General for the State of Missouri<br>• Missouri Department of Social Services (Medicaid) |
|---|---|
| Montana | • Montana Office of the Attorney General<br>• Montana Department of Public Health and Human Services (Medicaid) |
| Nebraska | • Nebraska Office of the Attorney General<br>• Department of Health and Human Services (Medicaid)<br>• Department of Administrative Services<br>• Department of Corrections<br>• Department of Veterans' Affairs<br>• All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs |
| Nevada | • Attorney General for the State of Nevada<br>• Nevada Department of Health & Human Services Division of Health Care Financing and Policy (Medicaid)<br>• Nevada Public Employees' Benefits Program University of Nevada School of Medicine Department of Health and Human Services (HHS)- Division of Public and Behavioral Health<br>• Department of Health and Human Services (HHS)- Division of Child and Family Services<br>• Department of Health and Human Services- Division of Aging & Disability Services<br>• Nevada Department of Corrections; and<br>• All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs |
| New Hampshire | • Attorney General for the State of New Hampshire<br>• New Hampshire Department of Health & |

Human Services (Medicaid)

| New Jersey | • Attorney General for the State of New Jersey |
| | • State of New Jersey, Department of Human Services, Division of Medical Assistance & Health Services (Medicaid) |

New Jersey
- Attorney General for the State of New Jersey
- State of New Jersey, Department of Human Services, Division of Medical Assistance & Health Services (Medicaid)

New Mexico
- New Mexico Department of Justice
- New Mexico Human Services Department (Medicaid)
- New Mexico Department of Health
- New Mexico State Entities that made MMCAP purchases

New York[9]
- Attorney General for the State of New York
- State Department of Health (Medicaid)
- MMCAP State Entities, listed in the MMCAP production when you filter for New York. State Entities purchasing through MMCAP include hospitals operated by the State Office of Mental Health

North Carolina
- Attorney General for the State of North Carolina
- North Carolina Medicaid, Division of Health Benefits (Medicaid)

North Dakota
- Attorney General for the State of North Dakota
- North Dakota Health & Human Services, Medical Services Division (Medicaid)

Northern Mariana Islands
- Office of the Attorney General for the Commonwealth of the Northern Mariana Islands
- Commonwealth Medicaid Center (Medicaid)
- All other State Entities that purchased, or

---

[9] The definition of Released Claims in Paragraph I.X is specifically modified to reflect that the State of New York does not release or waive its permissive exclusion or debarment authority as to the Apotex Releasees.

| | |
|---|---|
| | provided reimbursement for the purchase of, generic drugs |
| Ohio | • Attorney General for the State of Ohio<br>• Ohio Department of Medicaid (Medicaid) |
| Oklahoma | • Office of the Oklahoma Attorney General<br>• Oklahoma Healthcare Authority (Medicaid)<br>• All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs |
| Oregon | • Attorney General for the State of Oregon<br>• Oregon Health Authority<br>• Health Authority Medicaid Program (Medicaid) Health Authority CAREAssist Program<br>• Health Authority- Oregon Educators Benefit Board & Oregon Public Employees Benefit Board<br>• Department of Corrections<br>• All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs |
| Pennsylvania | • Attorney General for the State of Pennsylvania<br>• Pennsylvania Department of Human Services (Medicaid)<br>• All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs |
| Puerto Rico | • Attorney General for Puerto Rico<br>• Administración de Seguros de Salud de Puerto Rico<br>• Departamento de Correccion y Rehabilitacion<br>• Puerto Rico Department of Health (Medicaid)<br>• All other State Entities that purchased, or provided reimbursement for the purchase |

|  | of, generic drugs other than (1) public corporations, and (2) public instrumentalities[10] |
|---|---|
| Rhode Island | • Rhode Island Office of the Attorney General<br>• Department of Human Services Medicaid Program |
| South Carolina | • Attorney General for the State of South Carolina<br>• South Carolina Healthy Connections (Medicaid) |
| South Dakota | • Attorney General for the State of South Dakota<br>• South Dakota Department of Social Services (Medicaid)<br>• South Dakota Department of Health<br>• South Dakota Department of Labor and Regulations |

---

[10] "Public corporation" and "public instrumentality" are defined as follows: Any public instrumentality that offers financial and/or social services to the People of Puerto Rico on behalf of the Government of the Commonwealth of Puerto Rico, but as an independent juridical entity. The definition shall include all the public-private corporation, to wit, any corporation that issues stocks and is organized pursuant to private corporations laws, but is controlled, in whole or in part, by the Government of the Commonwealth of Puerto Rico. The term shall refer, but is not limited to the Electric Power Authority; the Aqueduct and Sewer Authority; the University of Puerto Rico; the Automobile Accident Compensation Administration; the State Insurance Fund Corporation; the Labor Relations Board; the Public Building Authority; the Port Authority; the Government Development Bank; the Industrial Development Company; the Metropolitan Bus Authority; the Health Insurance Administration; the Trade and Export Company; the Motion Picture, Arts, Sciences, and Industry Development Corporation; the Highway and Transportation Authority; the Farm Insurance Corporation; the Rural Development Corporation; the Land Authority; the Land Administration; the Maritime Transport Authority; the Convention Center District Authority; the Solid Waste Authority; the Caribbean Basin Project Financing Authority; the Municipal Finance Agency; the Industrial, Tourist, Educational, Medical, and Environmental Pollution-Control Facilities Financing Authority; the Puerto Rico Infrastructure Financing Authority; the Housing Finance Authority; the Public Finance Corporation; the Economic Development Bank for Puerto Rico; the Corporation for the Revitalization of Urban Centers and Areas; the Right to Work Administration; the National Parks Company; the Corporation of Industries for the Blind, the Mentally Retarded and Other Disabled Persons of Puerto Rico; the Puerto Rico and Caribbean Cardiovascular Center Corporation; the Puerto Rico Medical Services Administration; the National Guard Institutional Trust; the Employment and Training Enterprises Corporation; the Corporation for the Supervision and Insurance of Cooperatives; the Port of the Americas Authority; the Company for the Integral Development of the Cantera Peninsula; the Puerto Rico Conservatory of Music Corporation; the Musical Arts Corporation; the Institute of Puerto Rican Culture; the Martin Pe†a Canal ENLACE Project Corporation; the Authority for the Redevelopment of Land and Facilities of the Roosevelt Roads Naval Station; the Traffic Safety Commission; the Administration for Integral Child Care and Development; Administration; and any other Public Corporations and Instrumentalities that are created and comply with the definition herein."

|  |  |
|---|---|
|  | • South Dakota Department of Veterans Affairs<br>• South Dakota Department of Human Services<br>• South Dakota Department of Human Resources |
| Tennessee | • Attorney General for the State of Tennessee<br>• Tennessee Department of Finance & Administration, Division of TennCare (Medicaid)<br>• Tennessee Department of Finance & Administration, Division of Benefits Administration<br>• All State Entities that indirectly purchased, paid, and/or provided reimbursement for some or all of the purchase price for any Drugs at Issue, other than for resale, from May 1, 2009 to the Effective Date. |
| Utah | • Attorney General for the State of Utah<br>• Utah Department of Health & Human Services (Medicaid)<br>• Division of Consumer Protection<br>• All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs |
| Vermont | • Attorney General for the State of Vermont<br>• Agency of Human Services, Department of Vermont Health Access (Medicaid)<br>• All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs |
| Virginia | • Attorney General for the State of Virginia<br>• Virginia Department of Medicaid Assistance Services (Medicaid) |
| Virgin Islands | • Attorney General for the U.S. Virgin Islands |

|                | |
|----------------|---|
|                | • Virgin Islands Department of Human Services—Office of Medicaid (Medicaid) |
|                | • All other State Entities that purchased the drugs at issue, or that provided reimbursement for the purchase of the drugs at issue, during the period that is the subject of this action |
| Washington     | • Attorney General for the State of Washington |
|                | • Washington State Department of Social and Health Services |
|                | • Washington State Health Care Authority (Medicaid) |
|                | • Department of Corrections |
|                | • Department of Labor and Industries (L&I) |
|                | • Eastern State Hospital, Department of Social and Health Services (DSHS) |
|                | • Western State Hospital, Department of Social and Health Services (DSHS) |
|                | • All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs |
| West Virginia  | • Attorney General for the State of West Virginia |
|                | • WV Dept. of Health and Human Services, Bureau for Medical Services (Medicaid) |
|                | • WV Public Employees Insurance Agency |
| Wisconsin      | • Attorney General for the State of Wisconsin |
|                | • Wisconsin Department of Health Services (Medicaid) |
|                | • All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs |
| Wyoming        | • Attorney General for the State of Wyoming |
|                | • Wyoming Department of Health (Medicaid) |

- All other State Entities that purchased, or provided reimbursement for the purchase of, generic drugs

# APOTEX CORP. COOPERATION AGREEMENT

## A. Preamble

1.      This Cooperation Agreement (the "Agreement") is made between Apotex Corp. ("Apotex"), the Attorneys General, and the End-Payer Plaintiffs, as those terms are defined in the Settlement Agreement between them.

2.      The purpose of this Agreement is to set forth the terms and process by which Apotex will provide substantial cooperation to the Attorneys General and the End-Payer Plaintiffs in connection with their prosecution of claims in the Actions entitled *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (Rufe, J.) (the "Actions") or any court to which their actions have been or may be remanded.

3.      Apotex on the one hand and the Attorneys General and the End-Payer Plaintiffs on the other hand agree that Apotex's substantial cooperation pursuant to this Agreement is material to the Settlement Agreement to be entered by them.

## B. Scope of Substantial Cooperation

4.      Within fourteen (14) calendar days of the Preliminary Approval Order, Apotex's counsel shall provide to the Attorneys General and the End Payer Plaintiffs a list of the known persons who are likely to have relevant information concerning the allegations in the Actions, indicating (1) who are current or former employees; (2) the persons who are under Apotex's control; and (3) for those persons who are not under Apotex's control, information sufficient to contact them directly or through their attorney.

5.     Beginning no later than twenty-one (21) calendar days of the Preliminary Approval Order, Apotex's counsel shall undertake reasonable efforts to provide the Attorneys General and the End-Payer Plaintiffs collectively with a verbal attorney proffer[s] on up to a total of eight (8) generic pharmaceutical drugs selected by the Attorneys General and the End-Payer Plaintiffs within five (5) days after the Effective Date (including all formulations) manufactured by Apotex identified in the Attorneys General's and the End-Payer Plaintiffs' complaints, and more if agreed by the Attorneys General and the End-Payer Plaintiffs on the one hand and Apotex on the other hand.  The proffer(s) shall be given at an agreed-upon date(s) and an agreed-upon location(s) or virtually. Each proffer shall provide a reasonably detailed description of the principal facts known to Apotex that are relevant to the conduct alleged in the Actions, including facts concerning the alleged involvement of Apotex and other defendants in the Actions, and including in particular all facts previously provided to the U.S. Department of Justice ("DOJ") or any other U.S. or state government investigative authority, in response to subpoenas, civil investigative demands, or otherwise, relating to the allegations in the Actions.

6.     Within the attorney proffers provided pursuant to ¶ 5 above, Apotex's counsel shall also verbally provide to counsel for the Attorneys General and the End Payer Plaintiffs, where applicable, non-privileged summaries of interviews with persons identified pursuant to ¶ 4 above, to the extent the witness was previously interviewed by Apotex's counsel. If the written materials prepared by Apotex's counsel as described herein reference or are supported by documents or data, Apotex's counsel shall provide the Bates number assigned by them to those documents or data in the Actions.

7.     Within 28 business days of the Preliminary Approval Order, Apotex shall undertake reasonable efforts to provide the Attorneys General and the End Payer Plaintiffs collectively access to up to four (4) witnesses identified pursuant to ¶ 4 above, for a period of time up to four (4) hours each.

8.     Apotex agrees to use reasonable efforts to assist the Attorneys General and the End Payer Plaintiffs to understand data produced by Apotex, including consulting with technical personnel to address questions posed by the Attorneys' General and End Payer Plaintiffs' data consultants, and to provide any additional information or data reasonably necessary to understand or clarify the data or otherwise render it usable by the Attorneys General's and End-Payer Plaintiffs' experts and admissible.

9.     The Attorneys General and the End-Payer Plaintiffs shall have the right to receive, subject to the protective order in the MDL, all documents, interrogatory responses, and responses to requests for admission produced by Apotex to any other plaintiff in the MDL. Apotex likewise shall have the right to receive, subject to the protective order in the MDL (and in any court to which the State Actions have been or may be remanded), all documents, interrogatory responses, and responses to requests for admission produced by the Attorneys General and the End-Payer Plaintiffs to any other defendant in the MDL or in any other court to which their claims have been or may be remanded.

10.     Apotex agrees to use reasonable efforts to authenticate and lay the foundation to admit as business records, where applicable, collectively up to one hundred and fifty (150) documents and/or things produced by Apotex in the Actions (or more if good cause is shown) to confirm the authenticity of the documents produced by Apotex in the Actions, and to confirm,

where applicable, that such documents and data produced by Apotex qualify as business records, whether by declarations, depositions, hearings and/or trial testimony as may be necessary for the Actions to render such documents and data admissible at trial.

11.     Apotex agrees to use reasonable best efforts to produce collectively up to four (4) current or former Apotex employees as witnesses live at any trial of the Attorneys' General and End Payer Plaintiffs' claims in the Actions.

12.     By no later than the day upon which the Attorneys General and the End Payer Plaintiffs move for final approval of the Settlement, the Parties shall set forth any modifications to the scope of cooperation under this agreement in a separate letter agreement (signed by the counsel identified in Section XV of the Settlement Agreement) among them to be provided to the Court if the Court so requires, and if so required, to be filed *in camera* with Court permission.

### C.  No Waiver of Privileges, Evidentiary Protections, or Confidentiality Obligations

13.     Notwithstanding any other provision of this Agreement, Apotex may assert where applicable the work product doctrine, the attorney-client privilege, and the common interest privilege (collectively, "Privileged Material") and shall not disclose any information provided by other defendants pursuant to a common interest agreement. The Attorneys General and the End-Payer Plaintiffs shall not request disclosure of Privileged Material, and a refusal to provide Privileged Material shall not be deemed a breach of this Agreement by Apotex. The Attorneys General and the End-Payer Plaintiffs shall be free to use statements, testimony, materials or information provided under this Agreement in any motion, opposition or other pleading in the Actions or as evidence at trial in this case. The Attorneys General and the End-Payer Plaintiffs will not otherwise disclose any statements, testimony, materials or information provided under

this Agreement to any other party in the Actions, including any other plaintiff, or to any third party. The Attorneys General, End-Payer Plaintiffs, and Apotex are permitted to describe orally the scope of cooperation required under this Agreement with counsel for other defendants, but cannot otherwise disclose the information provided under this Agreement.