## DECLARATION OF TIFFANEY A. JANOWICZ
## IN SUPPORT OF STATES' MOTION FOR PRELIMINARY APPROVAL OF
## SETTLEMENT WITH APOTEX CORP.

I, Tiffaney Janowicz, being duly sworn, hereby declare as follows:

1.     I am a senior vice president of Rust Consulting, Inc. ("Rust").  I submit this declaration at the request of the States' Counsel in connection with the above-captioned action and in support of the States' Motion for Preliminary Approval of the Settlement between the States and Apotex Corp.  ("Apotex Settlement").

2.     With more than 30 years of class action settlement administration experience, Rust is among the industry's leaders.  Rust has administered more than 7,800 class action settlements, judgments, and similar administrative programs.

3.     Rust designs and implements notice and administration programs for class actions of all sizes and types, including consumer, antitrust, securities, insurance, healthcare, labor and employment, property, finance, and products liability class actions.  In the past, Rust has handled claims administration in, among many other matters, the $1.1 billion settlement in *Microsoft I-V Cases*, J.C.C.P. No. 4106 (Cal. Super. Ct. San Francisco County); the $65 million settlement in *In re Lawn Mower Engine Horsepower Marketing and Sales Practices Litig.*, No. 2:08-md-1999, MDL No. 1999 (E.D. Wisc.); the $316 million direct purchasers settlement *in In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.); the $566 million settlement in *In re Electronic Books Antitrust Litigation*, No. 11-md-2293 (S.D.N.Y.); and the $125 million settlement in *In re Pharmaceutical Industry Average Wholesale Price Litigation (All Class Actions Relating to Track Two Defendants)*, No. 01-CV-12257-PBS, MDL No. 1456.  A C.V. outlining Rust's services and experience was provided as an exhibit to my declaration in support of a

settlement with another defendant. *See* Declaration of Tiffaney Janowicz in Support of States' Motion for Preliminary Approval of Settlement With Heritage Pharmaceuticals, Inc., Emcure Pharmaceuticals Ltd., and Satish Mehta. (ECF 645-3, 3:16-cv-02056-MPS; ECF 432-3; 3:19-cv-00710-MPS; ECF 464-3, 3:20-cv-00802-MPS).

4.    I have over 28 years of experience at Rust and currently lead Rust's consumer, insurance, and healthcare practice areas. I also have a significant depth of experience in antitrust and product liability matters. I have designed and/or managed hundreds of class action notice and administration programs. I speak on class action matters (Continuing Legal Education courses), and I have been a co-author or panelist on relevant topics in the notice and administration industry. My C.V., which outlines my experience and qualifications, was also attached to my prior declaration referred to above. *Id.*

5.    Working with the States, I developed the proposed notice plan described herein. This declaration will describe the notices ("Notice" or "Notices") and the notice plan ("Notice Plan") proposed here for the Apotex Settlement, including how they were developed. This declaration is based upon my personal knowledge and upon information provided by the States, my associates and staff members. The information included in this declaration is of a type reasonably relied upon in the fields of class action notice and administration.

## OVERVIEW

6.    The objective of the proposed Notice Plan is to provide the best notice practicable under the circumstances to eligible Consumers who purchased one or more of the identified generic drugs at issue in the above-referenced litigations for personal, family, or household use (and not for resale) between May 1, 2009, and December 31, 2019, while living in any of the

participating States or Territories (Connecticut, Alabama, Alaska, Arizona, Arkansas, California, Colorado, District of Columbia, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, U.S. Virgin Islands, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming).

7.     This proposed Notice Plan for the Apotex Settlement is similar to the notice proposed by the States in their settlement with Heritage *et al* ("Heritage Settlement") that was preliminarily approved by the Court on November 2, 2024. *See* Plaintiff States' Motion for Final Approval of Settlement with Heritage Pharmaceuticals Inc., Emcure Pharmaceuticals Ltd., and Satish Mehta  ("Heritage Settlement Approval")(ECF 722, 3:16-cv-02056-MPS; ECF 583; 3:19-cv-00710-MPS; ECF 574, 3:20-cv-00802-MPS.).  However, as detailed below, this Notice Plan is intended to be broader and more expansive, including by employing additional efforts to notify Consumers, such as by using traditional print media and outreach efforts to thousands of independent pharmacies.

## NOTICE PLAN

8.     The Notice Plan is designed to satisfy due process; reach eligible Consumers; provide them with opportunities to learn about the settlement and act upon their rights; and ensure that they will be exposed to, see, review, and understand the Notices.

9.     Based on information available to Rust, there is no readily available consumer list to be used for direct notice, other than registration information collected since the announcement of the Heritage settlement.  Therefore, in an attempt to reach a broad but relevant audience (*i.e.*

those likely to have purchased the identified generic drugs), the States and Rust have proposed a Notice Plan that utilizes various means of notice. Specifically, the Notice Plan proposes that notice be disseminated via use of various complimentary means such as a stand-alone website, toll-free-number, digital advertising, print media advertising, so-called "earned media" from press releases, supplemented by outreach to pharmacies asking for their assistance in providing notice to their customers.

10.    The Notice Plan includes Notices written in clear, concise, easily understood language (in English, Spanish, Chinese, Arabic, French, Russian, and Vietnamese). Further, the Notices will include the settlement website address and toll-free telephone number, and banner ads will contain a link to access the website easily.

***Website***

11.    On October 30, 2024, Rust established a website at www.AGGenericDrugs.com (viewable in English or Spanish). The website informs Consumers about the litigation and Settlement, including basic information about Consumers' rights and options concerning the Settlement, shares several helpful documents (*e.g.*, the Complaint, the negotiated settlement, the list of drugs involved, and the Long Form and Short Form Notice approved by the Court), and lists "FAQs" to several expected questions Consumers are likely to have (along with answers). The website also includes a toll-free telephone number and email address where Consumers can seek additional information. *See* Declaration of Tiffaney A. Janowicz in Support of Plaintiffs' Motion for Final Approval of Settlement on Implementation of The Notice Plan and Administration at ¶9, 17-18. (ECF 722-4, 3:16-cv-02056-MPS; ECF 583-4; 3:19-cv-00710-MPS; ECF 574-4, 3:20-cv-00802-MPS.)("Janowicz Heritage Decl.")  In addition to providing information, the website also has a form allowing Consumers to register to obtain future

information about how to file a claim seeking payment (if eligible) as well as a form for Consumers seeking to be excluded from the Settlement. *Id.* A copy of the Long Form Notice is attached as Exhibit A, a copy of the Short Form Notice (also referred to as Summary Notice) is attached as Exhibit B, and printouts of the current websites are attached as Exhibit C.

12. As part of the States' efforts to increase notice, this Notice Plan proposes increased translation of the website to include Chinese, Arabic, French, Russian, and Vietnamese (in addition to the Spanish translation currently available on the website).

13. To avoid confusion with the States' prior efforts to notify Consumers about the Heritage Settlement, the website Home page will be modified to present the Apotex Settlement overview along with the Consumers' options and relevant deadlines (when available). Separate links for documents relating to the Apotex Settlement (*e.g*., litigation documents for the Apotex cases, Short Form and Long Form Notices for the Apotex cases, and any specific FAQs relating to the Apotex cases) will be added to the website's Documents page. All documents will be organized by settlement with the settlement name in the link to minimize Consumer confusion. The website will also be revised to make clear that a Consumer need only register *once* to receive future information about the States' litigation(s) and receive a claim form when available (*i.e.,* a Consumer who has already registered during the Heritage Settlement need not register again for the Apotex Settlement).

### *Direct Notice*

14. From the time the Heritage settlement was announced, Rust has been collecting registrations through the settlement website and by telephone. When possible, Rust will send the Short Form Notice via email to consumers who registered to receive updates concerning the case status. For those consumers who did not provide an email address with their registration, Rust will

mail the Long Form Notice.  A note will accompany both types of notices to let consumers know that the notice is being sent as a result of their registration, and they do not need to register again to receive future updates.

### *Digital Advertising*

15.     Digital advertising delivers an immediate message and allows the viewer of an advertisement to instantly click through to a website to obtain additional information.  Thus, if delivered properly, digital advertisement can be an effective way to reach a broad but targeted audience, *e.g.*, by causing digital banner ads to appear on various websites and/or social media advertising to appear on popular sites like Facebook and Instagram.

16.     The first step in creating an appropriate and effective digital advertising strategy is determining a target audience for the relevant product, here generic pharmaceuticals.

17.     Using media survey data from MRI-Simmons 2024 Spring *Doublebase Study* ("MRI")[1], Rust chose the target audience and analyzed their media habits. MRI-Simmons is a nationally accredited media and marketing research firm that provides syndicated data on audience size, composition, and other relevant factors pertaining to major media, including broadcast, magazines, newspapers, and media usage.  Due to the broad range of generic prescription drugs at issue, rather than target by specific drugs or ailments, Rust chose to focus predominately on a broad target measured by MRI: individuals age 25+ who used generic prescription drugs ("Generic Prescription Drug Users").

---

[1] MRI-Simmons produces an annual survey called a *Doublebase Study*.  The study includes survey responses from over 50,000 people and provides insights into consumer preferences and consumption patterns, covering thousands of brands and hundreds of product categories.

18. The second step in creating an appropriate and effective digital advertising strategy is to analyze available data about that target audience (*e.g.*, demographics, behaviors, media habits). This information is used to select the most appropriate and effective digital media to reach the target audience. Because over 95% of Generic Prescription Drug Users have used the internet in the past 30 days,[2] Rust decided that digital advertising over the internet was likely to be an effective means of providing notice in this case.

19. With Generic Prescription Drug Users as our target audience, Rust designed the digital advertising program to ensure that the Notice is placed in digital media outlets whose audiences are likely to include our target audience. Accordingly, the digital advertising strategy includes advertising on both digital (website banner ads) and social media.

20. Based on our experience, Rust believes this digital advertising strategy will be successful in delivering notice to Generic Prescription Drug Users. An estimated 110,000,000 gross impressions[3] will be delivered nationally in English, Spanish, Chinese, Arabic, French, Russian, and Vietnamese across mobile, tablet, and desktop platforms over a period of eight weeks on Google Display Network, Facebook, Instagram, and various websites through targeted internet advertising. Throughout the program, Rust will monitor ad delivery and efficiency and make adjustments for optimization across platforms accordingly.

21. Targeted internet advertising in the form of eye-catching banner ads will be presented to Consumers based on the content they are viewing, words they have searched or through use of third-party data sources that identify them as individuals likely to have purchased generic prescription drugs.

---

[2] 2024 MRI-Simmons Spring *Doublebase Study*.
[3] Gross impressions are the total number of times a digital ad will be shown. This figure does not represent the total number of unique viewers of the ad, as some viewers will see the ad on more than one website.

22.     A similar digital advertising strategy was utilized by the States in the proposed notice for the Heritage Settlement, with great success. *See* Janowicz Heritage Decl. at ¶¶ 20-28 (ECF 722-4, 3:16-cv-02056-MPS; ECF 583-4; 3:19-cv-00710-MPS; ECF 574-4, 3:20-cv-00802-MPS.).  A copy of sample screen shots of the digital advertising used in the notice plan for the Heritage Settlement is attached as Exhibit D.

### *Print Media*

23.     Advertising using traditional print media, such as a magazine or newspaper, can be an effective compliment to a digital advertising strategy, especially in reaching the older segments of the target audience who are less likely to frequently utilize digital or social media and/or more likely to read print media.

24.     As a means to better reach this subset of our target audience, Rust will place the Summary Notice in *AARP The Magazine*, a bi-monthly (every two months) publication with a base circulation of 21.5 million and readership[4] of 30 million.  *AARP The Magazine* was selected because it is a publication with one of the greatest reaches of those age 50+.

### *Earned Media*

25.     "Earned media" refers to publicity or exposure outside of paid advertising.  Press releases play a key role in generating earned media, whether it be through (re)distribution of press releases themselves or in the form of related stories, to increase distribution and trustworthiness of the messaging and thus hopefully provide greater awareness of, and confidence in, the Settlement. Earned media coverage creates legitimacy and credibility in the minds of Consumers because it is

---

[4] Readership is an estimate of how many readers a publication has, while circulation refers to the number of copies of the magazine that are distributed each run, here bi-monthly.

delivered and received through credible organizations, such as a newspaper reporter/columnist, television or radio anchor/reporter, influential bloggers, and through word-of-mouth on social media networks.[5]

26.     The earned media program developed for this case will be in the form of press releases issued by the States, but redistributed and/or summarized through traditional media, such as television, radio and newspapers, as well as digital.  Press releases will also be posted on the respective State's website.  Additionally, the language of the Summary Notice will be distributed through PR Newswire's Multicultural and US1 Newslines in English, Spanish and Chinese, as a nationwide press release across the U.S. reaching approximately 14,500 websites, media outlets, and journalists.

27.     Press releases will highlight the toll-free telephone number and settlement website address so that Consumers can easily obtain complete information about the proceeding and the Apotex Settlement.  The messaging will encourage eligible Consumers to register to receive updates and additional notices.

28.     The earned media program developed by Rust for this case is intended to supplement the other notice efforts taken by the States and thus is expected to increase the estimated reach, albeit Rust did not endeavor to quantify that amount.


### *Outreach*

29.     Rust will also send the Summary Notice to 17,500 independent drug stores across the country via mail and email. A letter from the States accompanying the notice will ask

---

[5] Entrepreneur, *What Is Earned Media and What Is Its Value?*, January 26, 2023, at https://www.entrepreneur.com/starting-a-business/what-is-the-value-of-earned-media/443019 (last visited January 20, 2025) and Cision, *5 Reasons the Press Release Still Matters*, February 17, 2022, at https://www.cision.com/resources/articles/5-reasons-the-press-release-still-matters/ (last visited January 30, 2025).

pharmacies to post, email or otherwise share the Summary Notice with customers who may have purchased one or more of the drugs at issue. Similar to the earned media program developed for this case, the outreach efforts are intended to supplement other notice efforts and thus are expected to increase the estimated reach, though no effort has been undertaken to quantify the planned outreach's impact on reach.

### *Consumer Response Mechanisms*

30.     Rust will maintain the current website to enable Consumers to get information about the Apotex Settlement, including the Short Form and Long Form Notices, registration form, frequently asked questions, the Settlement Agreements, and other court documents from this action. Consumers will be able to download materials and register to receive future related notices via email. Consumers will also be able to opt-out of settlements and the litigation (including future settlements) on the website.

31.     Rust will maintain the toll-free informational number currently listed on the website, to allow Consumers to call and listen to answers to frequently asked questions 24 hours a day and seven days a week.

32.     Rust will maintain the email address where Consumers can seek additional information.

33.     Rust will maintain the U.S. Mail Post Office Box identified on the website, to allow Consumers to ask questions, register for future notices, update their address, request exclusion, and eventually file claims.

34.     Rust will maintain a contact center staffed to respond to caller's questions and email communications during normal business hours, Monday through Friday.

## **CONCLUSION**

35.     The Notice Plan incorporates a modern approach of deploying notice to eligible Consumers.

36.     It is my opinion that the Notice Plan and content of the Notices are adequate and reasonable under the circumstances and provide the best notice practicable.  The Notice program is designed to reach[6] at least 78% of the target audience using a methodology that is consistent with the standards employed by Rust in designing effective notice programs and administering these types of settlements.  The Notice Plan was designed to fully comply with Rule 23 of the Federal Rules of Civil Procedure.

I declare that the foregoing is true and correct to the best of my knowledge.

Executed in Longmont, Colorado this 25th day of March, 2025.

*Tiffaney A Janowicz*
Tiffaney A. Janowicz

---

[6] Reach is the estimated percentage of a target audience reached through a specific media vehicle or combination of media vehicles.

# EXHIBIT A

**If you bought certain generic prescription drugs in the United States between May 1, 2009 and December 31, 2019, you could receive money from recent Settlements.**

*Federal courts have authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- Proposed settlements have been reached in consumer protection and antitrust lawsuits brought by State Attorneys General of nearly all states, commonwealths, U.S. territories, and the District of Columbia (the "State Attorneys General"), as well as numerous Consumers and other end-payers ("End-Payer Plaintiffs" or "EPPs") against several of the nation's largest generic drug manufacturers. The lawsuits claim that the identified generic drug manufacturers violated federal and state antitrust laws, consumer protection statues, and/or common law, by agreeing to fix the prices of numerous generic prescription drugs sold in the United States. <u>The lawsuits are not about – and do not question - the safety or effectiveness of any of the drugs at issue.</u>

- The lawsuits allege that purchasers of the identified generic prescription drugs – including Consumers and other end-payers – overpaid for the drugs due to artificially inflated prices.

- The purpose of this Notice is to alert purchasers of generic prescription drugs of the most recent settlement. The State Attorneys General and EPPs have reached a proposed settlement with generic drug manufacturer Apotex Corp. (the "Apotex Settlement" with "Apotex") which settles claims in lawsuits currently pending in the United States District Court for the District of Connecticut (the "States' Actions"), and the United States District Court for the Eastern District of Pennsylvania (the "EPP Class Actions").

- The Attorneys General of Alabama, Arkansas, Hawaii, and Texas were not party to the Apotex Settlement, although Consumers who reside in those states and who purchased generic pharmaceuticals may still receive money from the Apotex Settlement.

- Both of the courts under which the States' Actions and the EPP Class Actions are pending (together, the "Courts") have preliminarily approved the Apotex Settlement, which provides that (1) Apotex will cooperate with the State Attorneys General and EPPs by providing information relevant to the ongoing litigation against the remaining defendants who have not settled (the "Non-Settling Defendants"); (2) Apotex will take steps to ensure that it will not engage in further violations of state and federal antitrust laws; (3) Apotex will pay $48,000,000 for the benefit of Third Party Payers in the EPP Class Actions; and (4) Apotex will pay $39,100,000 into State escrow accounts, of which $17,624,403 will be allocated among Consumers, $9,745,596 will be allocated among certain State Entities, and $11,730,000 will be used for the payment of notice and administration expenses as well as the costs of litigating the States' Actions, subject to approval of the United States District Court for the District of Connecticut.

- Payments will be made to Consumers if and when (1) the Courts approve the Apotex Settlement and any appeals are resolved, and (2) the Courts approve a future Plan of Allocation to distribute Settlement Funds to Consumers, which EPPs and the State Attorneys General anticipate filing in connection with future settlements or judgments. The Plan of Allocation, the framework of which is explained below, will be further

described in an additional notice to be given at a later date, providing Consumers with the opportunity to state their views regarding the proposed distribution.

- Lawsuits by the State Attorneys General and EPPs are continuing against the Non-Settling Defendants.

- Your legal rights may be affected by the Apotex Settlement if you made a qualifying generic drug purchase between May 1, 2009 and December 31, 2019, for personal use and not for resale, in one of the following states, commonwealths, District of Columbia or U.S. territories: Connecticut, Alabama, Alaska, Arkansas, Arizona, California, Colorado, District of Columbia, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, U.S. Virgin Islands, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

- This Notice is a summary and is not intended to set forth all of the details of the settlement agreement. For additional information, important documents, and case updates, visit the website AGGenericDrugs.com or call 1-866-290-0182.

- The Apotex Settlement Agreement, in addition to settling claims brought on behalf of Consumers, also settles claims brought by EPPs on behalf of third-party payers ("TPPs") (*e.g.*, entities such as insurers or employers with self-funded prescription drug plans) and provides a separate cash settlement fund that will benefit TPPs. This present Notice is directed only to Consumers and describes only the benefits, rights and deadlines for Consumers. Information on the settlement benefits for TPPs is available at GenericDrugsEndPayerSettlement.com.

| YOUR LEGAL RIGHTS AND OPTIONS IN THESE SETTLEMENTS | | |
|---|---|---|
| **Action** | **Description** | **Instructions & Deadlines** |
| **REGISTER TO RECEIVE FUTURE NOTICES** | You will be notified by email or mail when a claim form is available. You will also receive updates about the lawsuits. Claim forms will also be made available via the website AGGenericDrugs.com or by calling 1-866-290-0182. | Register via the website AGGenericDrugs.com or by calling 1-866-290-0182. |
| **DO NOTHING NOW** | You will be included in the Apotex Settlement and eligible to file a claim for a payment (if you qualify) at a later date. However, unless you register your contact information via the website AGGenericDrugs.com or by calling 1-866-290-0182, you may not receive notice about when and how to file a claim, and thereby may lose any ability | |

| | | |
|---|---|---|
| | to receive any payment from the Apotex Settlement.<br><br>You will give up any rights you currently have to separately sue Apotex for the conduct that is the subject of the lawsuits, unless you take action to exclude yourself from the settlement (as explained below). | |
| **EXCLUDE YOURSELF** | You will not receive a payment from the Apotex Settlement, but you will keep any rights you currently have to separately sue Apotex for the conduct that is the subject of these lawsuits. | To exclude yourself from this Settlement and the EPP Apotex Settlement Class, you must either go to the website AGGenericDrugs.com and fill out the requisite information, or alternatively, mail a written statement to the settlement administrator as detailed below. To be timely, your request must be **completed online or postmarked** no later than [[**OPT-OUT DEADLINE**]]. |
| **OBJECT TO THE SETTLEMENTS** | If you do not exclude yourself and you disagree with the Apotex Settlement, the proposed allocation plan, or any specific terms of the Apotex Settlement Agreement, you can write to the United States District Court for the District of Connecticut explaining why you disagree. A copy of your correspondence will also be filed in the United States District Court for the Eastern District of Pennsylvania on the EPP Class Actions docket. | To object to any aspect of the Settlement or otherwise express concerns about the Settlement – but still be included in the Settlement – you must submit a written statement to the United States District Court for the District of Connecticut and counsel (see instructions below). To be timely, your objection must be **received** no later than [[**OBJECTION DEADLINE**]]. |
| **GO TO THE HEARING** | Anyone can attend either or both of the Final Fairness Hearings and observe.<br><br>If you wish to attend and speak at one or both of the Final Fairness Hearings about your opinion of the Apotex Settlement or the proposed allocation plan, then you must notify the Court(s) presiding over the Hearing(s) that you wish to attend and speak. | Date of District of Connecticut Final Fairness Hearing: [[**DATE & TIME**]]<br><br>Date of Eastern District of Pennsylvania Final Fairness Hearing: [**DATE & TIME**]<br><br>To speak at either hearing you must file a Notice of Intent to Appear by [[**DEADLINE**]] (see instructions below). |

These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

**BASIC INFORMATION**................................................................................................Page __
1. What is this Notice about?
2. What are the lawsuits about?
3. What is a class action?
4. Who are the Settling Defendants?

**WHO IS INCLUDED**...................................................................................................Page __
5. How do I know if I am included in the Apotex Settlement?
6. Who is not included?
7. Who are the Defendants?
8. Why are the lawsuits continuing if there are Settlements?

**THE SETTLEMENT BENEFITS** ...................................................................................Page __
9. What does the Apotex Settlement provide?
10. How much money will I receive?
11. When will I get benefits?

**REMAINING IN THE SETTLEMENT** ............................................................................Page __
12. What am I giving up if I stay in the Apotex Settlement?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ........................................................Page __
13. What if I don't want to be in the Apotex Settlement?
14. If I don't exclude myself, can I sue Apotex for the same thing later?

**THE LAWYERS REPRESENTING YOU** ........................................................................Page __
15. Do I have a lawyer in this case?

**OBJECTING TO THE SETTLEMENT** ...........................................................................Page __
16. How do can I tell the Court if I do not like the Apotex Settlement?
17. What is the difference between objecting to the Settlement and Excluding myself from the Settlement?

**THE FINAL APPROVAL (FAIRNESS) HEARINGS** ..........................................................Page __
18. When and where will the Courts decide whether to approve the Apotex Settlement?
19. Do I have to attend the Final Approval (Fairness) Hearings?
20. Can I attend the Final Approval (Fairness) Hearings?

**GET MORE INFORMATION** ......................................................................................Page __
21. Where can I get more information?

**LIST OF DRUGS** .................................................................................................Page __

**BASIC INFORMATION**

---

**1. What is this Notice about?**

---

Federal courts have authorized this Notice, and it is designed to inform you about the proposed Apotex Settlement *before* the Courts decide whether to approve it, so that you may determine whether to participate and/or take steps to protect your rights. This Notice explains the lawsuits, the Settlement, and your legal rights.

The Apotex Settlement resolves the claims of Consumers and other End-Payers of certain generic drugs. For purposes of this Notice, a "Consumer" is an individual who has purchased any of the drugs at issue in the lawsuits. The term "Consumer" does not include any Federal Entity, any State Entity, any county, city, town, or other local entity, or any Corporate Entity.

The claims that are being resolved are in related actions pending in two different courts (together, the "Courts"):

The States' Actions: The State Attorneys General have brought antitrust and consumer protection lawsuits against a large number of the nation's generic drug manufacturers, and those lawsuits are currently pending before the United States District Court for the District of Connecticut. The cases at issue are *State of Connecticut et al. v. Aurobindo Pharma USA, Inc*., et al., 16-cv-02056 (D. Conn); *State of Connecticut et al. v. Teva Pharmaceuticals USA, Inc*., *et al*., 19-00710 (D. Conn); and *State of Connecticut et al. v. Sandoz, Inc. et al*., 20-00802 (D. Conn) (collectively referred to as "States' Actions.") The State Attorneys General that sued are the plaintiffs and the generic drug manufacturers they sued are the defendants in the States' Actions.

The EPP Class Actions: A group of end-payers of generic drugs ("End-Payer Plaintiffs" or "EPPs") consisting of both Consumers and third-party payers (such as insurance companies and employers who have self-funded prescription drug benefit plans) have brought a group of class actions on behalf of themselves and all other similarly situated Consumers and third-party payers. Those actions (the "EPP Class Actions") are currently pending in the United States District Court for the Eastern District of Pennsylvania and are coordinated under the docket *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 2:16-MD-02724 (E.D. Pa.). The EPPs are the plaintiffs and the generic drug manufacturers they sued are the defendants in the EPP Class Actions.

---

**2. What are the lawsuits about?**

---

The States' Actions and the EPP Class Actions claim that numerous Defendants and their alleged co-conspirators agreed to fix the prices of certain prescription drugs sold in the United States. As a result, Consumers who bought certain generic prescription drugs ("Drugs at Issue") may have

paid more than they should have. The Defendant drug manufacturers, including Apotex, deny they did anything wrong. Apotex has not admitted liability. <u>The lawsuits are not about – and do not question – the safety or effectiveness of any of the Drugs at Issue.</u>

A full list of the Drugs at Issue in this litigation is provided below and is also available at AGGenericDrugs.com or by calling 1-866-290-0182.

Following investigation of relevant facts, substantial fact discovery, and arms' length negotiations, the State Attorneys General, EPPs, and Apotex entered into the Apotex Settlement. There has been no determination by the Courts or a jury that the allegations against the Defendants or the Settling Defendants have been proven or that, if proven, the conduct caused harm to any Consumers. No trial has been held.

The names of the Defendants and several filings in the States' Actions (including the Complaint and filings relating to settlement approvals) can be found on AGGenericDrugs.com. The Complaints and the list of defendants sued in the EPP Class Actions can be found on GenericDrugsEndPayerSettlement.com.

| 3. What is a Class Action? |
| --- |

In a class action, one or more people called "Class Representatives" sue on behalf of themselves and other people who have similar claims.  Together, all of these people are "Class Members." One court resolves any claims that could be brought against Apotex by all the Class Members, except for those who exclude themselves from the Class (*see Question 13*).

The Apotex Settlement, in addition to affecting the rights of those in the States' Actions, affects the rights of those involved in the EPP Class Actions. The EPP Apotex Settlement Class Representatives and those on whose behalf they have sued together constitute the "EPP Apotex Settlement Class." Their attorneys are called "EPP Settlement Class Counsel."

The EPP Apotex Settlement Class Representatives are 1199SEIU Greater New York Benefit Fund; 1199SEIU Licensed Practical Nurses Welfare Fund; 1199SEIU National Benefit Fund; 1199SEIU National Benefit Fund for Home Care Workers; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; American Federation of State, County and Municipal Employees District Council 47 Health & Welfare Fund; City of Providence, Rhode Island; Detectives Endowment Association of the City of New York; Hennepin County; Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana; Philadelphia Federation of Teachers Health and Welfare Fund; Self-Insured Schools of California; Sergeants Benevolent Association of the Police Department of the City of New York Health and Welfare Fund; UFCW Local 1500 Welfare Fund; Uniformed Fire Officers Association Family Production Plan Local 854; United Food & Commercial Workers and Employers Arizona Health & Welfare Trust; Nina Diamond; Ottis McCrary; Valerie Velardi; and Robby Johnson.

The United States District Court for the Eastern District of Pennsylvania, by Order dated [[DATE]], has preliminarily determined that the lawsuit between EPPs and Apotex can proceed as a class action for purposes of determining whether to approve the Apotex Settlement. A copy of the Order may be found on GenericDrugsEndPayerSettlement.com. The settlement website for Consumers can be found at AGGenericDrug.com.

### 4. Who are the Settling Defendants?

For purposes of this Notice, the Settling Defendant is Apotex Corp. Prior notices have described settlements with other settling defendants, including Heritage Pharmaceuticals Inc. and Emcure Pharmaceuticals Ltd.

A complete list of all Defendants is available at AGGenericDrugs.com.

WHO IS INCLUDED

### 5. How do I know if I am included in the Apotex Settlement?

Generally, if you are a Consumer, you may be included if at any time from between May 1, 2009 and December 31, 2019 you were in any of the 50 United States, the District of Columbia, Northern Mariana Islands, Puerto Rico, or the U.S. Virgin Islands, and paid for a Drug at Issue. A list of the Drugs at Issue in this litigation is provided below and is also available at AGGenericDrugs.com or by calling 1-866-290-0182.

### 6. Who is not included?

You are not included if:

- You purchased the Drugs at Issue for resale or distribution to others;
- You purchased the Drugs at Issue directly from Defendants; or
- You are an officer, director, management, or employee of any of the Defendants, their subsidiaries, or affiliates.

If you purchased Drugs at Issue both directly from Defendants (or for resale to others) and indirectly (*e.g.*, from a pharmacy) , you are included in the Apotex Settlement with respect to only your indirect purchases that were not for resale or distribution to others.

If you are unsure whether you are included in the Apotex Settlement, you may call 1-866-290-0182 and you may also review the materials posted on AGGenericDrugs.com. If you wish to exclude yourself from the Settlement, please refer to Question 13.

The Defendant generic drug manufacturers listed in either the State Attorney General action or the EPP Class Actions are:

- Actavis Elizabeth, LLC
- Actavis Holdco U.S., Inc.
- Actavis Pharma, Inc.
- Amneal Pharmaceuticals, Inc.
- Amneal Pharmaceuticals, LLC
- Apotex Corp.
- Ascend Laboratories, LLC
- Akorn, Inc.
- Akorn Sales, Inc.
- Alvogen, Inc.
- Aurobindo Pharma USA, Inc.
- Barr Pharmaceuticals, LLC
- Bausch Health Americas, Inc.
- Bausch Health US, LLC
- Breckenridge Pharmaceutical, Inc.
- Camber Pharmaceuticals, Inc.
- Citron Pharma, LLC
- Dava Pharmaceuticals, LLC
- Dr. Reddy's Laboratories, Inc.
- Emcure Pharmaceuticals, Ltd.
- Epic Pharma, LLC
- Fougera Pharmaceuticals Inc.
- G&W Laboratories, Inc.
- Generics Bidco I, LLC
- Glenmark Pharmaceuticals, Inc.
- Glenmark Pharmaceuticals Inc., USA
- Greenstone LLC
- Heritage Pharmaceuticals, Inc.
- Hi-Tech Pharmacal Co., Inc.
- Hikma Labs, Inc.
- Hikma Pharmaceuticals USA, Inc.
- Impax Laboratories, Inc.
- Impax Laboratories, LLC
- Jubilant Cadista Pharmaceuticals Inc.
- Lannett Company, Inc.
- Lupin Pharmaceuticals, Inc.
- Mallinckrodt Inc.
- Mallinckrodt plc
- Mallinckrodt LLC
- Mayne Pharma Inc.
- Mayne Pharma U.S.A., Inc.
- Morton Grove Pharmaceuticals, Inc.
- Mutual Pharmaceutical Company, Inc.
- Mylan, Inc.
- Mylan Pharmaceuticals, Inc.
- Oceanside Pharmaceuticals, Inc.
- Par Pharmaceutical Companies, Inc.
- Par Pharmaceutical, Inc.
- Perrigo New York Inc.
- Pfizer, Inc.
- Pliva, Inc.
- Sandoz, Inc.
- Sun Pharmaceutical Industries, Inc.
- Taro Pharmaceuticals USA, Inc.
- Teligent, Inc.
- Teva Pharmaceuticals USA, Inc.
- Torrent Pharma Inc.
- Upsher-Smith Laboratories, Inc.
- Upsher-Smith Laboratories, LLC
- Versapharm Inc.
- West-Ward Columbus, Inc.
- West-Ward Pharmaceuticals Corp.
- Wockhardt USA LLC
- Zydus Pharmaceuticals (USA), Inc.

Several individuals have also been named as Defendants in the States' Complaints, which are available for your review at AGGenericDrugs.com.

---

**8. Why are the lawsuits continuing if there are Settlements?**

Settlements have been reached with some but not all of the Defendants. In addition to Apotex, the States and EPPs have settled with Heritage Pharmaceuticals Inc., and Emcure Pharmaceuticals Ltd. The lawsuits will continue against all of the Non-Settling Defendants.

Additional money may become available in the future as a result of trials or future settlements. Alternatively, the litigation may be resolved in favor of the Non-Settling Defendants and no additional money may become available. There is no guarantee as to what will happen.

Because the lawsuits that are continuing against Non-Settling Defendants may result in future judgments or settlements, please register at the website, www.AGGenericDrugs.com, or call 1-866-290-0182, to be notified of any future monetary recoveries and to be notified of when and how you may file a claim.

THE SETTLEMENT BENEFITS

---

**9. What does the Apotex Settlement provide?**

There is one Settlement being presented to the Courts for approval at this time: the Apotex Settlement. A copy of the Apotex Settlement, as well as information as to prior settlements, can be obtained at AGGenericDrugs.com, or can be requested at 1-866-290-0182.

The Apotex Settlement provides that: (1) Apotex will cooperate with the State Attorneys General and EPPs by providing information relevant to the ongoing litigation against the Non-Settling Defendants; (2) Apotex will take steps to ensure that it will not engage in further violations of state and federal antitrust laws; and (3) Apotex will pay $39,100,000 to the State Attorneys General and $48,000,000 to EPPs.

Money to be allocated among Consumers from the Apotex Settlement will be paid from the funds paid by Apotex to the State Attorneys General. Specifically, if approved by the Courts, $17,624,403 will be allocated to Consumers, while $9,745,595 will be allocated to certain State Entities and $11,730,000 will be set aside to reimburse the State Attorneys General for the costs of settlement notice and administration (not to exceed $500,000) and for expenses and fees of pursuing the litigation. Money to be allocated among TPPs from the Apotex Settlement will be paid from the $48,000,000 paid by Apotex to EPPs. For details on the settlement benefits for TPPs, see GenericDrugsEndPayerSettlement.com

After approval of a plan of distribution by the Courts, the funds designated for Consumers will be available for distribution to eligible Consumers who timely file valid claims.

Any interest earned will be added to the Settlement Fund. More details are in the Apotex Settlement Agreement, which is available at AGGenericDrugs.com, or can be requested at 1-866-290-0182.

| **10. How much money will I receive?** |
| --- |

At this time, it is unknown how much each eligible Consumer who submits a valid, timely claim will receive, as this will depend on numerous factors, in particular the number and amount of timely, eligible claims filed, the total money amount available in the Settlement Fund after receipt of all settlements and/or judgments, and the future plan of allocation approved by the Court.

Money to be allocated among Consumers will be paid from the funds paid by Apotex to the State Attorneys General. The State Attorneys General have proposed a framework for how to allocate Settlement Funds to eligible Consumers who file timely claims. The proposed framework provides that, in general, eligible Consumers will be paid on a *pro rata* basis in proportion to the amount of money spent on the Drugs at Issue; which means that eligible Consumers who spent more money on the Drugs at Issue will get more money from the Settlement Fund than those who spent less. The one exception is for eligible Consumers residing in Alabama, Arkansas, Hawaii and Texas. Because Attorneys General of those states did not settle with Apotex, eligible Consumers who reside in those States are not affected or bound by the terms of the settlement as between Apotex and the State Attorneys General, but rather the are bound only by the terms of the settlement as between Apotex and the EPPs. Therefore, while eligible Consumers residing in Alabama, Arkansas, Hawaii and Texas who purchased Drugs at Issue and submit timely and valid claim forms will receive money from the Settlement Fund, their allocation is expected to be less than if calculated on a strictly *pro rata* basis across Consumers from all States.

In order to receive a payment, you must file a valid claim form *before* the claims period ends. The claims period for Consumers has not yet begun, and will begin only after a final plan of allocation has been submitted to and approved by the Courts. A notice about the claims process will be made at a future date ordered by the Courts. If you want to receive a notice about the claims process or future settlements, you should register at www.AGGenericDrugs.com or call 1-866-290-0182.

## 11. When will I get benefits?

No money has been distributed yet or will be distributed until some future date after the Courts' approval of the Apotex Settlement and the receipt of funds from this and other approved settlements and/or judgments. The State Attorneys General and EPPs will continue to pursue the lawsuits against the Non-Settling Defendants. A final plan of allocation will be submitted to the Court for approval sometime in the future, when there are enough consumer funds accumulated to make a distribution practicable and sensible.

### REMAINING IN THE SETTLEMENT

## 12. What am I giving up if I stay in the Apotex Settlement?

Unless you exclude yourself from the Apotex Settlement, you will give up your right to sue Apotex for any claims described in the releases of the Apotex Settlement Agreement. You also will be bound by any decisions by the United States District Court for the District of Connecticut relating to the Apotex Settlement. In addition, you will be bound by all of the United States District Court for the Eastern District of Pennsylvania's Orders in the case between EPPs and Apotex.

In return for paying the settlement amounts and providing non-monetary benefits, Apotex will be released from certain claims relating to the facts underlying States' Actions and the EPP Class Actions. Paragraph VI of the Apotex Settlement Agreement describes the releases, so read it carefully, since those releases will be binding on you if the Courts grant final approval of the Apotex Settlement. If you have any questions, you can call the toll-free number below or you can talk to your own lawyer (at your own expense) if you have questions about what this means. The Apotex Settlement Agreement and the specific releases are available at AGGenericDrugs.com.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the settlement, and you want to keep your right to sue Apotex on your own about the legal issues in this case, then you must take steps to get out of the Class. This is called excluding yourself – or it is sometimes referred to as "opting out" of the Class.

## 13. What if I don't want to be in the Apotex Settlement?

To exclude yourself from the Apotex Settlement, go to the website at www.AGGenericDrugs.com, and look for how to exclude yourself (or "Opt Out").

Alternatively, you may exclude yourself by sending a letter (a "Request for Exclusion") by mail to the address below. Your Request for Exclusion ***must*** include:

- Your name, address, e-mail address (if any), and telephone number; and

- The cases and cases numbers: *State of Connecticut et al. v. Aurobindo Pharma USA, Inc*., et al., 16-cv-02056 (D. Conn); *State of Connecticut et al. v. Teva Pharmaceuticals USA, Inc*., *et al*., 19-00710 (D. Conn); *State of Connecticut et al. v. Sandoz, Inc. et al*., 20-00802 (D. Conn); and *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 2:16-MD-02724 (E.D. Pa.); and
- A statement that you want to be excluded from the Apotex Settlement (*e.g.,*"I hereby request that I be excluded from the Apotex Settlement"); and
- A statement attesting that you have purchased one or more of the Drugs at Issue, not for resale, between May 1, 2009 to December 31, 2019; and
- The date; and
- Your signature.

A separate exclusion request must be submitted by each Consumer electing to be excluded.

A valid and timely Request for Exclusion from the Apotex Settlement will be deemed to be a request for exclusion from both the State Apotex Settlement (*i.e.*, any provisions in the Apotex settlement agreement that affect Consumers in the States' Actions) and the EPP Apotex Settlement (*i.e.*, any provisions in the Apotex settlement agreement that affect Consumers in the EPP Class Actions). Please review Paragraph IV.E. of the Apotex Settlement (available at AGGenericDrugs.com) for more information.

Your Consumer Request for Exclusion must be **COMPLETED ONLINE or POSTMARKED** no later than [[**OPT-OUT DEADLINE**]] (check the website at AGGenericDrugs.com for updates on the litigation or register to receive future information).

Generic Drugs Settlements
Exclusions
P.O. Box 2599
Faribault, MN 55021-2599

**14. If I don't exclude myself, can I sue Apotex for the same thing later?**

No.  Unless you exclude yourself, you give up any right to sue Apotex for the claims being released in this litigation.

## THE LAWYERS REPRESENTING YOU

| **15. Do I have a lawyer in this case?** |
|---|

Yes. The Pennsylvania court has appointed the law firm below to represent your interests and the other Class Members in this lawsuit. The lawyers representing you and the Class Members are called "EPP Apotex Settlement Class Counsel." You will not be charged for the services of these lawyers.

You may contact EPP Apotex Settlement Class Counsel as follows:

| Roberta D. Liebenberg<br>Jeffrey S. Istvan<br>Fine, Kaplan and Black, R.P.C.<br>One South Broad St., 23rd Floor<br>Philadelphia, PA 19107 | | |
|---|---|---|

If you want to be represented by your own lawyer, you may hire one at your own expense.

## OBJECTING TO THE SETTLEMENT

| **16. How can I tell the Court if I do not like the Apotex Settlement?** |
|---|

If you have objections to any aspect of the Apotex Settlement, or to the proposed framework for allocation, you may express your views to the United States District Court for the District of Connecticut and the United States District Court for the Eastern District of Pennsylvania by writing to the addresses below. (A copy of your correspondence will be filed in the United States District Court for the Eastern District of Pennsylvania on the EPP Class Actions docket.)


Your objection must include:
- Your name, address, e-mail address (if any), telephone number, and an explanation of your objection; and
- The case names and numbers: *State of Connecticut et al. v. Aurobindo Pharma USA, Inc*., et al., 16-cv-02056 (D. Conn); *State of Connecticut et al. v. Teva Pharmaceuticals USA, Inc*., *et al*., 19-00710 (D. Conn); *State of Connecticut et al. v. Sandoz, Inc. et al*., 20-00802 (D. Conn); and *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 2:16-MD-02724 (E.D. Pa.); and
- A statement attesting that you have purchased one or more of the Drugs at Issue between May 1, 2009 to December 31, 2019; and
- The date; and

- Your signature; and
- The name, address, and telephone number of any lawyer assisting you.

In addition, if you object you may be asked for additional information, including documentation demonstrating where you live, that you bought a qualifying generic prescription drug (not for resale), and the date(s) of purchase.

Any objection must be mailed to these addresses and **received** no later than [[**OBJECTION DEADLINE**]]:

| U.S. DISTRICT COURT FOR THE DISTRICT OF CONN. | COUNSEL FOR THE STATE ATTORNEYS GENERAL | COUNSEL FOR APOTEX |
|---|---|---|
| Clerk's Office Abraham Ribicoff Federal Building United States Courthouse 450 Main Street Suite A012 Hartford, CT 06103 | Saami Zain Assistant Attorney General New York Attorney General 28 Liberty Street, New York, NY | April Williams Wilmer Hale 2100 Pennsylvania Avenue NW Washington, DC 20037 |
| | EPP SETTLEMENT CLASS COUNSEL | |
| | Roberta D. Liebenberg Jeffrey S. Istvan Fine, Kaplan and Black, R.P.C. One South Broad St., 23rd Floor Philadelphia, PA 19107 | |

If you hire a lawyer to make an objection, your lawyer must also file a Notice of Appearance with the Clerk of the Court for the United States District Court for the District of Connecticut and the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania no later than [[**DEADLINE**]].

### 17. What is the difference between objecting to the Settlement and excluding myself from the Settlement?

Objecting to the Apotex Settlement simply means telling the Court that you don't like something about the Settlement or have certain concerns about the Settlement. Objecting does not disqualify you from making a claim for a payment nor does it make you ineligible to receive a payment.

If you exclude yourself from the Apotex Settlement, you are no longer part of the Apotex Settlement. In addition, to the extent legally permissible, a valid and timely Request for Exclusion from the Apotex Settlement will be deemed to be a request for exclusion from both the State Apotex Settlement (*i.e.*, any provisions in the Apotex settlement agreement that affect Consumers in the States' Actions) and the EPP Apotex Settlement (*i.e.*, any provisions in the Apotex settlement agreement that affect Consumers in the EPP Class Actions). Therefore, you will not be eligible to receive any payments from the Apotex Settlement and you will not be able to object to the Settlement. You will not be subject to the terms and conditions of the Apotex Settlement. However, will you keep your right to sue Apotex for the same claims in another lawsuit.

### THE FINAL APPROVAL (FAIRNESS) HEARING

### 18. When and where will the Courts decide whether to approve the Apotex Settlement?

The United States District Court for the District of Connecticut will hold a Final Approval (Fairness) Hearing regarding the Apotex Settlement on **[Date] at [time],** at the United States District Court for the District of Connecticut, Abraham Ribicoff Federal Building, 450 Main Street, Courtroom 3, Hartford, CT 06103. In addition, the United States District Court for the Eastern District of Pennsylvania will hold a Final Approval (Fairness) Hearing regarding the Apotex Settlement on **[Date] at [time]** at the United States District Court for the Eastern District of Pennsylvania, Courtroom 12-A, 601 Market Street, Philadelphia, PA 19106. The hearings may be moved to a different date or time without additional notice, so check AGGenericDrugs.com and GenericDrugsEndPayerSettlement.com for current information or call 1-866-290-0182 if you want to find out if the hearings have been rescheduled.

At the Final Approval (Fairness) Hearing on the Apotex Settlement before the United States District Court for the District of Connecticut, the Court will consider whether the Apotex Settlement and the proposed framework for allocation and distribution to Consumers is fair, reasonable, and adequate. If there are objections or comments, the Court will consider them at that time. After the hearing, the Court will decide whether to grant final approval to the Apotex Settlement.

Similarly, at the Final Fairness Hearing on the Apotex Settlement before the Eastern District of Pennsylvania, the Court will consider whether the Apotex Settlement and the proposed allocation framework is fair, reasonable and adequate for the EPP Apotex Settlement Class. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to give final approval to the Apotex Settlement.

It is unknown how long the Courts' decisions, or any decisions on any appeals will take.

## 19. Do I have to attend the Final Approval (Fairness) Hearings?

No. Counsel for the State Attorneys General and EPP Settlement Class Counsel will attend the hearing and be prepared to answer questions. Individuals who have filed and served written objections regarding the Apotex Settlement may (but do not have to) appear at the Final Approval (Fairness) Hearings, in person or through an attorney hired at their own expense.

## 20. Can I attend the Final Approval (Fairness) Hearings?

Yes. Anyone can attend the Final Approval (Fairness) Hearings and watch. If you want to attend and observe, you do not have to do anything.

If you want to attend one or both of the Final Fairness Hearings and speak to the Court(s) regarding an objection that you have to the Apotex Settlement or the proposed allocation framework, either in person or through an attorney hired at your own expense, you need to mail a written Notice of Intent to Appear to the addresses listed in Question 17 so that your notice is received by **[[DEADLINE]]**. The Notice of Intent to Appear must contain the following information:

1. Your name, address, email address (if any), and telephone number and, if applicable, the name, address, email address, and telephone number of your attorney (who must file a Notice of Appearance with the Clerk of the Court for either or both the United States District Court for the District of Connecticut or the United States District Court for the Eastern District of Pennsylvania not later than **[[DEADLINE]]**);
2. The Final Fairness Hearing(s) at which you will be appearing;
3. Your objection, including any supporting papers; and
4. The name and addresses of any witnesses to be presented at the Final Approval (Fairness) Hearing(s), together with a statement as to the matters on which they wish to testify and a summary of the proposed testimony.


### GET MORE INFORMATION

## 21. Where can I get more information?

This Notice summarizes the Apotex Settlement. You can get more information about the Apotex Settlement at AGGenericDrugs.com, by calling 1-866-290-0182, or by writing to Generic Drugs Settlements, P.O. Box 2599, Faribault, MN 55021-2599.

You can also view the official Court files by accessing the Court dockets in this case:
- Through the Courts' Public Access to Court Electronic Records (PACER) system at https://pacer.uscourts.gov.

- By visiting the office of the Clerk of the Court of the United States District Court for the District of Connecticut (for the docket in the States' Actions) or the office of the Clerk of the Court of the United States District Court for the Eastern District of Pennsylvania (for the docket in the EPP Class Actions). The United States District Court for the District of Connecticut is located at Abraham Ribicoff Federal Building, United States Courthouse, 450 Main Street, Suite A012, Hartford, CT 06103. The United States District Court for the Eastern District of Pennsylvania is located at 601 Market Street, Philadelphia, PA 19106.

**PLEASE DO NOT TELEPHONE THE COURTS OR THE OFFICES OF THE COURTS' CLERKS TO INQUIRE ABOUT THESE SETTLEMENTS OR THE CLAIM PROCESS.**

**LIST OF DRUGS AT ISSUE**

Acetazolamide
Acetazolamide Tablet 125 mg
Acetazolamide Tablet 250 mg
Adapalene Cream 0.1%
Adapalene Gel
Alclometasone Dipropionate Cream 0.05%
Alclometasone Dipropionate Ointment
Amiloride HCL/HCTZ Tablets
Ammonium Lactate Cream EQ 12% Base
Ammonium Lactate Lotion EQ 12% Based
Amoxicillin/Clavulanate Chewable Tablets
Amphetamine/Dextroamphetamine ER (aka Mixed Amphetamine Salts)
Amphetamine/Dextroamphetamine IR
Azithromycin Suspension
Azitlnomycin Oral Suspension
Baclofen Tablets
Benazepril HCTZ
Betamethasone Dipropionate Cream EQ 0.05% BASE
Betamethasone Dipropionate Cream, Augmented EQ 0.05% BASE
Betamethasone Dipropionate Lotion       EQ 0.05% BASE
Betamethasone Dipropionate Lotion, Augmented EQ 0.05% BASE
Betamethasone Valerate Cream 0.01% BASE
Betamethasone Valerate Lotion   0.01% BASE
Betamethasone Valerate Ointment 0.01% BASE
Betamethasone Valerate Tablet    0.01% BASE
Bethanechol Chloride Tablets
Bromocriptine Mesylate Tablets EQ 2.5 mg Base
Budesonide DR Capsules
Budesonide Inhalation
Bumetanide Tablets
Buspirone Hydrochloride Tablets
Cabergoline
Calcipotriene Betamethasone Dipropionate Ointment 0.06-0.005%
Calcipotriene Solution 0.005%
Capecitabine
Carbamazepine Chewable Tablets
Carbamazepine ER Tablets 100mg; 200mg; 400mg
Carbamazepine Tablets
Cefdinir Capsules
Cefdinir Oral Suspension
Cefpodoxime Proxetil Oral Suspension EQ 100mg Base; EQ 50mg Base
Cefpodoxime Proxetil Tablets EQ 100mg Base; EQ 200 mg Base
Cefprozil Tablets
Celecoxib
Cephalexin Suspension

Ciclopirox Cream 0.77%
Ciclopirox Shampoo 1%
Ciclopirox Solution 8%
Cimetidine Tablets
Ciprofloxacin Tablets
Clarithromycin ER Tablets
Clemastine Fumarate Tablets
Clindamycin Phosphate 60 ml solution
Clindamycin Phosphate All except solution (Cream, Gel, Lotion)
Clindamycin Phosphate All formulations (Cream, Gel, Lotion, Solution)
Clobetasol Propionate Cream 0.05%
Clobetasol Propionate Gel 0.05%
Clobetasol Propionate Ointment 0.05%
Clobetasol Propionate Solution 0.05%
Clomipramine HCL
Clonidine TTS Patch
Clotrimazole Betamethasone Dipropionate Cream EQ 0.05% BASE
Clotrimazole Betamethasone Dipropionate Ointment EQ 0.05% BASE
Clotrimazole Topical Solution
Cyproheptadine HCL Tablets
Desmopressin Acetate-Tablets
Desogestrel/Ethinyl Estradiol Tablets (Kariva)
Desonide Cream 0.05%
Desonide Lotion 0.05%
Desonide Ointment 0.05%
Desoximetasone Ointment 0.05%; 0.25%
Dexmethylphenidate
Dextroamphetamine Sulfate ER
Diclofenac Potassium Tablets
Diclofenac Tablets
Dicloxacillin Sodium Capsules
Diflunisal Tablets
Diltiazem HCL Tablets
Disopyramide Phosphate Capsules
Doxazosin Mesylate Tablets
Doxycycline hyclate DR
Doxycycline monohydrate
Drospirenone and ethinyl estradiol (Ocella)
Econazole Nitrate Cream 1%
Enalapril Maleate Tablets
Entecavir
Epitol Tablets
Eplerenone Tablets          25mg; 50mg
Erythromycin Base/Ethyl Alcohol Solution 2%
Estazolam Tablets
Estradiol

Estradiol Tablets
Ethambutol HCL [hydrocholoride] Tablets 100mg; 400mg
Ethinyl estradiol and levonorgestrel (Portia and Jolessa)
Ethosuximide Capsules
Ethosuximide Oral Solution
Etodolac ER Tablets
Etodolac Tablets
Fenofibrate
Fluconazole Tablets
Fluocinolone Acetonide Cream 0.01%; 0.025%
Fluocinolone Acetonide Ointment  0.025%
Fluocinonide Cream
Fluocinonide Cream          0.05%; 0.1%
Fluocinonide Emolient Cream
Fluocinonide Gel
Fluocinonide Gel 0.05%
Fluocinonide Ointment
Fluocinonide Ointment 0.05%
Fluocinonide Solution 0.05%
Fluoxetine HCL Tablets
Flurbiprofen Tablets
Flutamide Capsules
Fluticasone Propionate Lotion (60ml)      0.05%
Fluvastatin Sodium Capsules
Fosinopril-hydrochlorothiazide
Gabapentin Tablets
Glimepiride Tablets
Glipizide-metformin
Glyburide
Glyburide-metformin
Griseofulvin Microsize Tablets 250mg; 500mg
Griseofulvin Suspension
Halobetasol Propionate Cream 0.05%
Halobetasol Propionate Ointment 0.05%
Haloperidol
Hydrocortisone Acetate Suppositories (Anucort HC) Suppository 25mg; 30mg
Hydrocortisone Valerate Cream 0.2%
Hydroxyurea Capsules
Hydroxyzine Pamoate Capsules
Imiquimod Cream 0.2%
Irbesartan
Isoniazid
Ketoconazole Cream
Ketoconazole Cream 2%
Ketoconazole Tablets
Ketoprofen Capsules

Ketorolac Tromethamine Tablets
Labetalol HCL Tablets
Lamivudine/Zidovudine (generic Combivir)
Latanoprost Drops/Solution 0.005%; 0.01%
Leflunomide
Levothyroxine
Lidocaine Ointment 5%
Loperamide HCL Capsules
Medroxyprogesterone Tablets
Methazolamide Tablets 25mg; 50mg
Methotrexate Tablets
Methylphenidate HCL ER Tablets 10mg; 20mg; 5mg
Methylphenidate HCL Tablets 10mg; 20mg; 5mg
Metronidazole Cream 0.75%
Metronidazole Gel 0.75%
Metronidazole Gel 1%
Metronidazole Lotion 0.75%
Mimvey (Estradiol/Noreth) Tablets
Moexipril HCL Tablets
Moexipril HCL/HCTZ Tablets
Mometasone Furoate Cream 0.1%
Mometasone Furoate Ointment 0.1%
Mometasone Furoate Solution 0.1%
Nabumetone Tablets
Nadolol Tablets
Nafcillin Sodium Injectable Vials EQ 10GM Base; EQ 1GM Base; EQ 2GM Base
Niacin ER Tablets
Nimodipine
Nitroforantoin MAC Capsules
Norethindrone/ethinyl estradiol (Balziva)
Northindrone Acetate
Nortriptylline Hydrochloride Capsules
Nystatin
Nystatin Ointment 100,000 UNITS/GM
Nystatin/Triamcinolone Acetonide Cream - 100,000 UNITS/GM, 0.1%; 100,000 UNITS/GM, 1%
Nystatin/Triamcinolone Acetonide Ointment -100,000 UNITS/GM, 0.1%; 100,000 UNITS/GM, 1%
Omega-3-Acid Ethyl Esters
Oxacillin Sodium Injectable Vials - EQ 10GM Base; EQ 1GM Base; EQ 2GM Base
Oxaprozin Tablets
Oxybutynin Chloride Tablets
Paricalcitol
Paromomycin
Penicillin VK Tablets
Pentoxifylline Tablets

Phenytoin Sodium ER Capsule – 100mg; 200mg; 300mg
Pioglitazone HCL Metformin HCl Tablets 500mg, EQ 15mg Base; 850MG; EQ 15mg Base
Piroxicam
Pravastatin Sodium Tablets
Prazosin HCL Capsules
Prochlorperazine Maleate Suppository – 25mg
Prochlorperazine Tablets
Promethazine HCL Suppositories12.5mg; 25mg
Propranolol HCL Tablets
Raloxifine HCL Tablets
Ranitidine HCL Tablets
Tacrolimus Ointment – 0.03%; 0.1%
Tamoxifen Citrate Tablets
Temozolomide
Terconazole Cream 0.8%
Theophylline
Tizanidine
Tobramycin
Tolmetin Sodium Capsules
Tolterodine ER
Tolterodine Tartrate
Topiramate Sprinke Capsules
Triamcinolone Acetonide
Triamcinolone Acetonide Cream - 0.8%; 0.025%; 0.1%; 0.5%
Triamcinolone Acetonide Ointment - 0.025%; 0.1%; 0.5%
Triamcinolone Acetonide Paste – 0.1%
Trifluoperazine HCL
ValsartanHCTZ
Verapamil
Warfarin Sodium Tablets
Zoledronic acid

# EXHIBIT B

# If You Are a Consumer Who Bought Certain Generic Prescription Drugs in the United States

### *You Could Get Money from Recent Settlements*

The purpose of this Notice is to alert Consumers to a proposed settlement with generic prescription drug manufacturer Apotex Corp. which settles claims in lawsuits currently pending in the United States District Court for the District of Connecticut (the "States' Actions") and claims brought by Consumers and other End-Payers ("End-Payer Plaintiffs" or "EPPs") in a group of class actions currently pending in the United States District Court for the Eastern District of Pennsylvania (the "EPP Class Actions"). For purposes of this Notice, a "Consumer" is an individual who purchased one or more of the generic drugs at issue in the lawsuits. This is the most recent settlement in this litigation; prior settlements have been made with other generic drug manufacturers. The lawsuits remain ongoing against non-settling defendant drug manufacturers.

**What is the case about?**

The States' Actions and the EPP Class Actions claim that Defendants unlawfully agreed to fix the prices of numerous generic prescription drugs sold in the United States. As a result, prescription drug purchasers – including Consumers – may have overpaid for certain generic drugs. More information on the lawsuits and settlements is available at AGGenericDrugs.com. The lawsuits are not about – and do not question – the safety or efficacy of any of the drugs at issue.

**Am I included in the Settlement?**

Generally, you may be included if at any time between May 1, 2009 and December 31, 2019, you purchased in the United States or certain territories, a generic prescription drug (not for resale) listed in the lawsuit and manufactured by any one of the Defendants. A listing of the drugs and a more complete description of eligibility requirements is available at the website (AGGenericDrugs.com) or by calling the toll-free number (1-866-290-0182).

**What does the Settlement provide?**

The State Attorneys General have created a fund for the deposit of settlement money from current and future settlements ("Settlement Fund"). For the Apotex Settlement, Apotex will pay $39,100,000, of which $17,624,403 will be allocated among Consumers, $9,745,596 will be allocated among certain State Entities, and $11,730,000 will be used for the payment of notice and administration expenses, as well as the costs of litigating the States' Actions, subject to Court approval. The settlement agreement with Apotex and a more complete description of benefits (and other information) is available at the website (AGGenericDrugs.com).

Money will not be distributed yet, and will be distributed pursuant to a Plan of Allocation at a later date and only after requisite court approvals. The State Attorneys General and EPPs will continue to pursue the lawsuits against the Non-Settling Defendants, with the expectation that additional money from future settlements will be placed into the Settlement Fund for later distribution, including to Consumers who purchased generic drugs involved in the litigation and who timely submit valid claims.

**How can I get benefits?**

The claims process will open at a later date. You will need to submit a claim form to get a payment, which will be made available to you via the website at a later date. To receive updates about this and future Settlements, including when a claim form will be available, and instructions on what information to provide when submitting a claim, you should register on the website (AGGenericDrugs.com) or call the toll-free number, 1-866-290-0182.

**What are my rights?**

If you do nothing, you will be bound by the Settlement and the Courts' decisions. If you want to keep your right to sue the Settling Defendants, you must exclude yourself ("Opt out") from the Settlement by [OPT-OUT DEADLINE]. If you wish to file objections or comments/concerns but still remain in the litigation (and thus be bound by the Settlement and the Court's decisions), you may do so by submitting them to the Court by [OBJECTION DEADLINE]. The procedure for either opting out of or objecting to the Settlement is explained on the website (AGGenericDrugs.com). The United States District Court for the District of Connecticut will hold a hearing on [DATE], and the United States District Court for the Eastern District of Pennsylvania will hold a hearing on [DATE] to consider whether to approve the proposed Settlement. You or your own lawyer may appear at the hearing at your own expense, but you do not have to attend.

Please visit AGGenericDrugs.com or call **1-866-290-0182** for additional information, important documents, and case updates.

# EXHIBIT C

# HOME PAGE

## Welcome to The AG Generic Drugs Settlement Website

If you bought certain generic prescription drugs in the United States between January 1, 2010 and December 31, 2018, you could receive money from State Attorneys General Settlements.

**Register Here**

- Proposed settlements have been reached in consumer protection and antitrust lawsuits brought by Attorneys General of 50 states, commonwealths, or U.S. territories, and the District of Columbia (the "State Attorneys General") against a large number of the nation's largest generic drug manufacturers.

- The lawsuits were brought by the States on behalf of consumers who bought certain prescription drugs in the following states and territories: Connecticut, Alaska, Arizona, California, Colorado, District of Columbia, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, U.S. Virgin Islands, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming

- Proposed settlements of the lawsuits (the "Settlements") have been reached with some defendants (the "Settling Defendants") and the lawsuits are continuing against the remaining defendants (the "Non-Settling Defendants"). Payments will be made only (1) if the Court approves the Settlements and after any appeals are resolved, and (2) the Court approves the Plan of Allocation to distribute the Settlement Funds to consumers. The plan will be described in an additional notice to be given at a later date, providing consumers with the opportunity to state their views regarding the plan.

- Settlements also include provisions requiring Settling Defendants' cooperation in the ongoing litigations. The Settling Defendants have also agreed to take steps to ensure that they will not engage in further violations of state and federal antitrust laws.

- This Notice is a summary and is not intended to set forth all of the details of each (or any) settlement agreement. For additional information, important documents, and case updates, review this website or call 1-866-290-0182.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **REGISTER TO RECEIVE FUTURE NOTICES** | You will be notified by email or mail when a claim form is available. You will also receive updates about the lawsuits. Claim forms will also be made available via this website or by calling 1-866-290-0182 |
| **DO NOTHING NOW** | You will be included in the Settlements and eligible to file a claim for a payment (if you qualify) at a later date. However, unless you register your contact information (or as otherwise provided (below), you may not receive notice about when and how to file a claim, and thereby may lose any ability to receive any payment from the Settlements).<br><br>You will give up any rights you currently have to separately sue Settling Defendants for the conduct that is the subject of the lawsuits, unless you take action to exclude yourself from the settlement (as explained below). |
| **EXCLUDE YOURSELF** | You will not receive a payment from the Settlements, but you will keep any rights you currently have to separately sue the Settling Defendants for the conduct that is the subject of these lawsuits. | To exclude yourself from this Settlement you must either go to this website and fill out the requisite information, or alternatively, mail a written statement to the settlement administration as detailed below. To be timely, you must take action to exclude yourself no later than February 13, 2025. |
| **OBJECT TO THE SETTLEMENT** | If you do not exclude yourself, you can write to the Court explaining why you disagree with the Settlements or any specific terms. | To object to any aspect of the Settlement or otherwise express concerns about the Settlement – but still be included in the Settlement – you must submit a written statement to the Court and counsel (see instructions below). To be timely, you must take action to exclude yourself no later than February 13, 2025. |
| **GO TO THE HEARING** | Ask to speak in Court about your opinion of the Settlements. | March 7, 2025 |

**DOCUMENTS PAGE**

# Documents

Last updated 03/06/2025

| # | Title | Download |
|---|-------|----------|
| 1 | Heritage Settlement Agreement | Download |
| 2 | Order Granting Preliminary Approval of the Heritage Settlement | Download |
| 3 | Drug List | Download |
| 4 | Short Form Notice | Download |
| 5 | Long Form Notice | Download |
| 6 | Motion for Final Approval of Heritage Settlement | Download |

# FAQ PAGE

## Frequently Asked Questions

**Last updated 01/20/2025**

### 1. What is this Notice about? ⊕

This Notice is to inform you about proposed settlements with some Defendants (the "Settlements") before the Court decides whether to approve the Settlements, so that you may determine whether to file a claim and/or take steps to protect your rights. This Notice explains the lawsuits, the Settlements, and your legal rights.

The court in charge is the United States District Court for the District of Connecticut. The cases at issue are *State of Connecticut et al. v. Aurobindo Pharma USA, Inc.*, et al., 16-cv-02056 (D.Conn), *State of Connecticut et al. v. Teva Pharmaceuticals USA, Inc.*, et al., 19-00710 (D.Conn); and *State of Connecticut et al. v. Sandoz, Inc. et al.*, 20-00802 (D.Conn) (collectively referred to as "States' Actions.") The State Attorneys General that sued are called Plaintiffs, and the companies they sued are called the Defendants.

### 2. What are the lawsuits about? ⊕

The lawsuits claim that numerous Defendants and their alleged co-conspirators agreed to fix the prices of prescription drugs sold in the United States. As a result, consumers who bought certain generic prescription drugs ("Drugs at Issue") may have paid more than they should have. The Defendant drug manufacturers deny they did anything wrong and the Settling Defendants who have agreed to settle the case have done so with no admission of liability. The lawsuit is not about – and does not question – the safety or effectiveness of any of the drugs at issue.

### 3. Who are the Settling Defendants? ⊕

The current Settling Defendants are: Heritage Pharmaceuticals Inc., and Emcure Pharmaceuticals Ltd.

Other defendants include Actavis, Amneal, Apotex, Ascend, Aurobindo, Bausch, Breckinridge, Citron, Dr. Reddy's, Fougera (see Sandoz), G&W, Glenmark, Greenstone, Lannett, Lupin, Mallinckrodt, Mayne Pharma, Mylan, Par Pharmaceutical (Endo bankruptcy), Perrigo, Pfizer, Sandoz, Sun, Taro, Teligent , Teva, Upsher-Smith, Valeant, Wockhardt, and Zydus.

A full list of the Defendants and the Drugs at Issue in this litigation and Settlement is available at www.AGGenericDrugs.com

### 4. How do I know if I am included? ⊕

Generally, you may be included if at any time from between January 1, 2010 to December 31, 2018 you bought a qualifying generic prescription drug (not for resale) in one or more of the following States or Territories: Connecticut, Alaska, Arizona, California, Colorado, District of Columbia, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts,

Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, U.S. Virgin Islands, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

Eligibility is based on the drug purchased and the time period of the purchase, i.e. eligibility requires at least one purchase of a Drug at Issue during the alleged conspiracy for that drug. A list of the drugs at issue in the Settlement is located here

### 5. Who is not included? ⊕

You are not included if:

- You purchased the generic drugs for resale or distribution to others; and
- You are an employee of any of the defendants in the lawsuits and any parent, subsidiary, or affiliate

### 6. Who are the Defendants? ⊕

The Defendants are:

- Actavis
- Actavis Holdco U.S., Inc.
- Actavis Pharma, Inc.
- Amneal
- Amneal Pharmaceuticals, Inc.
- Apotex Corp.
- Ascend Laboratories, LLC
- Aurobindo
- Aurobindo Pharma USA, Inc.
- Bausch
- Breckinridge Pharmaceuticals, Inc.
- Citron Pharma, LLC
- Dr. Reddy's Laboratories, Inc.
- Emcure Pharmaceuticals, Ltd.
- Fougera
- G&W
- Glenmark
- Glenmark Pharmaceuticals Inc. USA
- Greenstone
- Greenstone LLC
- Heritage Pharmaceuticals, Inc.
- Lannett
- Lannett Company, Inc.
- Lupin
- Lupin Pharmaceuticals, Inc.
- Mallinckrodt
- Mayne Pharma (USA), Inc.
- Mylan
- Mylan Pharmaceuticals, Inc.
- Par Pharmaceutical Companies, Inc.
- Par Pharmaceuticals, Inc.
- Perrigo
- Pfizer
- Sandoz, Inc.
- Sun
- Sun Pharmaceutical Industries, Inc.
- Taro
- Taro Pharmaceuticals Industries Ltd
- Taro USA,
- Teligent
- Teva Pharmaceuticals USA, Inc.
- Upsher-Smith Laboratories, LLC
- Wockhardt
- Wockhardt USA, LLC
- Zydus Pharmaceuticals (USA), Inc.

### 7. Why are the lawsuits continuing if there are Settlements? ⊕

Settlements have been reached with some but not all of the Defendants. The Settling Defendants are: Heritage Pharmaceuticals Inc., and Emcure Pharmaceuticals Ltd. The lawsuits will continue against all of the remaining Defendants who have not settled (the "Non-Settling Defendants").

Additional money may become available in the future as a result of a trial or future settlements. Alternatively, the litigation may be resolved in favor of the Non-Settling Defendants and no additional money may become available. There is no guarantee as to what will happen.

Because the lawsuits are continuing against Non-Settling Defendants which may result in future settlements and possible additional money, please register at the website, www.AGGenericDrugs.com,  or call 1-866- 290-0182, to be notified of any future settlements and to be notified of when and how you may file a claim.

## 8. What do the Settlements provide?

There is one Settlement being presented to the Court for approval at this time. The Settlement Funds total approximately $10 Million, $6 million of which is set aside for distribution (the "Restitution Fund") and $4 million of which is set aside to reimburse the State Attorneys General for costs, expenses and fees of pursuing the litigation, as approved by the Court (the "Costs Fund"). After approval of a plan of distribution by the Court, the Restitution Fund, including all parts of the Restitution Fund designated for consumer relief, will be available for distribution to consumers who timely file valid claims.

Any interest earned will be added to the Settlement Fund. More details are in the settlement agreements, available at www.AGGenericDrugs.com, or can be requested at 1-866-290-0182.

## 9. How much money will I receive?

At this time, it is unknown how much each Eligible Consumer who submits a valid claim will receive, as this will depend on numerous factors, in particular the number and amount of timely, eligible claims filed the total money amount available in the Settlement Fund after receipt of all settlements and/or judgements, and the plan of distribution approved by the Court.

In order to receive a payment, you must file a valid claim form before the claims period ends. The claims period has not yet begun. A notice about the claims process will be made at a future date ordered by the Court. If you want to receive a notice about the claims process or future settlements, you should register at www.AGGenericDrugs.com or call 1-866-290-0182.

## 10. When will I get benefits?

No money has been distributed yet or will be distributed until some future date after Court approval of settlements and the receipt of funds from settlements and/or judgements. The State Attorneys General will continue to pursue the lawsuits against the Non-Settling Defendants. All Settlement Funds that are and will be allocated to the Restitution Fund will be distributed together at the conclusion of the lawsuits or as ordered by the Court.

## 11. What am I giving up if I stay in the Settlements?

Unless you exclude yourself, you will give up your right to sue the Settling Defendants for any claims described in the releases. You also will be bound by any decisions by the Court relating to the lawsuit and Settlements.

In return for paying the settlement amounts and providing non-monetary benefits, the Settling Defendants will be released for certain claims relating to the facts underlying this lawsuit. The settlement agreements describe the releases, so read them carefully, since those releases will be binding on you if the Court approves the Settlements. If you have any questions, you can call the toll-free number below or you can talk to your own lawyer (at your own expense) if you have questions about what this means. The settlement agreements and the specific releases are available at www.AGGenericDrugs.com.

## 12. What if I don't want to be in the Settlements?

To exclude yourself from the Settlements, go to the website at www.AGGenericDrugs.com, and look for how to exclude yourself (or "Opt Out").

Alternatively, you may exclude yourself by sending a letter (a "Request for Exclusion") by mail to the address below. It must include:

*   Your name, address, and telephone number; and
*   The cases and cases numbers: *State of Connecticut et al. v. Aurobindo Pharma USA, Inc., et al.*, 16-cv-02056 (D Conn); *State of Connecticut et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 19- 00710 (D Conn), and *State of Connecticut et al. v. Sandoz, Inc. et al.*, 20-00802 (D Conn); and
*   A statement that you want to be excluded from the settlements; and
*   A statement attesting that you have purchased one or more of the Drugs at issue between January 1, 2010 to December 31, 2018; and
*   The date; and
*   Your signature.

Your Request for Exclusion must be postmarked no later than February 13, 2025 (check the website at www.AGGenericDrugs.com for updates on the litigation or register to receive future information).

> Generic Drugs Settlements Exclusions 8769
> P.O. Box 2599
> Faribault, MN 55021-9599

## 13. If I don't exclude myself, can I sue for the same thing later?

No. Unless you exclude yourself, you give up any right to sue the Settling Defendants for the claims being released in this litigation.

## 14. How do I object to the Settlements?

If you have objections to any aspect of the Settlement, you may express your views to the Court by writing to the address below. It must include:

*   Your name, address, telephone number, and an explanation of your objection; and
*   The cases and cases numbers: *State of Connecticut et al. v. Aurobindo Pharma USA, Inc., et al.*, 16-cv-02056 (D Conn); *State of Connecticut et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 19- 00710 (D Conn); and *State of Connecticut et al. v. Sandoz, Inc. et al.*, 20-00802 (D Conn); and
*   A statement attesting that you have purchased one or more of the Drugs at issue between January 1, 2010 to December 31, 2018; and
*   The date; and
*   Your signature; and
*   The name, address, and telephone number of any lawyer assisting you.

In addition, if you object you may be asked for additional information, including:

*   Documentation demonstrating that you are or were a resident of one the States or Territories involved in the States Actions , followed by your signature: "I declare that [insert your name] is a resident of a State, Commonwealth, […]", and
*   Documentation demonstrating that you bought a qualifying generic prescription drug (not for resale), including their date(s) of purchase.

Any objection must be mailed to these three addresses and received no later than February 13, 2025

| COURT | COUNSEL FOR THE STATE ATTORNEYS GENERAL | COUNSEL FOR |
|---|---|---|
| Clerk's Office | Saami Zain | Gregory D. Vose |
| Abraham Ribicoff Federal Building | Assistant Attorney General | Reed Smith LLP |
| United States Courthouse | New York Attorney General | Antitrust, Litigation & Consumer Protection |
| 450 Main Street | 28 Liberty Street, | Reed Smith Centre, |
| Suite A012 | New York, NY 10005 | 225 Fifth Avenue |
| Hartford, CT 06103 | | Pittsburgh, PA, 15222 |

If you hire a lawyer to make an objection, your lawyer must also file a Notice of Appearance with the Clerk of the Court no later than February 13, 2025.

## 15. What is the difference between objecting to the Settlements and Excluding myself from the Settlements?

Objecting to the Settlements simply means telling the Court that you don't like something about one or more Settlements or have certain concerns about the Settlement(s). Objecting does not disqualify you from making a claim nor does it make you ineligible to receive a payment.

If you exclude yourself from the Settlements, you are no longer part of the Settlements or the Action. Therefore, you will not be eligible to receive any payments from the Settlements and you will not be able to object to the Settlements. You will not be subject to the terms and conditions of the Settlements. However, you keep your right to sue the Defendants for the same claims in another lawsuit.

### 16. When and where will the Court decide whether to approve the Settlements?

The Court will hold a Final Approval Hearing on first settlements on **March 7, 2025, at 2:00 p.m.**, at the Abraham Ribicoff Federal Building, United States Courthouse, 450 Main Street - Annex 135, Hartford, Connecticut 06103, Courtroom 3. The hearing may be moved to a different date or time without additional notice, so check www.AGGenericDrugs.com for current information or call 1-866-290-0182 if you want to find out if the hearing has been rescheduled. Subsequent Settlements will be scheduled for final approval hearings at future dates. Check www.AGGenericDrugs.com for current information or call 1-866-290- 0182 for updated information regarding final approval hearings. At the Fairness Hearing, the Court will consider whether these Settlements are fair, reasonable, and adequate. If there are objections or comments, the Court will consider them at that time. After the hearing, the Court will decide whether to grant final approval to each of the Settlements. We do not know how long these decisions will take.

### 17. Do I have to attend the Final Approval Hearing?

No. Counsel for the State Attorneys General will be prepared to answer questions on your behalf. Individuals who have filed and served written objections may (but do not have to) appear at the Final Approval Hearing, in person or through an attorney hired at their own expense.

### 18. Can I attend the Final Approval Hearing?

Yes. Anyone can attend the Final Approval Hearing and watch. If you want to attend and observe, you do not have to do anything.

If you want to attend and object, in person or through an attorney hired at your own expense, you need to mail a written Notice of Intent to Appear to the address listed in Question 14 so that it is received by February 13, 2025. The Notice of Intent to Appear must contain the following information:

1.   Your name, address, and telephone number and, if applicable, the name, address, and telephone number of your attorney (who must file a Notice of Appearance with the Clerk of the Court not later than February 13, 2025);
2.   Your objection, including any supporting papers; and
3.   The name and addresses of any witnesses to be presented at the Final Approval Hearing, together with a statement as to the matters on which they wish to testify and a summary of the proposed testimony.

### 19. Where can I get more information?

This Notice summarizes the Settlements. You can get more information about the Settlements at www.AGGenericDrugs.com, by calling 1-866-290-0182, or by writing to Generic Drugs Settlements 8769, P.O. Box 2599, Faribault, MN 55021-9599.

You can also get copies of the official Court file by accessing the Court docket in this case:

-   Through the Court's Public Access to Court Electronic Records (PACER) system at https://pacer.login.uscourts.gov/ or
-   By visiting the office of the Clerk of the Court for the United States District Court for the District of Connecticut, Abraham Ribicoff Federal Building, United States Courthouse, 450 Main Street, Suite A012, Hartford, CT 06103, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THESE SETTLEMENTS OR THE CLAIM PROCESS.**

**CONTACT US PAGE**



AG Generic Drugs - Heritage Settlement

Home    Documents    FAQ    Contact Us    Registration Form    Opt-Out Form    Español

## Contact Us

Last updated 01/20/2025

AG Generic Drug Litigation
c/o Rust Consulting – 8769
PO Box 2599
Faribault, MN 55021-9599
info@aggenericdrugs.com
1-866-290-0182

**REGISTRATION FORM PAGE**

AG Generic Drugs - Heritage Settlement

Home    Documents    FAQ    Contact Us    Registration Form    Opt-Out Form    Español

## Registration Form

Last updated 01/20/2025

**Registration Information**

**PROVIDE YOUR CONTACT INFORMATION BELOW TO BE NOTIFIED OF UPDATES**

If you want to be notified of, or receive more information about either how/when you can submit a claim seeking payment, or more information about the Settlement, litigation, or future settlements, please provide your contact information.

| | |
|---:|---|
| *First Name: | [                    ] |
| Middle Initial: | [    ] |
| *Last Name: | [                    ] |
| *Address 1: | [                    ] |
| Address 2: | [                    ] |
| *City: | [                    ] |
| *State: | [                    ▼] |
| *Zip: | [      ] - [      ] |
| *Email Address: | [                    ] |

[ Next ]    [ Cancel ]

**OPT-OUT FORM PAGE**

# Opt Out Form

**Last updated 01/20/2025**

*Name [_____]

*Street Address [_____]

*City [_____]

*State [_____]

*Zip [_____]

*Phone [_____]

☐ **I request to be excluded from the Heritage Settlement.**

I attest that I purchased one or more of the generic Drugs at Issue during the relevant time period.

*Date [_____]

*Signature [_____]

*As a security measure, please type in the characters displayed below.

8J64XU

Get Audio Code 🔊

Click the icon above to listen to the CAPTCHA audio.
Note: Audio may not work on all browsers.

[_____]

This field is case sensitive

[ Submit ]

# EXHIBIT D



Advertisement
Paid for Generic Prescription Drugs?
You may be entitled to money from a settlement.
To see if you qualify visit AGGenericDrugs.com
Learn More

FOOD NEWS AND TRENDS  >  GROCERY

# Blue Bell Just Launched a New Flavor Fans Are Calling the 'Best Ice Cream Ever'

Pop-Tarts fans, listen up!

By **Samantha Dillard**  |  Published on January 27, 2025

( f ) ( X ) ( P ) ( ✉ ) ( 🖶 )



PHOTO: BLUE BELL ICE CREAM

It's been just over a year since Blue Bell ice cream became available in my state, and now I can't imagine how I lived without it. For those unfamiliar, the Texas-based creamery serves 23 states, mainly in the South and Midwest regions. Blue Bell offers a variety of permanent flavors, including classics like vanilla ice cream and Cookies 'n Cream, and also has a range of seasonal options that fans wait all year for, such as Christmas Cookies and Peppermint Bark.

There's no denying that the folks at Blue Bell know how to create true-to-name flavors. Its Oatmeal Cream Pie ice cream tastes exactly like the Little Debbie snack cake that inspired it, and Blue Bell's Tin Roof ice cream hits all the right notes.

Now, a new flavor of Blue Bell ice cream is hitting shelves and you're going to want to stock up because it won't stick around for long.

## Blue Bell Introduces Strawberry Toaster Pastry Ice Cream

Blue Bell just announced the launch of a new breakfast-inspired flavor. Blue Bell Strawberry Toaster Pastry Ice Cream is now rolling out to select retailers nationwide. The Pop-Tarts-inspired frozen treat features the brand's creamy vanilla ice cream loaded with bite-sized pieces of crumbled strawberry toaster pastry and confetti sprinkles. Ribbons of strawberry sauce and white icing swirl around the pint offering vibrant fruity taste in every spoonful.

Blue Bell teased the new flavor in a recent Instagram post, revealing the full details of the launch the next day. "Strawberry Toaster Pastry is now available in the pint-size, but only for a limited time." the brand captioned.



bluebellicecream
153K followers                    View profile

Advertisement



NISSAN
THE FIRST EVER
ROGUE ROCK CREEK
LEARN MORE
Advertisement

Advertisement

We help people...
Find answers.
Solve problems.
Get inspired.
Learn More
Advertisement

